## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: VISA DEBIT CARD ANTITRUST LITIGATION | Civil Action No.: 24-7435 (JGK) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT VISA INC.'S MOTION TO DISMISS
## <u>PLAINTIFFS' AMENDED CONSOLIDATED CARDHOLDER COMPLAINT</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

I.      THE PARTIES AND DEBIT TRANSACTIONS ............................................................. 2

II.     ALLEGED PRODUCT MARKETS AND CHALLENGED CONDUCT ........................ 3

III.    PLAINTIFFS' CLAIMS ............................................................................................... 5

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT ....................................................................................................................... 5

I.      PLAINTIFFS LACK STANDING TO BRING A SHERMAN ACT CLAIM
        (COUNT I) ...................................................................................................................... 5

        A.    Plaintiffs Do Not Allege They Participated in the Market Where
              Anticompetitive Behavior Occurred. ....................................................................... 6

        B.    Cardholders Are Not Efficient Enforcers. ............................................................... 7

II.     PLAINTIFFS' STATE LAW ANTITRUST CLAIMS FAIL FOR LACK OF
        STANDING AND ADDITIONAL DEFICIENCIES (COUNTS III–V) ....................... 10

        A.    Plaintiffs Lack Standing to Bring State Antitrust Claims ...................................... 10

        B.    Plaintiffs' State Antitrust Claims Suffer From Additional Defects That
              Require Dismissal .................................................................................................. 11

III.    PLAINTIFFS' CONSUMER PROTECTION CLAIMS ARE DEFICIENT AND
        SHOULD BE DISMISSED (COUNT VI) .................................................................. 12

IV.     STATUTES OF LIMITATION WOULD CURTAIL ANY SURVIVING
        CLAIMS ...................................................................................................................... 15

        A.    The Discovery Rule Does Not Apply ..................................................................... 16

        B.    Plaintiffs Have Not Adequately Alleged Fraudulent Concealment ........................ 17

V.      PLAINTIFFS' SHERMAN ACT AND STATE ANTITRUST CLAIMS FAIL
        FOR THE SAME REASONS AS DOJ'S CLAIMS .................................................... 18

        A.    Plaintiffs' Alleged Product Markets Are Implausible ............................................ 18

        B.    Plaintiffs' Volume-Discount Claims Fail as a Matter of Law ................................ 20

i

    C.   Plaintiffs' "Agreement-Not-To-Compete" Claims Fail ............................................. 21

CONCLUSION.................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Abbott v. Golden Grain Co.*,
  677 F. Supp. 3d 940 (E.D. Mo. 2023) ....................................................................... 13

*AJ Energy LLC v. Woori Bank*,
  No. 18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019), *aff'd*,
  829 F. App'x 533 (2d Cir. 2020) ................................................................. 18, 19, 20

*Allapattah Services, Inc. v. Exxon Corp.*,
  188 F.R.D. 667 (S.D. Fla. 1999) ............................................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 5

*Associated General Contractors of California, Inc. v. California State Council of
  Carpenters ("AGC")*,
  459 U.S. 519 (1983) ............................................................................................ *passim*

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) .................................................................................... 20

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ..................................................................................... 21

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ..................................................................................... 21

*Ellison-Robbins v. Bimbo Bakeries USA, Inc.*,
  No. 4:23-CV-00232-SEP, 2024 WL 4332049 (E.D. Mo. Sept. 27, 2024) ............... 13

*English v. Danone N. Am. Pub. Benefit Corp.*,
  678 F. Supp. 3d 529 (S.D.N.Y. 2023) ...................................................................... 10

*Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*,
  368 F. Supp. 3d 681 (S.D.N.Y. 2019) ...................................................................... 18

*Fisk v. Letterman*,
  401 F. Supp. 2d 362 (S.D.N.Y. 2005) ...................................................................... 19

*Freeman Indus. LLC v. Eastman Chem. Co.*,
  172 S.W.3d 512 (Tenn. 2005) ................................................................................... 12

iii

*Fucile v. Visa U.S.A., Inc.*,
    No. S1560-03, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004)..........................................14

*GateGuard, Inc. v. Amazon.com Inc.*,
    No. 21-CV-9321 (JGK), 2023 WL 2051739 (S.D.N.Y. Feb. 16, 2023)...............................19

*Gatt Commc'ns, Inc. v. PMC Assocs. L.L.C.*,
    711 F.3d 68 (2d Cir. 2013)...........................................................................................................5

*Gibbons v. Nuckolls, Inc.*,
    216 S.W.3d 667 (Mo. 2007) ...................................................................................................13

*Gottlieb v. Amica Mut. Ins. Co.*,
    57 F.4th 1 (1st Cir. 2022)....................................................................................................14, 15

*Higgins v. New York Stock Exch., Inc.*,
    942 F.2d 829 (2d Cir. 1991).....................................................................................................16

*Hightower v. Celestron Acquisition, LLC*,
    No. 5:20-CV-03639-EJD, 2021 WL 2224148 (N.D. Cal. June 2, 2021)................................16

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977).....................................................................................................................1

*In re Actos End Payor Antitrust Litig.*,
    No. 13-CV-9244 RA, 2015 WL 5610752 (S.D.N.Y. Sept. 22, 2015), *aff'd in*
    *part and vacated on other grounds*, 848 F.3d 89 (2d Cir. 2017)......................................13, 14

*In re Aggrenox Antitrust Litig.*,
    94 F. Supp. 3d 224 (D. Conn. 2015) .......................................................................................13

*In re Aluminum Warehousing Antitrust Litig.*,
    833 F.3d 151 (2d Cir. 2016).......................................................................................................6

*In re Amitiza Antitrust Litig.*,
    No. 21-CV-11057-MJJ, 2024 WL 4250224 (D. Mass. Aug. 21, 2024) ..................................12

*In re Cattle & Beef Antitrust Litig.*,
    687 F. Supp. 3d 828 (D. Minn. 2023) ...............................................................................14, 15

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
    261 F. Supp. 2d 188 (E.D.N.Y. 2003) ..............................................................................16, 18

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*.,
    No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015)...........................................14, 15

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
    362 F. Supp. 3d 510 (N.D. Ill. 2019) .....................................................................................11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...................................................................11

*In re Effexor Antitrust Litig.*,
357 F. Supp. 3d 363 (D.N.J. 2018) ........................................................................12

*In re Glumetza Antitrust Litig.*,
611 F. Supp. 3d 848 (N.D. Cal. 2020) ...................................................................12

*In re Google Digital Advert. Antitrust Litig.*,
627 F. Supp. 3d 346 (S.D.N.Y. 2022)......................................................................21

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
No. 19-MD-02918-MMC, 2021 WL 4306018 (N.D. Cal. Sept. 22, 2021) .............12

*In re Inclusive Access Course Materials Antitrust Litig.*,
544 F. Supp. 3d 420 (S.D.N.Y. 2021) .....................................................................18

*In re Lipitor Antitrust Litig.*,
336 F. Supp. 3d 395 (D.N.J. 2018) ........................................................................11

*In re Livent, Inc. Noteholders Secs. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) .....................................................................19

*In re Opana ER Antitrust Litig.*,
162 F. Supp. 3d 704 (N.D. Ill. 2016) .....................................................................15

*In re Platinum & Palladium Antitrust Litig.*,
61 F.4th 242 (2d Cir. 2023) .....................................................................................7

*In re Pre-Filled Propane Tank Antirust Litig.*,
No. 14-02567-MD-WGAF, 2019 WL 4796528 (W.D. Mo. Aug. 21, 2019) ..................15, 16

*In re Propranolol Antitrust Litig.*,
249 F. Supp. 3d 712 (S.D.N.Y. 2017).....................................................................16

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
64 F. Supp. 3d 665, 701-02 (E.D. Pa. 2014)......................................................12, 13

*In re Wellbutrin XL Antitrust Litig.*,
756 F. Supp. 2d 670 (E.D. Pa. 2010) .....................................................................11

*IQ Dental Supply, Inc. v. Henry Schein, Inc.*,
924 F.3d 57 (2d Cir. 2019).....................................................................................8, 9

*Ireland v. Microsoft Corp.*,
No. 00CV-201515, 2001 WL 18668946, (Mo. Cir. Jan. 24, 2001).........................13

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
    897 F.3d 88 (2d Circ. 2018)........................................................................10

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*,
    729 F. App'x 528 (9th Cir. 2018) .............................................................18

*LLM Bar Exam, LLC v. Barbri, Inc.*,
    271 F. Supp. 3d 547 (S.D.N.Y. 2017)........................................................19

*New York v. Meta Platforms, Inc.*,
    66 F.4th 288 (D.C. Cir. 2023)....................................................................21

*Oliver v. Am. Express Co.*,
    No. 19-CV-566 (NGG) (SMG), 2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020)..................8, 9

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
    555 U.S. 438 (2009)..............................................................................20, 21

*Palladino v. JPMorgan Chase & Co.*,
    No. 23-CV-1215 (MKB) (JAM), 2024 WL 5248824 (E.D.N.Y. Dec. 30, 2024)........6, 7, 8, 10

*Regeneron Pharms., Inc. v. Novartis Pharma AG*,
    96 F.4th 327 (2d Cir. 2024) .....................................................................18

*Salveson v. JP Morgan Chase & Co.*,
    166 F. Supp. 3d 242 (E.D.N.Y.), *aff'd*, 663 F. App'x 71 (2d Cir. 2016)..................6, 7, 9, 10

*Salveson v. JP Morgan Chase & Co.*,
    663 F. App'x 71 (2d Cir. 2016) .................................................................1, 6

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
    22 F.4th 103 (2d Cir. 2021) .................................................................5, 7, 10

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
    737 F. Supp. 2d 380 (E.D. Pa. 2010) ......................................................14

*State ex rel. Fitch v. Yazaki N. Am., Inc.*,
    294 So. 3d 1178 (Miss. 2020)...................................................................11

*Stromberg v. Qualcomm Inc.*,
    14 F.4th 1059 (9th Cir. 2021) ...................................................................11

*Valassis Commc'ns, Inc. v. News Corp.*,
    No. 17-CV-7378 (PKC), 2019 WL 802093 (S.D.N.Y. Feb. 21, 2019) ............20, 21

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)..................................................................................21

*Vinci v. Waste Mgmt., Inc.*,
  36 Cal. App. 4th 1811 (1995) ...........................................................................................10

*Warren v. Coca-Cola Co.*,
  670 F. Supp. 3d 72 (S.D.N.Y. 2023) ................................................................................10

*Z Techs. Corp. v. Lubrizol Corp.*,
  No. 12-12206, 2013 WL 440109 (E.D. Mich. Feb. 5, 2013) ...........................................16

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  401 U.S. 321 (1971) ........................................................................................................16

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ............................................................................................20

## Statutes

6 Del. C. § 2108 ..................................................................................................................12

15 U.S.C. § 15b ...................................................................................................................15

Ark. Code Ann. § 4-75-315 .................................................................................................11

Cal. Bus. & Prof. Code § 16750.1 ......................................................................................15

Colo. Rev. Stat. Ann. § 6-4-115 ..........................................................................................12

Ill. Comp. Stat. § 10/7(2) ....................................................................................................11

Kan. Stat. Ann. § 60-512 .....................................................................................................15

Mo. Rev. Stat. § 407.025.1 ..................................................................................................13

Mo. Rev. Stat. § 516.120 .....................................................................................................15

Mont. Code Ann. § 30-14-133(1)(a) ...................................................................................14

N.J. Stat. Ann. § 56:9-12 .....................................................................................................12

S.C. Code Ann. § 39-5-140(a) .............................................................................................14

Vt. Stat. Ann. tit. 9, § 2461 .................................................................................................15

Wis. Stat. Ann. § 133.18(2) .................................................................................................15

## Other Authorities

Fed. R. Civ. P. 9(b) ..............................................................................................................18

Fed. R. Civ. P. 12(b)(6)................................................................................................................5

Fed. R. Civ. P. 23(b)(2)..............................................................................................................17

**Table of Short Form Citations**

| Short Form Citation | Long Form Citation |
|---|---|
| Complaint or Compl. | Amended Consolidated Cardholder Complaint, *In re: Visa Debit Card Antitrust Litigation*, Case No. 1:24-cv-07435-JGK (S.D.N.Y.), ECF No. 53 |
| Merchant CCAC | Merchant Plaintiffs' Consolidated Class Action Complaint, *In re: Visa Debit Card Antitrust Litigation*, Case No. 1:24-cv-07435-JGK (S.D.N.Y.), ECF No. 38 |
| DOJ Compl. | Complaint, *United States of America v. Visa Inc.*, Case No. 1:24-cv-07214 (S.D.N.Y.), ECF No. 1 |
| *Pulse* Compl. | *Pulse Network LLC v. Visa Inc.*, Case No. 4:14-cv-03391 (S.D. Tex.), ECF No. 1 |
| Visa DOJ MTD | Memorandum of Law in Support of Visa Inc.'s Motion to Dismiss the Complaint, Case No. 1:24-cv-07214 (S.D.N.Y.), ECF No. 39 |

## INTRODUCTION

This action arises out of the same conduct that the Department of Justice ("DOJ") has challenged as anticompetitive in *United States v. Visa Inc.*, 1:24-cv-7214 (S.D.N.Y.). Plaintiffs here are cardholders who bring claims under the Sherman Act and state antitrust and consumer protection statutes seeking damages and injunctive relief. Plaintiffs' claims, which mimic those brought by the DOJ, should be dismissed in their entirety for the reasons in Visa's motion to dismiss the DOJ action. Plaintiffs also lack standing to bring their federal and state claims, their state claims suffer additional pleading deficiencies, and statutes of limitations would curtail any surviving claims.

First, as cardholders, Plaintiffs lack standing to bring a federal antitrust claim. Plaintiffs admit that they do not pay fees directly to Visa and do not purchase debit network services from Visa. Rather, they allege that Visa charges fees directly to banks, which pass on those fees to merchants, which, in turn, pass on those fees to consumers in higher prices for goods and services. Because cardholders do not participate in the alleged market where the allegedly anticompetitive conduct occurred and are not efficient enforcers of antitrust laws, Plaintiffs' claim for injunctive relief under federal antitrust law (Count I) is barred by *Associated General Contractors of California, Inc. v. California State Council of Carpenters ("AGC")*, 459 U.S. 519, 537–45 (1983), and *Salveson v. JP Morgan Chase & Co.*, 663 F. App'x 71, 74 (2d Cir. 2016). On February 21, Plaintiffs notified Visa that they intend to move for voluntary dismissal of their claim for damages under federal law (Count II), which is likewise barred by *AGC* as well as by *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 741 (1977). *See Salveson*, 663 F. App'x at 74. Based on Plaintiffs' representation, Count II is not addressed further, but Visa requests dismissal of Count II if it is not voluntarily dismissed.

Second, Plaintiffs' state law antitrust claims (Count III–V) and consumer protection claims (Count VI) should be dismissed because named Plaintiffs reside in either California or Missouri, have not pled or lack viable claims under those states' laws, and thus lack Article III standing to sue under the laws of other states. Plaintiffs fail to state a claim under the laws of those other states in any event.

Third, even if any of Plaintiffs' federal or state claims were to survive, the claims are barred—or damages should be substantially limited—by the applicable statutes of limitations.

Even if the cardholder Plaintiffs could overcome these threshold hurdles, and they cannot, their Complaint fails for the same reasons set forth in Visa's motion to dismiss DOJ's complaint. The cardholders' allegations underscore why the theories asserted across the three related cases fail to state a claim. Plaintiffs here abandon DOJ's justifications for excluding Interbank Payment Networks such as ACH from the alleged markets and contend instead that ACH is not a reasonable substitute for debit cards for "routine" purchases like at grocery stores. But Plaintiffs' markets are not limited to routine purchases. Plaintiffs allege no facts to make it plausible that ACH is not a reasonable substitute for large swaths of purchases in the markets they have defined.

**BACKGROUND[1]**

## I.    THE PARTIES AND DEBIT TRANSACTIONS

Visa operates electronic payments networks, including debit networks, and provides payment card network services to financial institutions to facilitate payment transactions. Compl. ¶ 17. Plaintiffs are four consumers from Missouri and California who allege that they used debit cards that designate Visa as the front-of-card network to pay merchants for goods and services. *Id.* ¶¶ 13–16.

---

[1]    This motion relies on Plaintiffs' allegations, many of which are inaccurate.

Plaintiffs identify at least five entities in any debit card transaction: consumer; consumer's bank ("issuing bank"); merchant; merchant's bank ("acquiring bank"); and debit network. *Id.* ¶ 45 fig. 3. According to Plaintiffs, when a consumer uses a debit card at a merchant, (1) the merchant sends the consumer's account information to the acquiring bank; (2) the acquiring bank communicates with the network; (3) the network submits the transaction to the issuing bank for authorization; (4) the issuing bank sends the response to the merchant through the network and acquiring bank; and (5) the issuing bank transfers the money from the consumer's bank account to the acquiring bank for deposit in the merchant's account. *Id.* ¶ 45. Issuing banks and acquiring banks employ additional intermediaries known as "processors," which further separate the network from the cardholder (and merchant) on both sides of a transaction. *Id.* ¶ 41 nn.1–2.

Plaintiffs concede that "[c]onsumers do not pay debit networks like Visa directly to use their services." *Id.* ¶ 54. "Rather, debit networks charge fees to both issuing banks and acquiring banks for every debit transaction." *Id.* Plaintiffs allege that they purchase goods and services from merchants, *id.* ¶¶ 13–16, and suffer injury only if merchants "pass on" overcharges to consumers through "increased prices for goods and services," *id.* ¶¶ 56, 153–54.

## II.    ALLEGED PRODUCT MARKETS AND CHALLENGED CONDUCT

Plaintiffs and DOJ challenge the same conduct related to debit networks and allege the same two product markets: (1) general purpose debit network services; and (2) general purpose card-not-present debit network services. *Compare id.* ¶¶ 159–70 *with* DOJ Compl. ¶¶ 151–63. Both complaints define "debit network services" to mean services that "facilitate the debit and transfer of consumers' bank account funds . . . between consumers and merchants, and their respective banks." *Compare* Compl. ¶ 160 *with* DOJ Compl. ¶ 152. Like DOJ, Plaintiffs' alleged markets include traditional debit card networks (both so-called "front-of-card networks" and so-called "back-of-card PIN networks") and Fintech Debit Networks (i.e., technology companies that

provide account-transfer services to consumers and merchants). *Compare* Compl. ¶¶ 164, 167 *with* DOJ Compl. ¶ 156. And, like DOJ, Plaintiffs exclude from their alleged markets "Interbank Payment Networks" such as Automated Clearing House ("ACH") or Real Time Payment ("RTP") even though Fintech Debit Networks operate based on Interbank Payment Networks. *Compare* Compl. ¶¶ 160, 163, 166 *with* DOJ Compl. ¶¶ 152, 159. But Plaintiffs abandon DOJ's (and the merchant plaintiffs') justifications for this exclusion. DOJ Compl. ¶ 159 (alleging that ACH lacks "fraud detection, dispute resolution, and chargeback services"). Plaintiffs allege instead that Interbank Payment Networks are not substitutes for debit cards for "routine purchases" such as at groceries—without limiting the alleged markets to so-called "routine" purchases. Compl. ¶ 166.

Plaintiffs parrot DOJ's theory that Visa's volume-based agreements present merchants or their acquiring banks with coercive choices to favor Visa over rival networks. *Compare* Compl. ¶¶ 74–114 *with* DOJ Compl. ¶¶ 70–112. But Plaintiffs do not allege that they are parties to those agreements or have ever faced a coercive choice between Visa and other networks. Plaintiffs also echo DOJ's theory that Visa's discount agreements with issuers create incentives for issuers to favor Visa over rival networks. *Compare* Compl. ¶¶ 92–98 *with* DOJ Compl. ¶¶ 88–94. But Plaintiffs allege no facts as to how they—as cardholders—suffer harm from decreases in their issuing banks' costs.

Finally, Plaintiffs adopt DOJ's allegation that Visa agreed not to compete with various technology companies. *Compare* Compl. ¶¶ 122–39 *with* DOJ Compl. ¶¶ 119–37. Those allegations are contradicted by the plain language of the Visa agreements at issue.[2]

---

[2]    Unlike DOJ, Plaintiffs include allegations about Visa's unconsummated acquisition of technology company Plaid, Compl. ¶¶ 141–45, but do not allege that the proposed transaction affected merchants or cardholders.

### III.    PLAINTIFFS' CLAIMS

Plaintiffs bring a claim under Sections 1 and 2 of the Sherman Act for injunctive relief (Count I).  Plaintiffs also bring claims for damages under state antitrust laws (Counts III–V) and consumer protection laws (Count VI).[3]

### LEGAL STANDARD

A complaint cannot survive a motion to dismiss under Rule 12(b)(6) unless it contains "sufficient factual matter" to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement[, the court] must dismiss it as a matter of law."  *Gatt Commc'ns, Inc. v. PMC Assocs. L.L.C.*, 711 F.3d 68, 75–76 (2d Cir. 2013).

### ARGUMENT

### I.    PLAINTIFFS LACK STANDING TO BRING A SHERMAN ACT CLAIM (COUNT I)

"To establish antitrust standing, a plaintiff must show (1) antitrust injury, which is injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful, and (2) that he is a proper plaintiff in light of four 'efficient enforcer' factors[.]"  *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 115 (2d Cir. 2021) (internal quotations and citation omitted); *see also AGC*, 459 U.S. at 542.  Neither element is satisfied here for Plaintiffs' Sherman Act injunctive relief claim.

---

[3]    For convenience, Appendix A is a chart tracking how each basis for dismissal applies to each state law claim.

### A.    Plaintiffs Do Not Allege They Participated in the Market Where Anticompetitive Behavior Occurred.

To adequately plead antitrust injury, "[p]laintiffs must show that they participated in the relevant market where anticompetitive behavior occurred — participating in a 'separate, albeit related' market is not sufficient." *Palladino v. JPMorgan Chase & Co.*, No. 23-CV-1215 (MKB) (JAM), 2024 WL 5248824, at *13 (E.D.N.Y. Dec. 30, 2024) (citation omitted); *see also In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158 (2d Cir. 2016) ("[O]nly those that are participants in the defendants' market can be said to have suffered antitrust injury.").

Plaintiffs allege a relevant market of "general purpose debit network services" (Compl. ¶ 160) in which allegedly anticompetitive conduct is directed at acquiring banks and (through those banks and other intermediaries) at merchants. *Id.* ¶¶ 54–56, 74, 153–54.  But Plaintiffs claim to be injured not from participating in this alleged market for network services but instead from merchants "pass[ing] on" overcharges in "prices for goods and services." *Id.* ¶¶ 56, 153–54.  This identical flaw doomed cardholder claims in both *Palladino v. JPMorgan Chase & Co.*, 2024 WL 5248824, and *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242 (E.D.N.Y.), *aff'd*, 663 F. App'x 71 (2d Cir. 2016).  In those cases, as here, cardholder plaintiffs alleged that anticompetitive conduct occurred in a general purchase card services market.  *See Palladino*, 2024 WL 5248824, at *12–14; *Salveson*, 166 F. Supp. 3d at 264; *compare* Compl. ¶ 111–12, 160.  But they were simply "consumer[s] of goods sold by merchants who happen to be part of the affected market." *Salveson*, 166 F. Supp. 3d at 262 (citation omitted).  On motions to dismiss, the courts in those cases concluded that cardholders—who allegedly paid "inflated prices for everything" as a result of the challenged conduct—failed to allege antitrust injury because they engaged in transactions in a related but "separate market from where the allegedly anticompetitive behavior occurred."

*Palladino*, 2024 WL 5248824, at *15; *accord Salveson*, 166 F. Supp. 3d at 261.  The same is true here.

### B.    Cardholders Are Not Efficient Enforcers.

"[E]ven where a plaintiff 'has cleared the antitrust-injury hurdle,' the plaintiff must further 'show that it is an 'efficient enforcer' of the antitrust laws.'"  *Schwab*, 22 F.4th at 115 (citation omitted).  "In *AGC*, the Supreme Court outlined four factors to guide this analysis: (1) the directness or indirectness of the asserted injury; (2) the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement; (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries."  *Id.* (cleaned up).  "[T]he third and fourth efficient enforcer factors 'are not relevant' to standing to pursue [injunctive] relief," *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 266 n.5 (2d Cir. 2023), but are relevant to Plaintiffs' state damages claims, as discussed in Sections II and III.  All of these factors weigh against Plaintiffs here being efficient enforcers of federal or state antitrust law.  *See Salveson*, 166 F. Supp. 3d at 259–64; *Palladino*, 2024 WL 5248824, at *11–15.

### 1.    Plaintiffs' Alleged Injuries Are Not Direct

Plaintiffs' alleged injuries are derivative, not direct.  "To assess the directness of a plaintiff's injury, . . . the court 'look[s] to the chain of causation between [the alleged] injury and the alleged restraint in the market.'"  *Salveson*, 166 F. Supp. 3d at 262 (citation omitted).  The Second Circuit "has repeatedly followed the first-step rule in the antitrust context," which "draw[s] a line between those whose injuries resulted from their direct transactions with the [defendant] and those whose injuries stemmed from their deals with third parties."  *Platinum & Palladium*, 61 F.4th at 259–60.

Plaintiffs' alleged injuries do not result from direct transactions with Visa. Plaintiffs allege: (1) "[t]he acquiring bank pays Visa a 'network fee' on every transaction" (Compl. ¶ 55); (2) "Visa also charges acquiring banks a fixed monthly fee" (*id.*); (3) "[t]he acquiring bank also [pays] an Interchange Fee . . . to the issuing bank" (*id.*); and (4) "[t]he merchant is generally responsible for at least some of these fees and also pays an additional fee to the acquiring bank for its services" (*id.* ¶ 56). Plaintiffs' alleged economic impact derives only from effects felt more directly by acquirers, processors, and merchants. *Id.* In *Palladino*, the court held that cardholders' injuries from allegedly inflated prices at merchants are "secondary, consequential, and remote" because "(1) they rely on injury to third parties (merchants) and (2) they are an indirect result of merchants' pricing decisions based on Defendants' conduct." 2024 WL 5248824, at *15. The same logic applies here.

### 2.    DOJ, a Rival Network, and Merchants Have Sued for the Same Conduct

DOJ, a rival network, and merchants have sued Visa for debit monopolization and related antitrust claims based on the same transactions and conduct.[4] While those cases lack merit for many reasons, the existence of those plaintiffs "diminishes the justification for allowing a more remote party such as [cardholders] to perform the office of a private attorney general." *AGC*, 459 U.S. at 542; *see also IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 66 (2d Cir. 2019) (plaintiffs with more direct injuries already suing defendant for same alleged violations); *Oliver v.*

---

[4]    In addition to the cases before this Court, as discussed in in Section IV.A, Pulse Network sued Visa for debit monopolization and merchants elsewhere are pursuing debit monopolization claims against Visa. *See infra* § IV.A.

*Am. Express Co.*, No. 19-CV-566 (NGG) (SMG), 2020 WL 2079510, at *10 (E.D.N.Y. Apr. 30, 2020) (dismissing consumers' claims: "multiple sets of plaintiffs" had sued for same conduct).

### 3.    Plaintiffs' Alleged Injuries Are Speculative

Plaintiffs' alleged injuries are speculative because, to prove injury, Plaintiffs would need to show that (1) the challenged conduct led to higher (not lower) fees to acquirers; (2) those allegedly higher fees were passed on to merchants; (3) merchants did not absorb those fees; and (4) merchants increased prices of goods or services purchased by Plaintiffs because of those fees and not other reasons (e.g., fees associated with payment forms outside the alleged market) or other factors (e.g., inflation). *See AGC*, 459 U.S. at 542 (injuries too speculative if they were indirect and "may have been produced by independent factors"); *IQ Dental Supply*, 924 F.3d at 67 (derivative nature of injuries rendered recovery too speculative); *Oliver*, 2020 WL 2079510, at *11 (injury to cardholders involved "several stages of speculation," including "how . . . decisions [by upstream entities] would trickle over into the retail costs charged" by merchants to consumers) (cleaned up).

### 4.    Plaintiffs' Alleged Injuries Cannot be Apportioned

Plaintiffs' claims invite duplicative recoveries and unworkable challenges in apportioning damages. *See AGC*, 459 U.S. at 543–44 ("stress[ing] the importance of avoiding either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other"). Given the alleged payment structure, the economic impact of any alleged overcharge would be borne first by acquirers, then by merchants (and potentially other intermediaries before merchants), and then by cardholders. *See supra* at 8. Plaintiffs' claims thus create "a large and predictable risk of duplicative recovery . . . as well as the need for 'long and complicated proceedings' to determine the damages due to cardholders." *Salveson*, 166 F. Supp. 3d at 264 (citation omitted).

\* \* \*

In sum, none of the *AGC* factors supports standing of cardholders.  This Court should follow *Salveson* and *Palladino* and dismiss Count I for injunctive relief (as well as damages claims in states that apply *AGC*, as discussed in Sections II and III below).

## II.    PLAINTIFFS' STATE LAW ANTITRUST CLAIMS FAIL FOR LACK OF STANDING AND ADDITIONAL DEFICIENCIES (COUNTS III–V)

### A.    Plaintiffs Lack Standing to Bring State Antitrust Claims

As to the two states in which they reside, Plaintiffs do not allege Missouri antitrust claims and lack antitrust standing to bring California Cartwright Act claims.  Compl. ¶¶ 13–16.  California applies *AGC* to determine standing under the Cartwright Act and, for the reasons above, *AGC* compels dismissal of those claims for damages.  *See Schwab*, 22 F.4th at 120 ("California law substantially incorporates the *AGC* factors."); *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814–15 (1995) (applying the *AGC* factors to Cartwright Act); *Palladino*, 2024 WL 5248824, at \*9 (dismissing Cartwright Act claims).

Because Plaintiffs have no viable antitrust claim in the states in which they reside, their antitrust claims on behalf of unnamed class members under the antitrust laws of thirty other states fail for lack of Article III standing.  *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 94, 96 (2d Circ. 2018); *see also English v. Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529, 541 (S.D.N.Y. 2023) (no Article III standing to assert claims under other states where plaintiff (a Texas citizen) failed to state a Texas claim); *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 87 n.10 (S.D.N.Y. 2023) (plaintiff "cannot bring claims for products she did not purchase in different states" (cleaned up)).

### B.    Plaintiffs' State Antitrust Claims Suffer From Additional Defects That Require Dismissal

Even if Plaintiffs could bring state claims outside of Missouri and California, those claims fail for additional independent reasons:

- *AGC* bars antitrust claims in most other jurisdictions.  *See* Appendix B.

- Only attorneys general may bring indirect purchaser antitrust claims in **Illinois** and **Arkansas**.  *See* 740 Ill. Comp. Stat. § 10/7(2); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 676–77 (E.D. Pa. 2010) (Illinois); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 418 (D.N.J. 2018) (same after examination of split among district courts); Ark. Code Ann. § 4-75-315; *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1069 n.3 (9th Cir. 2021) (Arkansas).[5]

- The **Mississippi** Antitrust Act applies only to conduct "accomplished at least in part by transactions lying wholly within Mississippi."  *State ex rel. Fitch v. Yazaki N. Am., Inc.*, 294 So. 3d 1178, 1189 (Miss. 2020).  Here, Plaintiffs allege that Visa engages in "*interstate* commerce."  Compl. ¶ 11 (emphasis added).

- The absence of any alleged specific misconduct or effects in **South Dakota** and **Wisconsin**, or effects on **Tennessee** commerce, doom those claims.  *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1098–99 (N.D. Cal. 2007) (dismissing South Dakota claim where plaintiff did not allege specific conduct or effect within South Dakota beyond inflated prices); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 549 (N.D. Ill. 2019) (same as to Wisconsin);

---

[5]    Merchant plaintiffs do not assert Arkansas state antitrust claims.

*Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005) (same as to Tennessee).

- The absence of a Utah named plaintiff is fatal to the **Utah** claims. *See In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 393 (D.N.J. 2018) (Utah Code Ann. § 76-10-3109(1)(a) "require[s] at least one Utah citizen or resident [as] a named plaintiff").

- Plaintiffs cannot seek damages before the effective date of *Illinois Brick* repealer laws in **Colorado** (June 7, 2023), **Delaware** (September 30, 2024), and **New Jersey** (August 5, 2022). *See* Colo. Rev. Stat. Ann. § 6-4-115; 6 Del. C. § 2108; N.J. Stat. Ann. § 56:9-12; *In re Amitiza Antitrust Litig.*, No. 21-CV-11057-MJJ, 2024 WL 4250224, at *31 (D. Mass. Aug. 21, 2024) (damages only after date of Colorado *Illinois Brick* repeal); *In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 867–68 (N.D. Cal. 2020) (repealer statutes "presumed to apply only prospectively").

## III. PLAINTIFFS' CONSUMER PROTECTION CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED (COUNT VI)

Plaintiffs' consumer protection claims under the laws of seven states should be dismissed for independent reasons.

First, Plaintiffs do not assert, or fail adequately to allege, consumer protection claims in their resident states (California or Missouri) and thus lack Article III standing to bring claims under non-resident jurisdictions. *See supra* at 10. Plaintiffs do not assert a California consumer protection claim. They attempt to—but cannot—do an "end-run around [Missouri's] prohibition of antitrust claims by indirect purchasers" by recasting their claim under the Missouri Merchandising Practices Act ("MMPA"). *See In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-MD-02918-MMC, 2021 WL 4306018, at *22 (N.D. Cal. Sept. 22, 2021) (dismissing indirect purchaser antitrust claim brought under MMPA); *In re Suboxone*

*(Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 701–02 (E.D. Pa. 2014) (same; citing *Ireland v. Microsoft Corp.*, No. 00CV-201515, 2001 WL 18668946, at *1 (Mo. Cir. Jan. 24, 2001), for dismissal of indirect claims brought under both Missouri's antitrust law and consumer protection statutes; and distinguishing *Gibbons v. Nuckolls, Inc.*, 216 S.W.3d 667, 669–70 (Mo. 2007), as not applicable to indirect antitrust claims repackaged as MMPA claims).

Plaintiffs do not allege that they "purchased merchandise from the defendant" as required by the MMPA. *Ellison-Robbins v. Bimbo Bakeries USA, Inc.*, No. 4:23-CV-00232-SEP, 2024 WL 4332049, at *2 (E.D. Mo. Sept. 27, 2024) (cleaned up). Plaintiffs admit that they do not purchase anything from Visa, as Visa "sell[s] [its] services to both issuers and acquirers," Compl. ¶ 160, while Plaintiffs purchase different "goods and services" from merchants, *id.* ¶ 56. Nor do Plaintiffs plead facts to "'show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer.'" *Abbott v. Golden Grain Co.*, 677 F. Supp. 3d 940, 946 (E.D. Mo. 2023) (quoting Mo. Rev. Stat. § 407.025.1). To the contrary, Plaintiffs allege that "consumers are unaware of how, or even that, their money is allocated among merchants, debit networks, processors, and the participating financial institutions." Compl. ¶ 182.

Second, even if Plaintiffs had Article III standing to bring non-resident consumer protection claims, Plaintiffs do not adequately plead the elements of those claims. As one court explained when dismissing dozens of similarly pleaded consumer protection claims, "plaintiffs cannot simply enumerate a long list of state-law claims for states where they might otherwise have no available antitrust recovery and rely on the defendants and the court to sort out whether or how those laws can act as surrogates for antitrust law." *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255–56 (D. Conn. 2015); *see also In re Actos End Payor Antitrust Litig.*, No. 13-CV-9244

RA, 2015 WL 5610752, at *27–28 (S.D.N.Y. Sept. 22, 2015) ("[M]erely restat[ing] their antitrust allegations as separate consumer claims, providing no distinct factual basis for a violation of consumer protection law" is insufficient.), *aff'd in part and vacated on other grounds*, 848 F.3d 89 (2d Cir. 2017).

Third, Plaintiffs fail to plead essential elements of consumer protection claims, or plead allegations inconsistent with those claims (or both):

- The **Florida** Deceptive and Unfair Trade Practices Act ("FDUTPA") is not a vehicle to repackage doomed indirect payor antitrust claims. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*., No. 9 CV 3690, 2015 WL 3988488, at *19 (N.D. Ill. June 29, 2015) ("The contours of Florida's antitrust laws would be rendered moot were the Court to allow Indirect Plaintiffs to repackage their dead-on-arrival antitrust claims as FDUTPA claims."). Moreover, causation under the FDUTPA "must be direct, rather than remote or speculative." *Id.* at *18 (citation omitted); *see supra* § I.B.1 & 3.

- **Vermont** requires *AGC* standing. *See In re Cattle & Beef Antitrust Litig.*, 687 F. Supp. 3d 828, 843 n.7, 846 (D. Minn. 2023); *Fucile v. Visa U.S.A., Inc.*, No. S1560-03, 2004 WL 3030037, at *3 (Vt. Super. Ct. Dec. 27, 2004).

- **Montana** and **South Carolina** do not allow consumers to bring class actions. *See* Mont. Code Ann. § 30-14-133(1)(a); S.C. Code Ann. § 39-5-140(a); *In re Cattle & Beef Antitrust Litig.*, 687 F. Supp. 3d at 845 (Montana).

- **Idaho**, **Florida**, **Massachusetts**, and **Vermont** require deceptive conduct or unconscionable sales conduct directed at consumers—none of which is alleged. *See Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 409–11 (E.D. Pa. 2010) (Idaho law); *Gottlieb v. Amica Mut. Ins. Co.*,

57 F.4th 1, 10 (1st Cir. 2022) (Massachusetts law); Vt. Stat. Ann. tit. 9, § 2461 (consumer must "contract[] for goods or services in reliance upon false or fraudulent representations or practices"); *In re Cattle & Beef Antitrust Litig.*, 687 F. Supp. 3d at 846 (Vermont law); *In re Dairy Farmers*, 2015 WL 3988488, at *18 (Florida law).

## IV.    STATUTES OF LIMITATION WOULD CURTAIL ANY SURVIVING CLAIMS

Plaintiffs filed suit in October 2024 and seek damages back to January 1, 2012. The limitations period for private actions is four years under the Sherman Act and Cartwright Act (15 U.S.C. § 15b; Cal. Bus. & Prof. Code § 16750.1), and five years under Missouri's MMPA (Mo. Rev. Stat. § 516.120).[6] Plaintiffs allege that they "had no actual or constructive knowledge of Visa's anticompetitive scheme until, at the earliest, September 24, 2024, when the complaint was filed [by DOJ]" and that "Plaintiffs could not have discovered . . . Visa's competitive scheme . . . before that date" because it "was self-concealing." Compl. ¶¶ 183–85. They thus assert that "claims were tolled by the discovery rule, the continuing violations doctrine, and fraudulent concealment." *Id.* ¶¶ 183, 186. These assertions are contrary to well-publicized antitrust actions brought against Visa at least as early as 2013. At a minimum, Plaintiffs' damages claims should be narrowed by the applicable limitations periods.[7]

---

[6]    The statutes of limitations applicable to Plaintiffs' other state claims range from three to six years. *See*, *e.g.*, Kan. Stat. Ann. § 60-512 (three years); Wis. Stat. Ann. § 133.18(2) (six years).

[7]    In jurisdictions where the continuing violation doctrine is not recognized—including the District of Columbia, Florida, Kansas, Massachusetts, Mississippi, Nebraska, New Hampshire, New York, Tennessee, Vermont, and Wisconsin—Plaintiffs' claims are time-barred altogether. *See In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 725 (N.D. Ill. 2016); *In re Pre-Filled*

**A.      The Discovery Rule Does Not Apply**

The discovery rule does not apply to federal antitrust claims.  *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971); *Higgins v. New York Stock Exch., Inc.*, 942 F.2d 829, 832 (2d Cir. 1991).  Where states incorporate federal jurisprudence into their state antitrust regime, "federal jurisprudence regarding . . . the statute of limitations . . . should apply equally to Plaintiff's state law claims."  *Z Techs. Corp. v. Lubrizol Corp.*, No. 12-12206, 2013 WL 440109, at *6 (E.D. Mich. Feb. 5, 2013); *see also Hightower v. Celestron Acquisition, LLC*, No. 5:20-CV-03639-EJD, 2021 WL 2224148, at *9 (N.D. Cal. June 2, 2021).  Plaintiffs offer no specific allegations as to which, if any, states apply a discovery rule.

Even if a discovery rule applied, Plaintiffs were on inquiry notice long before the DOJ filed its lawsuit.  *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 224 (E.D.N.Y. 2003) (rejecting allegation that "conduct was 'self-concealing'" because "facts in the public domain would have been more than adequate to raise [plaintiffs'] suspicions as to their claim of injury").  In 2014, Pulse Network sued Visa, alleging that "Visa is a longtime monopolist in the general purpose debit card network services market" and "Visa has undertaken a series of illegal actions . . . harming rival debit networks, merchants, acquirers, card issuers, and consumers."  *Pulse Network LLC v. Visa Inc.*, Case No. 4:14-cv-03391 (S.D. Tex. Nov. 25, 2014), ECF No. 1, ¶ 1.  Like Plaintiffs here, Pulse alleged that Visa entered into volume agreements with merchants, acquirers, and issuers (*compare id.* at ¶¶ 107–13, 119 *with* Compl. ¶¶ 80, 95–97) to deny PIN debit networks "scale and market relevance needed to enter and compete for signature

---

*Propane Tank Antitrust Litig.*, No. 14-02567-MD-WGAF, 2019 WL 4796528, at *8–16 (W.D. Mo. Aug. 21, 2019).  Plaintiffs' conclusory assertion that the "continuing violation" doctrine applies is inadequate.  *See In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 728–29 (S.D.N.Y. 2017).

debit business" (*compare* Pulse Compl. ¶ 119 *with* Compl. ¶ 108) and that Visa's "debit strategy" has resulted in "higher debit network fees for merchants and acquirers through the exclusion of rivals" (*compare* Pulse Compl. ¶ 188 *with* Compl. ¶ 56).

A year earlier, individual merchants in MDL 1720 brought a complaint alleging that "Visa has monopolized the General Purpose Debit Card market." *See* Compl., ¶ 5, *7-Eleven, Inc. v. Visa Inc.*, No. 1:13-cv-05746 (E.D.N.Y. June 26, 2013), ECF No. 1. In 2017, a Rule 23(b)(2) class of merchants in MDL 1720 asserted, among other things, that "Visa . . . ha[s] exercised monopoly power with respect to Debit Card . . . total price imposed on Merchants and cardholders." Equitable Relief Class Action Compl., ¶ 405, *In re Payment Card*, No. 05-MD-1720 (E.D.N.Y. Apr. 4, 2017), ECF No. 6910. Other MDL 1720 complaints identified Visa's agreements with Apple, PayPal, and other technology companies as examples of an alleged anticompetitive scheme by Visa in an alleged debit market. *See* Third Am. Class Compl. ¶¶ 300–301, *In re Payment Card*, No. 05-MD-1720 (E.D.N.Y. Nov. 6, 2017), ECF No. 7123; Sixth Am. Compl. ¶¶ 228–30, *7-Eleven, Inc. v. Visa Inc.,* No. 13-cv-5746 (E.D.N.Y. Apr. 30, 2020), ECF No. 183. This public information belies any argument that Plaintiffs could not have discovered a claim before DOJ filed suit.

**B.     Plaintiffs Have Not Adequately Alleged Fraudulent Concealment**

Plaintiffs' fraudulent concealment allegations are insufficient under any state that recognizes the doctrine.[8] Plaintiffs allege only that "Visa's anticompetitive scheme was self-concealing in that, as alleged herein, Visa entered into and renewed confidential agreements with

---

[8]     Because Plaintiffs bear the burden as to fraudulent concealment, they must plead which states recognize the doctrine and facts to meet each state's test. *See, e.g., Allapattah Services, Inc. v. Exxon Corp.*, 188 F.R.D. 667, 675–76 (S.D. Fla. 1999).

competitors."  Compl. ¶ 185.  That falls far short of the heightened pleading standard for fraud under Rule 9(b), *Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*, 368 F. Supp. 3d 681, 703 (S.D.N.Y. 2019), especially given the earlier complaints based on the same agreements, *supra* § IV.A.  Moreover, the "self-concealing" doctrine does not apply to the regular business agreements at issue here.  *See In re Ciprofloxacin*, 261 F. Supp. 2d at 223–24.

## V.    PLAINTIFFS' SHERMAN ACT AND STATE ANTITRUST CLAIMS FAIL FOR THE SAME REASONS AS DOJ'S CLAIMS

Plaintiffs here have not cured the defects that Visa identified in its motion to dismiss the DOJ complaint.  These same pleading defects also require dismissal of Plaintiffs' state claims.  *See In re Inclusive Access Course Materials Antitrust Litig.*, 544 F. Supp. 3d 420, 439 (S.D.N.Y. 2021) ("Because the plaintiffs' federal antitrust claims under the Sherman Act fail, their claims under the [26] state antitrust statutes must be dismissed as well.").[9]

### A.    Plaintiffs' Alleged Product Markets Are Implausible

Plaintiffs' exclusion of Interbank Payment Networks from their debit network product markets is as fundamentally flawed as in the DOJ Complaint.  Plaintiffs must "plausibly allege . . . a relevant market."  *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 338 (2d Cir. 2024).  A district court "is not required to credit conclusory allegations unsupported by facts or to

---

[9]    Under California law—the only state antitrust statute applicable to a named Plaintiff— "[w]here a complaint alleges the same conduct as both a violation of the Sherman Act and a violation of California's Cartwright Act . . . , the determination that the alleged conduct is not an unreasonable restraint of trade under the Sherman Act necessarily implies that the conduct is not unlawful under the Cartwright Act."  *Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 F. App'x 528, 531 (9th Cir. 2018).  The same is true for other state antitrust laws.  *See* Appendix C.

suspend common sense in conducting its analysis." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020) (cleaned up).  Allegations that are "conflicting," "would render a claim incoherent," or are "contradicted by other matters asserted," are not plausible.  *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001); *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 574 (S.D.N.Y. 2017).

Plaintiffs' market definition allegations contain the same fundamental contradiction as DOJ's.  Plaintiffs allege that Visa "is concerned that it may lose its dominant position in the debit market to" Fintech Debit Networks, Compl. ¶ 73, largely because of their ability to pay merchants directly from a consumer's bank account.  *Id*. ¶ 72.  But Fintech Debit Networks can do so only because they utilize Interbank Payment Networks.  *See id.* (Fintech Debit Networks are "based on Interbank Payment Networks that use bank account credentials").  Plaintiffs cannot maintain both that: (1) Interbank Payment Networks, when used directly by a consumer to pay a merchant, are not in the market; and (2) Fintech Debit Networks, which rely on Interbank Payment Networks, are in the market and a competitive threat.  *Cf. GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321 (JGK), 2023 WL 2051739, at *20 (S.D.N.Y. Feb. 16, 2023) (rejecting attempt to broaden and narrow market for different purposes).

Seemingly recognizing that DOJ's (and the merchant plaintiffs') justifications for exclusion are implausible, Plaintiffs abandon those justifications and allege instead that Interbank Payment Networks are not part of the relevant product markets because they "are not usable for

routine purchases" like groceries.[10]  Compl. ¶ 166; *see also id.* ¶ 163. This allegation introduces yet another contradiction in Plaintiffs' Complaint because Plaintiffs do not limit their alleged markets to routine purchases like groceries.  And Plaintiffs allege no facts suggesting that Interbank Payment Networks are not commonly used as substitutes for debit cards on non-routine purchases.  Even if true (which it is not) that "one can not go into the supermarket and pay via an Interbank Payment Network," Compl. ¶ 166, that says nothing about whether a merchant like merchant plaintiff Ridgeline Roofing (Merchant CCAC ¶ 32) can obtain payment via ACH.  The Court may use its "common sense" (*AJ Energy*, 2019 WL 4688629, at *3) to conclude that Plaintiffs' grocery example is insufficient to plausibly plead Interbank Payment Networks out of the alleged debit markets.

### B.    Plaintiffs' Volume-Discount Claims Fail as a Matter of Law

As explained in Visa's motion in the DOJ action, Plaintiffs' claims based on Visa's price discounts must be analyzed under the price-cost or discount-attribution tests, which both require Plaintiffs to allege below-cost pricing.  *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 907 (9th Cir. 2008) (internal quotation marks omitted).  Plaintiffs' claims fail under either test for the same reason here: the Complaint is silent on Visa's costs relative to its discounted prices.  Nor can Plaintiffs avoid this requirement by asserting that the discount creates "de facto" exclusivity.  *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 275 (3d Cir. 2012); *see also Valassis Commc'ns, Inc. v. News Corp.*, No. 17-CV-7378 (PKC), 2019 WL 802093, at *10 (S.D.N.Y. Feb. 21, 2019) ("[T]he price-cost

---

[10]   Plaintiffs here do *not* exclude Interbank Payment Networks due to a supposed lack of "fraud detection, dispute resolution, and chargeback services."  DOJ Compl. ¶ 159.

test applies even when pricing is not the 'predominant method of exclusion.'"); Visa DOJ MTD at 18–20.

### C.    Plaintiffs' "Agreement-Not-To-Compete" Claims Fail

As shown in the DOJ action, Plaintiffs' allegation that Visa's agreements with Apple, PayPal, and Square are agreements "not to compete," Compl. ¶ 206, is contradicted by the text of those agreements.[11]  *See* Visa DOJ MTD at 20–25.  Allegations about written agreements should be disregarded when they "[are] contrary to the [agreements'] text."  *New York v. Meta Platforms*, *Inc.*, 66 F.4th 288, 304 (D.C. Cir. 2023); *see also In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 370, 376 (S.D.N.Y. 2022).  Here, the actual provisions of the challenged agreements do not prevent these competitors from competing; they simply allow Visa to terminate the agreements in certain circumstances and reflect the "general rule" that businesses "are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."  *linkLine*, 555 U.S. at 448; *see also Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko*, *LLP*, 540 U.S. 398, 410 (2004).  Plaintiffs make no new factual allegations, *compare, e.g.*, Compl. ¶¶ 111–39 *with* DOJ Compl. ¶¶ 108–37, and the Court should dismiss Plaintiffs' Complaint for the same reasons it should dismiss DOJ's complaint.

---

[11] The contracts are incorporated by reference and integral to the Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Visa attaches as Exhibits 1 to 5 the same contracts attached to Visa's motion in the DOJ action.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed.  Dismissal should be with prejudice because Plaintiffs cannot amend their status as cardholders to cure their lack of standing.

Dated:  February 24, 2025                        Respectfully submitted,

                                    **ARNOLD & PORTER KAYE SCHOLER LLP**

                                    /s/ *Anne P. Davis*
                                    Anne P. Davis (admitted *pro hac vice*)
                                    Matthew A. Eisenstein (admitted *pro hac vice*)
                                    601 Massachusetts Avenue, NW
                                    Washington, DC 20001-3743
                                    Tel. (202) 942-5000
                                    anne.davis@arnoldporter.com
                                    matthew.eisenstein@arnoldporter.com

                                    Margaret A. Rogers
                                    250 West 55th Street
                                    New York, NY 10019
                                    Tel. (212) 836-8000
                                    margaret.rogers@arnoldporter.com


                                    **WILKINSON STEKLOFF LLP**

                                    Beth Wilkinson
                                    Brian Stekloff (admitted *pro hac vice*)
                                    Kieran Gostin
                                    2001 M Street NW, 10th Floor
                                    Washington, DC 20036
                                    Tel. (202) 847-4000
                                    bwilkinson@wilkinsonstekloff.com
                                    bstekloff@wilkinsonstekloff.com
                                    kgostin@wilkinsonstekloff.com

                                    Counsel for Defendant Visa Inc.

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify pursuant to Judge Koeltl's February 19, 2025 Order Granting Visa's

Motion for Leave to File Excess Pages, that this memorandum and appendices thereto contain

7,980 words, exclusive of the cover page, table of contents, table of authorities, and this

certification.  I further certify that this memorandum complies with the formatting rules

provided in Section II.D of Judge Koeltl's individual practices.


/s/ *Anne P. Davis*
Anne P. Davis

# Appendix A

## Bases For Dismissal Of State Claims

☐ = **no claim**

▧ = **claim**

✓ = Visa asserts basis

| | Both | Antitrust | | | Consumer Protection | | |
|---|---|---|---|---|---|---|---|
| | No Resident Plaintiff | *AGC* | Private or Class Action Barred | Other Grounds | *AGC* | Class Action Barred | Other Grounds |
| Arizona | ✓ | ✓ | | | | | |
| Arkansas | ✓ | | ✓ | | | | |
| California | | ✓ | | | | | |
| Colorado | ✓ | | ✓* | | | | |
| Connecticut | ✓ | ✓ | | | | | |
| Delaware | ✓ | | ✓* | | | | |
| D.C. | ✓ | ✓ | | | | | |
| Florida | ✓ | | | | | | ✓ |
| Hawaii | ✓ | | | | | | |
| Idaho | ✓ | | | | | | ✓ |
| Illinois | ✓ | ✓ | ✓ | | | | |
| Iowa | ✓ | ✓ | | | | | |
| Kansas | ✓ | ✓ | | | | | |
| Maine | ✓ | ✓ | | | | | |
| Maryland | ✓ | ✓ | | | | | |

| | Both | Antitrust | | | Consumer Protection | | |
|---|---|---|---|---|---|---|---|
| | No Resident Plaintiff | *AGC* | Private or Class Action Barred | Other Grounds | *AGC* | Class Action Barred | Other Grounds |
| Massachusetts | ✓ | | | | | | ✓ |
| Michigan | ✓ | ✓ | | | | | |
| Minnesota | ✓ | ✓ | | | | | |
| Mississippi | ✓ | ✓ | | ✓ | | | |
| Missouri | | | | | | | ✓ |
| Montana | ✓ | | | | | ✓ | |
| Nebraska | ✓ | ✓ | | | | | |
| Nevada | ✓ | ✓ | | | | | |
| New Hampshire | ✓ | ✓ | | | | | |
| New Jersey | ✓ | ✓ | ✓* | | | | |
| New Mexico | ✓ | ✓ | | | | | |
| New York | ✓ | ✓ | | | | | |
| North Carolina | ✓ | ✓ | | | | | |
| North Dakota | ✓ | ✓ | | | | | |
| Oregon | ✓ | ✓ | | | | | |
| Rhode Island | ✓ | | | | | | |
| South Carolina | ✓ | | | | | ✓ | |
| South Dakota | ✓ | ✓ | | ✓ | | | |
| Tennessee | ✓ | | | ✓ | | | |
| Utah | ✓ | | | ✓ | | | |

| | Both | Antitrust | | | Consumer Protection | | |
|---|---|---|---|---|---|---|---|
| | No Resident Plaintiff | *AGC* | Private or Class Action Barred | Other Grounds | *AGC* | Class Action Barred | Other Grounds |
| Vermont | ✓ | | | | ✓ | | ✓ |
| West Virginia | ✓ | ✓ | | | | | |
| Wisconsin | ✓ | ✓ | | ✓ | | | |

\* No damages prior to *Illinois Brick* repealer:  Colorado—June 7, 2023; Delaware—September 30, 2024; and New Jersey—August 5, 2022.

# APPENDIX B

## States Applying *AGC*

| State (Statute) | Relevant Case Law |
|---|---|
| **Arizona (Ariz. Rev. Stat. §§ 44-1401, *et seq.*)** | *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) |
| **Connecticut (Conn. Gen. Stat. §§ 35-24, *et seq.*)** | *Roncari Dev. Co. v. GMG Enters., Inc.*, 718 A.2d 1025, 1034 (Conn. Super. Ct. 1998) |
| **District of Columbia (D.C. Code §§ 28-4501, *et seq.*)** | *Peterson v. Visa U.S.A., Inc.*, No. CIV.A. 03-8080, 2005 WL 1403761, at *4–5 (D.C. Super. Ct. Apr. 22, 2005) |
| **Illinois (740 Ill. Comp. Stat. Ann. 10/3(1), *et. seq.*)** | *O'Regan v. Arb. Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997); *Cnty. of Cook v. Philip Morris, Inc.*, 353 Ill. App. 3d 55, 62, 65–66 (Ill. App. Ct. 2004) |
| **Iowa (Iowa Code §§ 553.1, *et seq.*)** | *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198–99 (Iowa 2007) |
| **Kansas (Kan. Stat. Ann. §§ 50-101, *et seq.*)** | *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *8–9 (N.D. Ill. June 29, 2015); *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211–12 (D. Kan. 1999), *aff'd*, 4 F. App'x 647 (10th Cir. 2001) |
| **Maine (Me. Rev. Stat. Ann. Tit. 10, §§ 1101, *et seq.*)** | *Knowles v. Visa U.S.A., Inc.*, No. CIV.A. CV-03-707, 2004 WL 2475284, at *5 (Me. Super. Oct. 20, 2004) |
| **Maryland (Md. Code Com. Law §§ 11-201, *et seq.*)** | *havePOWER, LLC v. Gen. Elec. Co.*, 183 F. Supp. 2d 779, 785–86 (D. Md. 2002) |
| **Michigan (Mich. Comp. Laws §§ 445.772, *et seq.*)** | *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 4743425, at *3 (S.D.N.Y. Sept. 15, 2014), *aff'd*, 833 F.3d 151 (2d Cir. 2016); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *10 (N.D. Ill. June 29, 2015); *Stark v. Visa U.S.A. Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *2–4 (Mich. Cir. Ct. July 23, 2004) |
| **Minnesota (Minn. Stat. §§ 325D.49, *et seq.*)** | While the Minnesota Supreme Court has held that the factors articulated in *AGC* do not provide the benchmark for antitrust standing (*see Lorix v. Crompton Corp.*, 736 N.W.2d 619, 627 (Minn. 2007)), the court in *Lorix* pointed to *Gutzwiller v. Visa U.S.A., Inc.*, No. C4-04-58, 2004 WL 2114991 (Minn. Dist. Ct. Sept. 15, 2004), as an example where indirect-purchaser injury would be too remote to establish standing, which supports lack of standing here. *See Gutzwiller*, 2004 WL 2114991, at *6 (cardholder lacked standing to assert |

| State (Statute) | Relevant Case Law |
|---|---|
| | debit tying claim where "it is apparent that the Plaintiff is not a consumer or a competitor in the allegedly restrained market" and "[i]n the alleged restrained market, the merchants are the consumers of Visa and MasterCard debit card services, and other debit networks are the competitors of Visa and MasterCard"); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *12 (N.D. Ill. June 29, 2015) ("Ultimately, despite the *Lorix* court's refusal to adopt *AGC*, the Court is nonetheless persuaded by the court's citation to *Gutzwiller*.") |
| **Mississippi (Miss. Code Ann. §§ 74-21-1, *et seq.*)** | *Dram*, 516 F. Supp. 2d at 1095 |
| **Nebraska (Neb. Rev. Stat. §§ 59-801, *et seq.*)** | *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 298–300 (Neb. 2006) |
| **New Hampshire (N.H. Rev. Stat. Ann. Tit. XXXI, §§ 356, *et seq.*)** | *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2013 WL 1431756, at *10 (E.D. Mich. Apr. 9, 2013) |
| **New Jersey (N.J. Stat. Ann. §§ 56:9, *et seq.*)** | *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 69 (2d Cir. 2019) (citing *State v. Lawn King, Inc.*, 84 N.J. 179, 417 A.2d 1025, 1032 (1980) |
| **New Mexico (N.M. Stat. Ann. §§ 57-1-1, *et seq.*)** | *Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 776-81 (N.M. Ct. App. 2012); *Dram*, 516 F. Supp. 2d at 1095 |
| **New York (N.Y. Gen. Bus. Law §§ 340, *et seq.*)** | *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 4743425, at *3 (S.D.N.Y. Sept. 15, 2014), *aff'd*, 833 F.3d 151 (2d Cir. 2016); *Dairy Farmers*, 2015 WL 3988488, at *14; *Ho v. Visa U.S.A. Inc.*, 2004 WL 1118534, at *2–3 (N.Y. Sup. Ct. 2004), *aff'd* 16 A.D.3d 256 (N.Y. App. Div. 2005) |
| **Nevada (Nev. Rev. Stat. Ann. §§ 598A.010, *et seq.*)** | *Dram*, 516 F. Supp. 2d at 1095 |
| **North Carolina (N.C. Gen. Stat. §§ 75-1, *et seq.*)** | *Dairy Farmers*, 2015 WL 3988488, at *15; *Crouch v. Crompton Corp.*, No. 02 CVS 4375, 2004 WL 2414027, at *18–20 (N.C. Super. Oct. 28, 2004) |
| **North Dakota (N.D. Cent. Code §§ 51-08.1, *et seq.*)** | *Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004 WL 2115144, at *2–3 (N.D. Dist. Aug. 23, 2004); *Dram*, 516 F. Supp. 2d at 1094 |
| **Oregon (Or. Rev. Stat. §§ 646.705, *et seq.*)** | *Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1175–78 & n.2 (D. Or. 1998), *aff'd*, 185 F.3d 957 (9th Cir. 1999) |

| State (Statute) | Relevant Case Law |
|---|---|
| **South Dakota (S.D. Codified Laws §§ 37-1-3.1, *et seq.*)** | *Dram*, 516 F. Supp. 2d at 1094 (citing *Cornelison v. Visa U.S.A., Inc.*, No. CIV 03–1350 (S.D. Cir. Ct. 2004)) |
| **West Virginia (W. Va. Code §§ 47-18-1, *et seq.*)** | *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2013 WL 1431756, at *10 (E.D. Mich. Apr. 9, 2013) |
| **Wisconsin (Wis. Stat. Ann. §§ 133.01(1), *et seq.*)** | *Strang v. Visa U.S.A., Inc.*, No. 03 CV 011323, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005) |

# APPENDIX C

## State Antitrust Claims Fail When Federal Claims Fail

| State Law | Authority for harmonization of state antitrust statutes with federal antitrust law |
|---|---|
| **Arizona** | Ariz. Rev. Stat. Ann. § 44–1412 |
| **Colorado** | *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1104 n.3 (D. Colo. 2016) |
| **Connecticut** | Conn. Gen. Stat. Ann. § 35-44b |
| **Delaware** | 6 Del.C. § 2113 |
| **District of Columbia** | *Atl. Coast Airlines Holdings, Inc. v. Mesa Air Grp., Inc.*, 295 F. Supp. 2d 75, 87 (D.D.C. 2003) |
| **Hawaii** | Haw. Rev. Stat. § 480-3; *Int'l Healthcare Mgmt. v. Haw. Coal. for Health*, 332 F.3d 600, 609 (9th Cir. 2003) |
| **Illinois** | *Hannah's Boutique, Inc. v. Surdej*, 112 F. Supp. 3d 758, 765 n.7 (N.D. Ill. 2015) |
| **Iowa** | *Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 181–82 (Iowa 2001) |
| **Kansas** | Kan. Stat. Ann. § 50-163(b) ; *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *8 (N.D. Ill. June 29, 2015) |
| **Maine** | *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 149 (1st Cir. 2000) |
| **Maryland** | *Purity Prods., Inc. v. Tropicana Prods., Inc.*, 702 F. Supp. 564, 574 (D. Md. 1988) |
| **Michigan** | *Little Caesar Enters., Inc. v. Smith*, 895 F. Supp. 884, 898 (E.D. Mich. 1995) |
| **Minnesota** | *State ex rel. Humphrey v. Alpine Air Prods.*, 490 N.W.2d 888, 894 (Minn. App. Ct. 1992), *aff'd* 500 N.W.2d 788 (Minn. 1993) |
| **Mississippi** | *Futurevision Cable Sys., Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 780 (S.D. Miss. 1992), *aff'd*, 986 F.2d 1418 (5th Cir. 1993) |
| **Nebraska** | Neb. Rev. Stat. § 59-829 |
| **Nevada** | Nev. Rev. Stat. § 598A.050 |
| **New Hampshire** | *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 836 (N.H. 2002) (citing N.H. Rev. Stat. Ann. § 356.14) |

| State Law | Authority for harmonization of state antitrust statutes with federal antitrust law |
|---|---|
| **New Jersey** | *Glasofer Motors v. Osterlund, Inc.*, 433 A.2d 780, 787 (N.J. Super. Ct. App. Div. 1981) |
| **New Mexico** | *Romero v. Philip Morris Inc.*, 242 P.3d 280, 291 (N.M. 2010) |
| **New York** | *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) |
| **North Carolina** | *Crain v. Debartolo*, No. 7:14–CV–29–D, 2015 WL 73961, at *8 n.3 (E.D.N.C. Jan. 6, 2015) |
| **North Dakota** | *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *15 (W.D. Mo. Aug. 21, 2019) |
| **Oregon** | *Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 n.4 (9th Cir. 1999) |
| **Rhode Island** | R.I. Gen. Laws § 6–36–2(b); *ERI Max Ent., Inc. v. Streisand*, 690 A.2d 1351, 1353 n.1 (R.I. 1997) |
| **South Dakota** | *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985) |
| **Tennessee** | *Spahr v. Leegin Creative Leather Prods., Inc.*, No. 2:07-CV-187, 2008 WL 3914461, at *14 (E.D. Tenn. Aug. 20, 2008) |
| **Utah** | Utah Code Ann. § 76-10-3118 |
| **West Virginia** | W. Va. Code § 47-18-16; *Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 648 S.E.2d 366, 379–81 (W. Va. 2007) |
| **Wisconsin** | *Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.*, 275 F. Supp. 3d 957, 968–69 (W.D. Wis. 2017) |