**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: VISA DEBIT CARD ANTITRUST
LITIGATION

Civil Action No.: 24-7435 (JGK)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT VISA INC.'S MOTION TO DISMISS**
**MERCHANT PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

   I.   THE PARTIES AND DEBIT TRANSACTIONS ............................................ 3

   II.  THE ALLEGED PRODUCT MARKETS AND CHALLENGED CONDUCT ............... 4

   III. PLAINTIFFS' CLAIMS ................................................................................ 6

LEGAL STANDARD ..................................................................................................... 7

ARGUMENT ................................................................................................................. 7

   I.   PLAINTIFFS LACK STANDING TO SEEK DAMAGES UNDER THE SHERMAN ACT ........................................................................................... 7

   II.  PLAINTIFFS' SHERMAN ACT AND STATE ANTITRUST CLAIMS FAIL FOR THE SAME REASONS AS DOJ'S CLAIMS .......................................... 12

     A.  Plaintiffs' Alleged Product Markets Are Implausible ................... 13

     B.  Plaintiffs' Volume-Discount Claims Fail as a Matter of Law ....................... 15

     C.  Plaintiffs' "Agreement-Not-To-Compete" Claims Fail ................... 15

   III. PLAINTIFFS' STATE LAW ANTITRUST CLAIMS ALSO FAIL FOR ADDITIONAL REASONS ......................................................................... 16

   IV. PLAINTIFFS' CONSUMER PROTECTION CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED ........................................................................ 18

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Aetna Inc. v. Gilead Scis., Inc.*,
　599 F. Supp. 3d 913 (N.D. Cal. 2022) ...................................................................16

*AJ Energy LLC v. Woori Bank*,
　No. 18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019), *aff'd*,
　829 F. App'x 533 (2d Cir. 2020) ......................................................................13, 14

*Apple Inc. v. Pepper*,
　587 U.S. 273 (2019)......................................................................................7, 8, 12

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).............................................................................................7, 19

*B & R Supermarket, Inc. v. Visa Inc.*,
　2024 WL 4334075 (E.D.N.Y. Sept. 27, 2024) .................................................10, 11

*Cascade Health Sols. v. PeaceHealth*,
　515 F.3d 883 (9th Cir. 2008) ...............................................................................15

*Chambers v. Time Warner, Inc.*,
　282 F.3d 147 (2d Cir. 2002)..................................................................................15

*DDMB, Inc. v. Visa, Inc.*,
　05-MD-1720, 2021 WL 6221326 (E.D.N.Y. Sept. 27, 2021) ..................................6

*DiFolco v. MSNBC Cable L.L.C.*,
　622 F.3d 104 (2d Cir. 2010)..................................................................................15

*Dimidowich v. Bell & Howell*,
　803 F.2d 1473 (9th Cir. 1986), *opinion modified on denial of reh'g*, 810 F.2d
　1517 (9th Cir. 1987)..............................................................................................16

*English v. Danone N. Am. Pub. Benefit Corp.*,
　678 F. Supp. 3d 529 (S.D.N.Y. 2023)...................................................................18

*Fisk v. Letterman*,
　401 F. Supp. 2d 362 (S.D.N.Y. 2005)...................................................................13

*Freeman Indus. LLC v. Eastman Chem. Co.*,
　172 S.W.3d 512 (Tenn. 2005)...............................................................................17

*GateGuard, Inc. v. Amazon.com Inc.*,
　No. 21-CV-9321 (JGK), 2023 WL 2051739 (S.D.N.Y. Feb. 16, 2023)................14

*Gatt Commc'ns, Inc. v. PMC Assocs. L.L.C.*,
    711 F.3d 68 (2d Cir. 2013).................................................................................7

*Glob. Discount Travel Servs., LLC v. Trans World Airlines, Inc.*,
    960 F. Supp. 701 (S.D.N.Y. 1997)...................................................................14

*Gottlieb v. Amica Mut. Ins. Co.*,
    57 F.4th 1 (1st Cir. 2022)................................................................................20

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ........................................................................14

*Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*,
    No. 16-CV-04865-BLF, 2019 WL 3804667 (N.D. Cal. Aug. 13, 2019)................13

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977).................................................................................. *passim*

*In re Actos End Payor Antitrust Litig.*,
    No. 13-CV-9244 RA, 2015 WL 5610752 (S.D.N.Y. Sept. 22, 2015), *aff'd in
    part and vacated on other grounds*, 848 F.3d 89 (2d Cir. 2017)......................19, 20

*In re Aggrenox Antitrust Litig.*,
    94 F. Supp. 3d 224 (D. Conn. 2015)...............................................................19

*In re Amitiza Antitrust Litig.*,
    No. 21-CV-11057-MJJ, 2024 WL 4250224 (D. Mass. Aug. 21, 2024) ................17

*In re ATM Fee Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012) ................................................................8, 10, 11, 12

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
    No. 20-CV-03131-JSC, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021).................19

*In re Cattle & Beef Antitrust Litig.*,
    687 F. Supp. 3d 828 (D. Minn. 2023)..............................................................20

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015)..........................19, 20

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
    362 F. Supp. 3d 510 (N.D. Ill. 2019) ..............................................................17

*In re Dynamic Random Access Memory Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ..........................................................17

*In re Effexor Antitrust Litig.*,
    357 F. Supp. 3d 363 (D.N.J. 2018) .................................................................17

*In re Glumetza Antitrust Litig.*,
611 F. Supp. 3d 848 (N.D. Cal. 2020) ...................................................................17

*In re Google Digital Advert. Antitrust Litig.*,
627 F. Supp. 3d 346 (S.D.N.Y. 2022) ...................................................................15

*In re Inclusive Access Course Materials Antitrust Litig.*,
544 F. Supp. 3d 420 (S.D.N.Y. 2021) ...................................................................12

*In re Lipitor Antitrust Litig.*,
336 F. Supp. 3d 395 (D.N.J. 2018) .......................................................................16

*In re Livent, Inc. Noteholders Secs. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...................................................................13

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
2024 WL 1014159 (E.D.N.Y. Mar. 8, 2024) ....................................................10, 11

*In re Wellbutrin XL Antitrust Litig.*,
756 F. Supp. 2d 670 (E.D. Pa. 2010) ...................................................................16

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
626 F.3d 1327 (11th Cir. 2010) ............................................................................14

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ...................................................................8, 10, 11

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
897 F.3d 88 (2d Cir. 2018) ..................................................................................18

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*,
729 F. App'x 528 (9th Cir. 2018) ....................................................................12, 13

*LLM Bar Exam, LLC v. Barbri, Inc.*,
271 F. Supp. 3d 547 (S.D.N.Y. 2017)....................................................................13

*Mathias v. Daily News, L.P.*,
152 F. Supp. 2d 465 (S.D.N.Y. 2001) ...................................................................14

*New York v. Meta Platforms*, *Inc.*,
66 F.4th 288 (D.C. Cir. 2023)...............................................................................15

*Oliver v. Am. Express Co.*,
No. 19-cv-566-NGG-SMG, 2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020) ...........18

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
555 U.S. 438 (2009)........................................................................................15, 16

*Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*,
    467 F.3d 283 (2d Cir. 2006)........................................................................ *passim*

*Regeneron Pharms., Inc. v. Novartis Pharma AG*,
    96 F.4th 327 (2d Cir. 2024) ....................................................................13

*Simon v. KeySpan Corp.*,
    694 F.3d 196 (2d Cir. 2012)....................................................................12

*State ex rel. Fitch v. Yazaki N. Am., Inc.*,
    294 So. 3d 1178 (Miss. 2020).................................................................16

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
    547 F. Supp. 2d 1086 (C.D. Cal. 2007) .................................................14

*Valassis Commc'ns, Inc. v. News Corp.*,
    No. 17-CV-7378 (PKC), 2019 WL 802093 (S.D.N.Y. Feb. 21, 2019) ...............................15

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)................................................................................16

*Warren v. Coca-Cola Co.*,
    670 F. Supp. 3d 72 (S.D.N.Y. 2023).......................................................18

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012)....................................................................15

## **Statutes**

Colo. Rev. Stat. Ann. § 6-4-115..............................................................17

Ill. Comp. Stat. § 10/7(2) .......................................................................16

N.J. Stat. Ann. § 56:9-12.........................................................................17

Vt. Stat. tit. 9, § 2461 .............................................................................20

## **Other Authorities**

Fed. R. Civ. P. 12(b)(6).............................................................................7

Fed. R. Civ. P. 23(b)(2).............................................................................6

**Table of Short Form Citations**

| Short Form Citation | Long Form Citation |
|---|---|
| Complaint or CCAC | Merchant Plaintiffs' Consolidated Class Action Complaint, *In re: Visa Debit Card Antitrust Litigation*, Case No. 1:24-cv-07435-JGK (S.D.N.Y.), ECF No. 38 |
| Cardholder Compl. | Amended Consolidated Cardholder Complaint, *In re: Visa Debit Card Antitrust Litigation*, Case No. 1:24-cv-07435-JGK (S.D.N.Y.), ECF No. 53 |
| DOJ Compl. | Complaint, *United States of America v. Visa Inc.*, Case No. 1:24-cv-07214 (S.D.N.Y.), ECF No. 1 |
| Visa DOJ MTD | Memorandum of Law in Support of Visa Inc.'s Motion to Dismiss the Complaint, Case No. 1:24-cv-07214 (S.D.N.Y.), ECF No. 39 |

## INTRODUCTION

This action arises out of the same conduct that the Department of Justice ("DOJ") has challenged as anticompetitive in *United States v. Visa Inc.*, 1:24-cv-7214 (S.D.N.Y.). Plaintiffs here are merchants that bring claims under the Sherman Act and state antitrust and consumer protection statutes seeking damages and injunctive relief. Plaintiffs' claims, which mimic DOJ's, should be dismissed in their entirety for the reasons articulated in Visa's motion to dismiss the DOJ action. Indeed, Plaintiffs' allegations not only fail to cure the deficiencies detailed in Visa's motion to dismiss the DOJ action, they underscore the fatal flaws shared by this Complaint, the DOJ complaint, and the cardholder complaint. The named Plaintiffs allege no facts to support that Interbank Payment Networks like ACH are not a reasonable substitute for debit card networks. Nor do they fix the flawed theories of competitive exclusion that persist across the three related cases.

But Plaintiffs' claims here suffer from an additional, foundational problem: these merchant plaintiffs fail to clear the threshold hurdle of establishing standing to bring the federal damages claims they assert. Plaintiffs admit that they pay no fees directly to Visa and purchase no debit network services from Visa. Rather, they allege that Visa charges fees directly to banks, which, in turn, pass on those fees to merchants—often through several layers of intermediaries. Likewise, they allege that they purchase "processing and routing services" from acquiring banks or other intermediaries, while Visa sells "network services" to acquiring banks. Plaintiffs' damages claims based on federal antitrust law (Counts 1–4) are, therefore, barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 741 (1977), and *Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 291–92 (2d Cir. 2006) ("*Paycom*").

Plaintiffs' state law antitrust and consumer protection claims arise out of the same conduct underlying their Sherman Act claims and fail for the same reasons. Furthermore, the named Plaintiffs against which this motion is directed[1] reside in either California, Florida, or New Jersey, and have failed to plead viable state claims arising in those jurisdictions. In the absence of any viable claim under its own state's laws, each named Plaintiff lacks Article III standing to sue under the laws of jurisdictions where named Plaintiffs do not reside. Plaintiffs' state law claims fail for additional state-specific reasons detailed below.

---

[1] Plaintiffs Yabla and R&N allege that they began accepting Visa-branded debit cards in 2005 and 2013, respectively. CCAC ¶¶ 30, 33. Merchants accepting Visa cards between 2012 and January 2019 released their claims against Visa through a class settlement in MDL 1720. *See* Final Approval Order, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* ("MDL 1720"), No. 05-MD-01720 (MKB), ECF No. 7818 (E.D.N.Y. Dec. 13, 2019) (granting Rule 23(b)(3) Class Plaintiffs' Motion for Final Approval of Class-Action Settlement). The Court has stayed this litigation with respect to released claims, including those brought by Yabla and R&N. *See* ECF No. 110. Visa's motion to dismiss is therefore directed to the other putative class representatives (referred to collectively as "Plaintiffs"), but its arguments would apply equally to plaintiffs Yabla and R&N. Depending in part on the outcome of Visa's motion to enforce in the MDL 1720 court, Visa may raise a statute of limitations defense at an appropriate time, based on similar grounds as asserted in Visa's motion to dismiss the cardholder plaintiffs' complaint.

# BACKGROUND[2]

## I.    THE PARTIES AND DEBIT TRANSACTIONS

Visa operates electronic payments networks, including debit networks, and provides payment card network services to its financial institution clients to facilitate payment card transactions. CCAC ¶ 36. Plaintiffs are merchants that accepted Visa for debit card transactions: All Wrapped Up Signs and Graphix, LLC and Ridgeline Roofing, LLC are Florida companies; NDA Aesthetics, LLC and Warren Imports are New Jersey companies; and Broadway Grill, LLC is a California company. CCAC ¶¶ 27–33. Plaintiffs do not allege a connection to any other state whose laws they purport to assert. *Id.*

Plaintiffs identify at least five entities in any debit card transaction: consumer; consumer's bank ("issuing bank"); merchant; merchant's bank ("acquiring bank"); and debit network. *Id.* ¶¶ 46–50 & fig. 2. According to Plaintiffs, when a consumer uses a debit card at a merchant, (1) the merchant sends the consumer's account information to the acquiring bank; (2) the acquiring bank communicates with the network; (3) the network submits the transaction to the issuing bank for authorization; (4) the issuing bank sends the response to the merchant through the network and acquiring bank; and (5) the issuing bank transfers the money from the consumer's bank account to the acquiring bank for deposit in the merchant's account. *Id.* ¶¶ 46–50. Issuing and acquiring banks employ additional intermediaries known as "processors," which further separate the network from the merchant (and cardholder) on both sides of a debit transaction. *Id.* ¶ 40 nn.1–2.

Plaintiffs concede that merchants do not pay fees directly to Visa; rather, "merchants pay these fees . . . through acquirers and sometimes facilitated by non-bank processors." *Id.* ¶ 60.

---

[2]    This motion relies on the allegations of the Complaint, many of which are inaccurate.

"Their acquiring banks . . . pay Visa a fee for each transaction on its network as well as additional fees and costs" as well as a "monthly fee." *Id*. ¶¶ 5, 58. Issuing banks also "collect [from acquiring banks] a per-transaction interchange fee for their services." *Id*. ¶ 59; *see also id*. ¶ 48. The "acquiring banks . . . then charge those fees through to merchants" combined with "fees merchants pay acquirers for their services." *Id*. ¶¶ 5, 60. Debit card networks like Visa "simultaneously market their [debit network] services to issuers and acquirers." *Id*. ¶ 197. In turn, "acquiring banks . . . enable merchant acceptance." *Id*. ¶ 42. "Merchants receive . . . payments through 'acquiring banks.'" *Id*. ¶ 40.

## II.    THE ALLEGED PRODUCT MARKETS AND CHALLENGED CONDUCT

Plaintiffs and DOJ challenge the same conduct related to debit networks and allege the same two product markets: (1) general purpose debit network services; and (2) general purpose card-not-present debit network services. *Compare* CCAC ¶¶ 194–208 *with* DOJ Compl. ¶¶ 151–63. Both complaints define "debit network services" comparably to mean services that networks like Visa "market . . . to [both] issuers and acquirers" and that allow consumers to pay merchants with funds in demand deposit accounts. *Compare* CCAC ¶ 197 *with* DOJ Compl. ¶ 152. Like DOJ, Plaintiffs' alleged markets include traditional debit card networks (both so-called "front-of-card networks" and so-called "back-of-card PIN networks") and Fintech Debit Networks (i.e., technology companies that provide account-transfer services to consumers and merchants). *Compare* CCAC ¶ 201 *with* DOJ Compl. ¶ 156. And, like DOJ, Plaintiffs exclude from the alleged markets Interbank Payment Networks such as Automated Clearing House ("ACH") or Real Time Payment ("RTP") even though Fintech Debit Networks operate based on Interbank Payment Networks. *Compare* CCAC ¶¶ 80, 204 *with* DOJ Compl. ¶¶ 115, 159 (alleging ACH and RTP are

"Interbank Payment Networks").  Plaintiffs allege the same reasons as DOJ for excluding Interbank Payment Networks.  *Compare* CCAC ¶ 204 *with* DOJ Compl. ¶ 159.

Plaintiffs parrot DOJ's theory that Visa's volume-based agreements present merchants or their acquiring banks with coercive choices to favor Visa over rival networks.  *Compare* CCAC ¶¶ 15–17, 94–100 *with* DOJ Compl. ¶¶ 70–112.  But Plaintiffs do not allege that they themselves have ever been presented with any coercive choice between Visa and other debit networks.  *See* CCAC ¶¶ 47, 67, 96 (alleging that acquiring banks or processors commonly make the network routing decision for debit transactions instead of merchants).  Nor do they allege that they are among the "more than 180 . . . largest merchants" that have a volume-discount agreement with Visa or that their specific acquiring banks have such agreements.  *Id*. ¶ 17; *see also id*. ¶ 96 (Visa has contracts "both (1) directly with many large merchants and (2) with acquirers that control the routing decisions for merchants").  Indeed, they are silent as to the structure of any named Plaintiff's fee arrangement with its acquiring bank, processor, or other intermediary, including whether the fees that it pays acquiring banks, processors, or other intermediaries vary based on (i) the network used for a transaction, (ii) whether the transaction is a credit or debit transaction, (iii) whether the acquiring bank has volume-discount agreements with Visa or other networks, or (iv) if the bank pays rack rates on debit transactions processed by Visa or other debit networks.

Plaintiffs also echo DOJ's theory that Visa's discount agreements with issuers create incentives for issuers to favor Visa over rival networks, *compare* CCAC ¶¶ 108–116 *with* DOJ Compl. ¶¶ 88–94, but allege no facts as to how they—as merchants—suffer harm from decreases in costs to issuing banks.  Plaintiffs likewise adopt DOJ's allegations that Visa agreed not to compete with various technology companies.  *Compare* CCAC ¶¶ 19, 273 *with* DOJ Compl. ¶¶ 119–37.  Those allegations are contradicted by the plain language of the Visa agreements at issue.

Plaintiffs include allegations not asserted by DOJ about Visa's proposed acquisition of technology company Plaid.  CCAC ¶¶ 168–183.  These allegations do not advance their claims as Plaintiffs acknowledge the transaction was never consummated, *id.* ¶ 179, and do not allege that the proposed transaction affected Plaintiffs or competition.  Plaintiffs also include allegations about a "partnership" with Plaid but allege no agreement with Visa restricting Plaid as a competitor; instead, they allege that Plaid partnered with "financial institutions" (which Visa is not) and a "group of 50 payment partners" that does not include Visa.  CCAC ¶ 181.

## III.    PLAINTIFFS' CLAIMS

Plaintiffs bring claims under Sections 1, 2 and 3 of the Sherman Act for damages and injunctive relief (Counts 1–4).[3]  Plaintiffs also bring claims for damages under various state antitrust laws (Counts 5–12, 14–25, 30–54, 58–125, 130–137) and state consumer protection laws (Counts 13, 26–29, 55–57, 126–129).

---

[3]    Plaintiffs here are members of a certified non-opt-out Rule 23(b)(2) class action pending in the Eastern District of New York, which raises the same integral facts and involves the same transactions as the present case.  *See* Equitable Relief Class Action Consolidated Class Action Complaint, *In re Payment Card*, No. 05-MD-1720 (E.D.N.Y. Apr. 4, 2017); *DDMB, Inc. v. Visa, Inc.*, 05-MD-1720, 2021 WL 6221326 (E.D.N.Y. Sept. 27, 2021) (Class Certification Order).  A final judgment entered in that case thus will act as res judicata as to Plaintiffs' injunctive relief claims here.  Visa does not agree to litigate here injunctive relief claims that were or could have been brought in that Rule 23(b)(2) class action and will assert its rights if and when this issue becomes ripe.

## LEGAL STANDARD

A complaint cannot survive a motion to dismiss under Rule 12(b)(6) unless it contains "sufficient factual matter" to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement[, the court] must dismiss it as a matter of law." *Gatt Commc'ns, Inc. v. PMC Assocs. L.L.C.*, 711 F.3d 68, 75–76 (2d Cir. 2013).

## ARGUMENT

## I. PLAINTIFFS LACK STANDING TO SEEK DAMAGES UNDER THE SHERMAN ACT

The Supreme Court's *Illinois Brick* decision bars indirect payors from bringing damages claims under the Sherman Act (Counts 1–4). 431 U.S. 720 at 747; *see also Paycom*, 467 F.3d at 291–92 (affirming dismissal of merchant overcharge claims against payment network under *Illinois Brick*). Indirect payor claims are barred because they require "trac[ing] the effect of the overcharge through each step in the distribution chain." *Apple Inc. v. Pepper*, 587 U.S. 273, 287 (2019) (quoting *Illinois Brick Co.*, 431 U.S. at 741). Plaintiffs admit that they do not directly pay to Visa the allegedly supracompetitive transaction fees at issue. CCAC ¶¶ 5, 60. Thus, their claims would require tracing the effect of any alleged overcharge "through acquirers and sometimes . . . non-bank processors," *id.* ¶ 60, running afoul of *Illinois Brick* as applied by the Second Circuit to payment card transactions in *Paycom*.

In *Paycom*, a merchant-side entity downstream from an acquiring bank sued Mastercard alleging that Mastercard's rules and fees were anticompetitive. 467 F.3d at 287–88. According to *Paycom*'s complaint, Mastercard could "impose substantial fines on the merchant's acquiring bank," which were "*almost* always passed along to merchants." *Id*. at 291. The Second Circuit ruled that "even if one hundred percent of the [fees] were passed-on" to the merchant by its

acquiring bank, the merchant, "as an indirect payor . . . would still lack antitrust standing" under *Illinois Brick*. *Id*. at 291–92; *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048–51 (9th Cir. 2008) (affirming dismissal of merchant claims that banks conspired with Visa and Mastercard to fix interchange fees); *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749–50 (9th Cir. 2012) (similar).

As in *Paycom*, Plaintiffs acknowledge that to reach any merchant, the alleged overcharges must pass through acquiring banks (as well as other intermediaries that Plaintiffs lump together as acquirer processors). CCAC ¶ 5 ("Visa imposes supracompetitive fees on merchants through their acquiring banks"); *id*. ¶¶ 6, 15, 46, 67, 96, 102 (acknowledging that acquirers and processors control routing decisions); *id*. ¶¶ 40, 40 n.2, 47–49, 50 & fig. 2, 60 ("merchants pay these fees, typically through acquirers and sometimes facilitated by non-bank processors"); *id.* ¶ 107 (Visa fee charged to merchants "through their acquirers"). Because acquiring banks are the direct payors and merchants are indirect payors of the challenged fees according to Plaintiffs' own allegations, Plaintiffs are barred from asserting Sherman Act damages claims. *See Apple*, 587 U.S. at 287–88 (rejecting argument that customer may assert Sherman Act damages claims against entity that sets the prices if a price-collector sits between the price-setter and the customer).

Furthermore, Plaintiffs admit that they do not purchase any services directly from Visa. Plaintiffs allege that Visa sells "[g]eneral purpose debit *network* services" and "market[s]" its *network* services "to both issuers and acquirers," whereas "some [other] alternative networks" market their services "to accountholders and merchants." CCAC ¶ 197 (emphasis added). Plaintiffs admit that issuing and acquiring banks directly purchase *network* services from Visa: "Visa's debit network . . . facilitate[s] the connection between the consumer's *bank* and the merchant's *bank*." *Id*. ¶ 1 (emphasis added); *see also id*. ¶ 3 ("Visa acts as an intermediary between

a consumer's *bank* . . . and the merchant's *bank*." (emphasis added)).  As explained by Plaintiffs, *network* services from Visa and other debit networks allow the "issuing bank [to] connect[] . . . to the acquiring bank"—*i.e.*, debit networks provide "the 'rails' or methods by which the merchants' and consumers' banks communicate with each other."  *Id*. ¶¶ 40, 43.  "[D]ebit networks [also] facilitate interbank settlements by . . . providing settlement reports" that "[b]anks then use . . . to transfer funds" between each other.  *Id*. ¶ 44.  Thus, "acquiring banks . . . pay Visa a fee for each transaction on its network" for the *network* services that Visa sells directly to acquiring banks. *Id*. ¶ 5.

In contrast, according the Complaint, Plaintiffs are "direct consumers of debit transaction *routing and processing* services" (*id*. ¶ 226 (emphasis added)), and purchase *those* services directly from acquiring banks, processors, and other intermediaries—*not from Visa*.  *See, e.g.*, *id*. ¶¶ 5 ("[A]cquiring banks . . . process payments for merchants as their agents."), 40 ("Merchants receive those payments through "acquiring banks."), 42 ("[A]cquiring banks . . . enable merchant acceptance."), 47 ("[T]he acquiring bank receives the request from the merchant" and "acquirers, on behalf of merchants, . . . choose between . . . network[s]."), 60 ("To obtain debit acceptance services, merchants pay these fees, typically through acquirers and sometimes facilitated by non-bank processors.").  Among other things, the *routing and processing* services that merchants obtain from acquiring banks, processors, and other intermediaries include separate communications infrastructure that allows merchants to send "a consumer['s] . . . debit credentials . . . to the merchant's bank (the acquirer)."  *Id*. ¶ 46.  As part of those services, acquiring banks (or other intermediaries) choose which network to use from among the multiple networks associated with the consumer's debit credentials.  *Id*. ¶¶ 6, 47, 67, 96.  Only at that point does the acquiring bank use the *network* services provided to the acquiring bank by the chosen debit network to send the

credentials to the consumer's bank "to approve the transaction." *Id*. ¶ 48.  The process then works in reverse with the issuing bank sending its response to the acquiring bank through the same *network* services, and the acquiring bank then uses its own *routing and processing* services to communicate "the authorization response to the merchant." *Id*. ¶ 49.

The applicable fees for these separate services are also distinct.  Plaintiffs acknowledge that Visa charges *acquiring banks* for *network* services and allege that there are "separate . . . fees [that] merchants pay acquirers for their [routing and processing] services" under the merchants' agreement with their acquiring banks (or other intermediaries)—*not* under any "direct agreement with Visa." *Id*. ¶¶ 60, 96.  Thus, accepting the Complaint's allegations as true, Plaintiffs fall into the *Paycom*, *Kendall*, and *In re ATM* category of cases—in which plaintiffs' complaints likewise alleged that they were indirect purchasers, district courts dismissed Sherman Act damages claims, and appellate courts affirmed.  *See In re Payment Card*, 2024 WL 1014159, at *13 & n.22 (E.D.N.Y. Mar. 8, 2024) (explaining that the facts alleged in the complaints in *Paycom*, *Kendall*, and *In re ATM* compelled application of *Illinois Brick*).

The differences in the services Visa sells to banks and the services Plaintiffs buy from acquiring banks and other intermediaries, as alleged here, distinguish this case from recent summary judgment decisions in the MDL 1720 and *B&R* litigations.  *See In re Payment Card*, 2024 WL 1014159, at *11–13; *B & R Supermarket, Inc. v. Visa Inc.*, 2024 WL 4334075, at *6 (E.D.N.Y. Sept. 27, 2024) (applying MDL 1720 decision and reasoning).  In those cases, the court found a question of fact as to whether the "service" at issue there—a transaction—is susceptible to being "resold" as a different product by an acquiring bank or other intermediary.  *In re Payment Card*, 2024 WL 1014159, at *11.  Here, by contrast, Plaintiffs admit that (i) each debit card network sells to issuing banks and acquiring banks "network services," CCAC ¶¶ 1, 3, 197, (ii)

issuing banks enable services from multiple unaffiliated networks on each debit card distributed to an issuing bank's customer, *id*. ¶¶ 40, 53, (iii) acquiring banks combine the network services they purchase from multiple debit card networks to sell "debit acceptance services" to merchants, *id*. ¶¶ 5, 42, 60, and (iv) when a debit transaction occurs at a merchant like the named Plaintiffs, the acquiring bank (or a processor) decides which of the various debit networks on that card to use, *id*. ¶¶ 6, 47, 67, 96.  Thus, like in *Paycom*, *Kendall*, and *In re ATM*, Plaintiffs here "concede[] that they were indirect purchasers." *In re Payment Card*, 2024 WL 1014159, at *13.

Moreover, the decision in *In re Payment Card* turned on a novel reading of *Illinois Brick*—which was then applied in *B&R*—that "[if] the payor and purchaser are separate entities, the Court is bound by the Supreme Court's decision to confer standing on the purchasers." *In re Payment Card*, 2024 WL 1014159, at *12; *see also B&R*, 2024 WL 4334075 at *6 ("the identity of the direct payor is often a good proxy for the identity of the direct purchaser, but when the payor and purchaser differ, it is the purchaser who has standing").  Every appellate court to apply *Illinois Brick* to payment card transactions has done so based on the acquiring bank being the direct payor of allegedly overcharged fees and precluding other downstream entities from asserting Sherman Act damages claims.[4]  Outside the payment card industry, the Second Circuit has also strictly

---

[4] *See Paycom*, 467 F.3d at 291–92 ("even if one hundred percent of the [alleged overcharged fees] were passed-on [by the acquiring bank], Paycom, as an ***indirect payor*** . . . would ***still lack antitrust standing***" (emphasis added)); *Salveson*, 663 F. App'x at 74–75 (identifying acquiring bank as the direct payor of challenged fees based on the structure of payment card transactions); *Kendall*, 518 F.3d at 1049 (holding that merchants could not sue Visa and Mastercard for interchange fees because the merchants had "no contractual relationship with [Visa and Mastercard] directly, nor

applied the *Illinois Brick* rule since it is "nearly impossible for a court to determine which portion of an overcharge is actually borne by the direct purchaser and which portion is borne by a subsequent indirect purchaser." *Simon v. KeySpan Corp.*, 694 F.3d 196, 202 (2d Cir. 2012) (applying *Illinois Brick* to affirm dismissal of claims by utility customers even where the intermediary supplier allegedly passed on 100% of overcharges). The Supreme Court reaffirmed in *Apple* that *Illinois Brick* established a "brightline" rule to avoid tracing overcharges through multiple levels of payors. *See Apple*, 587 U.S. at 287-88. *Illinois Brick* applies here for the same reasons, taking as true the facts alleged in the Complaint.

## II. PLAINTIFFS' SHERMAN ACT AND STATE ANTITRUST CLAIMS FAIL FOR THE SAME REASONS AS DOJ'S CLAIMS

Plaintiffs here have not cured the defects that Visa identified in its motion to dismiss the DOJ complaint. These same pleading defects also require dismissal of Plaintiffs' state law claims. *See In re Inclusive Access Course Materials Antitrust Litig.*, 544 F. Supp. 3d 420, 439 (S.D.N.Y. 2021) ("[b]ecause the plaintiffs' federal antitrust claims under the Sherman Act fail, their claims under the [26] state antitrust statutes must be dismissed as well").[5]

---

[were] they charged the interchange fee directly"); *In re ATM*, 686 F.3d at 749–50 (holding that "Plaintiffs are indirect purchasers" because "they have never directly **paid** interchange fees" (emphasis added)).

[5]    For example, courts applying the Cartwright Act have concluded that "[w]here a complaint alleges the same conduct as both a violation of the Sherman Act and a violation of California's Cartwright Act . . . , the determination that the alleged conduct is not an unreasonable restraint of trade under the Sherman Act necessarily implies that the conduct is not unlawful under the Cartwright Act." *Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 F. App'x 528, 531 (9th

### A.    Plaintiffs' Alleged Product Markets Are Implausible

Plaintiffs' exclusion of Interbank Payment Networks from their debit network product markets is as fundamentally flawed as in the DOJ Complaint. Plaintiffs must "plausibly allege . . . a relevant market." *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 338 (2d Cir. 2024). A district court "is not required to credit conclusory allegations unsupported by facts or to suspend common sense in conducting its analysis." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020) (cleaned up). Allegations that are "conflicting," "would render a claim incoherent," or are "contradicted by other matters asserted," are not plausible. *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001); *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 574 (S.D.N.Y. 2017).

Plaintiffs' allegations contain the same fundamental contradiction as DOJ's. Plaintiffs allege that Visa view Fintech Debit Networks as a competitive threat because of their ability to pay merchants directly from a consumer's bank account. CCAC ¶¶ 144–45, 147. But Fintech Debit Networks can do so only because they utilize Interbank Payment Networks. *See id.* ¶ 80 (Fintech Debit Networks "complete this final transfer of funds using . . . ACH . . . or . . . RTP[] networks"). Plaintiffs cannot maintain both that: (1) Interbank Payment Networks, when used directly by a consumer to pay a merchant, are not in the market; and (2) Fintech Debit Networks, which rely on Interbank Payment Networks, are in the market and a competitive threat. *Cf.*

Cir. 2018); *see also Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*, No. 16-CV-04865-BLF, 2019 WL 3804667, at *5 (N.D. Cal. Aug. 13, 2019). The same is true for other state antitrust laws. *See* Appendix C to Visa's Mot. to Dismiss Cardholder Plaintiffs' Compl.

*GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321 (JGK), 2023 WL 2051739, at *20 (S.D.N.Y. Feb. 16, 2023) (rejecting attempt to broaden and narrow market for different purposes).

Plaintiffs attempt to justify their exclusion of Interbank Payment Networks from the alleged debit market in the same ways as DOJ—i.e., based on their allegedly being slower and lacking certain quality features despite performing the same basic task of transferring funds between accounts. CCAC ¶¶ 80, 144. Plaintiffs do not explain why these features are dispositive. Courts reject this kind of gerrymandering. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338 (11th Cir. 2010); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1116, 1121 (9th Cir. 2018); *Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1095 (C.D. Cal. 2007); *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 482–83 (S.D.N.Y. 2001); *Glob. Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705–06 (S.D.N.Y. 1997).

None of the named Plaintiffs alleges that they do *not* substitute between ACH and debit cards in obtaining payments from their customers' bank accounts. Nor do they allege why, for vast numbers of merchants whose debit card transactions are in the alleged markets, ACH is not a reasonable substitute for collecting payments from customers' bank accounts. For example, that ACH may take several days to transfer the money to the merchant (CCAC ¶ 144) is not an obstacle for many merchants, such as online retailers that can ship the goods only upon receipt of the payment, or merchants like a roofing company (i.e., Plaintiff Ridgeline Roofing LLC) that can obtain a downpayment weeks before work begins and submit a final invoice after completion— with both payable via ACH. These real-world examples are part of the "common sense" (*AJ Energy*, 2019 WL 4688629, at *3) that the Court may apply to conclude that Plaintiffs have insufficiently pled Interbank Payment Networks out of the alleged debit markets.

### B.    Plaintiffs' Volume-Discount Claims Fail as a Matter of Law

As explained in Visa's motion in the DOJ action, Plaintiffs' claims based on Visa's price discounts must be analyzed under the price-cost or discount-attribution tests, which both require Plaintiffs to allege below-cost pricing.  *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 907 (9th Cir. 2008). Plaintiffs' claims fail under either test for the same reason here: the Complaint is silent on Visa's costs relative to its discounted prices.  Nor can Plaintiffs avoid this requirement by asserting that the discount creates "de facto" exclusivity.  *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 275 (3d Cir. 2012); *see also Valassis Commc'ns, Inc. v. News Corp.*, No. 17-CV-7378 (PKC), 2019 WL 802093, at *10 (S.D.N.Y. Feb. 21, 2019) ("[T]he price-cost test applies even when pricing is not the 'predominant method of exclusion.'"); Visa DOJ MTD at 18–20.

### C.    Plaintiffs' "Agreement-Not-To-Compete" Claims Fail

As shown in the DOJ action, Plaintiffs' allegation that Visa's agreements with Apple, PayPal, and Square are agreements "not to compete," CCAC ¶¶ 19, 155, is contradicted by the text of those agreements.[6] *See* Visa DOJ MTD at 20–25.  Allegations about written agreements should be disregarded when they "[are] contrary to the [agreements'] text."  *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 304 (D.C. Cir. 2023); *see also In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 370, 376 (S.D.N.Y. 2022).   Here, the actual provisions of the challenged

---

[6]     The contracts are incorporated by reference and integral to the Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Visa attaches as Exhibits 1 to 5 the same contracts attached to Visa's motion in the DOJ action.

agreements do not prevent these competitors from competing; they simply allow Visa to terminate the agreements in certain circumstances and reflect the "general rule" that businesses "are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *linkLine*, 555 U.S. at 448; *see also Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 410 (2004). Plaintiffs make no new factual allegations, *compare, e.g.*, CCAC ¶¶ 134–167 *with* DOJ Compl. ¶¶ 108–37, and the Court should dismiss Plaintiffs' Complaint for the same reasons it should dismiss DOJ's complaint.

## III.    PLAINTIFFS' STATE LAW ANTITRUST CLAIMS ALSO FAIL FOR ADDITIONAL REASONS

Many of Plaintiffs' state-specific antitrust claims fail or must be limited for additional independent reasons:

- **California (Counts 9–10)**:  Plaintiffs' Cartwright Act "monopolization" and "attempted monopolization" claims fail because the Cartwright Act does not apply to unilateral conduct.  *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986), *opinion modified on denial of reh'g*, 810 F.2d 1517 (9th Cir. 1987); *Aetna Inc. v. Gilead Scis., Inc.*, 599 F. Supp. 3d 913, 931 (N.D. Cal. 2022).

- **Illinois (Counts 34–37)**:  Only the Illinois Attorney General may bring indirect purchaser claims under the Illinois antitrust statute.  740 Ill. Comp. Stat. § 10/7(2); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 676–77 (E.D. Pa. 2010); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 418 (D.N.J. 2018) (same, after discussing split among district courts).

- **Mississippi (Counts 66–69)**:  The Mississippi Antitrust Act applies only to conduct "accomplished at least in part by transactions lying wholly within Mississippi."  *State ex rel. Fitch v. Yazaki N. Am., Inc.*, 294 So. 3d 1178, 1189 (Miss. 2020).  Here, Plaintiffs

allege that Visa engages in "*interstate* trade and commerce." CCAC ¶ 26 (emphasis added).

- **South Dakota, Tennessee, Wisconsin (Counts 114–121, 134–37)**:  The absence of any alleged specific misconduct or effects in South Dakota and Wisconsin, or effects on Tennessee commerce, doom those claims.  *See In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1098–99 (N.D. Cal. 2007) (dismissing South Dakota antitrust claim where plaintiff did not allege any specific conduct or effect within South Dakota beyond inflated prices); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 549 (N.D. Ill. 2019) (same as to Wisconsin); *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005) (same as to Tennessee).

- **Utah (Counts 122–25)**:  The absence of a Utah named plaintiff is fatal to the Utah claims. *See In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 393 (D.N.J. 2018) (Utah Code Ann. § 76-10-3109(1)(a) "require[s] at least one Utah citizen or resident be a named plaintiff").

- **Colorado, New Jersey (Counts 14–17, 82–85)**:  Plaintiffs cannot seek damages prior to the enactment of *Illinois Brick* repealer amendments in Colorado (June 7, 2023) or New Jersey (August 5, 2022).  *See* Colo. Rev. Stat. Ann. § 6-4-115; N.J. Stat. Ann. § 56:9-12; *In re Amitiza Antitrust Litig.,* No. 21-CV-11057-MJJ, 2024 WL 4250224, at *31 (D. Mass. Aug. 21, 2024) (damages only after effective date of Colorado *Illinois Brick* amendment); *In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 867–68 (N.D. Cal. 2020) (repealer statutes "presumed to apply only prospectively").

IV.    **PLAINTIFFS' CONSUMER PROTECTION CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED**

Plaintiffs' consumer protection claims under the laws of California, Florida, Massachusetts, and Vermont (Counts 13, 26–29, 55–57, 126–129) should be dismissed for independent reasons.

First, Plaintiffs are residents of only California, New Jersey, and Florida.  CCAC ¶¶ 27–33.  They do not assert, or fail adequately to allege, consumer protection claims in their resident states and thus lack Article III standing to bring claims on behalf of absent class members under the laws of non-resident jurisdictions.  *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 92–93 (2d Cir. 2018); *see also English v. Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529, 541 (S.D.N.Y. 2023) (because plaintiff (a Texas citizen) failed to state a Texas claim, she lacked standing to assert claims under the consumer protection statutes of other states); *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 87 n.10 (S.D.N.Y. 2023) ("[B]ecause all of Plaintiff's claims under New York law fail as a matter of law, she cannot bring claims for products she did not purchase in different states." (internal citation omitted)).  Plaintiffs do not assert a **New Jersey** consumer protection claim.  Their **California** and **Florida** consumer protection claims fail for several reasons:

- **California Unfair Competition Law ("UCL") (Count 13)**:  Plaintiffs' UCL claim is predicated on the same conduct as the Sherman Act and Cartwright Act claims and thus fails for the same reasons.  *See Oliver v. Am. Express Co.*, No. 19-cv-566-NGG-SMG, 2020 WL 2079510, at *17 (E.D.N.Y. Apr. 30, 2020) (dismissing UCL claims because "[w]here a plaintiff fails to state an antitrust claim, and where an unfair competition claim is based upon the same allegations, such state claims are properly dismissed" (citation omitted)).  Moreover, Plaintiffs' UCL claim fails because they do not allege

that they lack an adequate remedy at law, which is an essential and strictly construed element of a UCL claim. *See In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 1176645 *7–*8 (N.D. Cal. Mar. 29, 2021).

- **Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claims (Counts 26–29)**:  Plaintiffs' FDUTPA claims fail because Plaintiffs' alleged injuries are indirect, *see supra* § I, and Florida's consumer protection law does not provide a back door to bring antitrust claims that are barred under Florida's "direct purchaser" rule. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *19  (N.D. Ill. June 29, 2015) (dismissing FDUTPA claims reasoning that "[t]he contours of Florida's antitrust laws would be rendered moot were the Court to allow Indirect Plaintiffs to repackage their dead-on-arrival antitrust claims as FDUTPA claims.").  Plaintiffs also fail to plead facts essential to an FDUTPA claim, as discussed further below.

Second, even if Plaintiffs had standing to bring non-resident consumer protection claims, Plaintiffs do not plead essential elements of those claims.  As one district court explained when dismissing dozens of similarly pleaded consumer protection claims, "plaintiffs cannot simply enumerate a long list of state-law claims for states where they might otherwise have no available antitrust recovery and rely on the defendants and the court to sort out whether or how those laws can act as surrogates for antitrust law."  *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255–56 (D. Conn. 2015).  The court reasoned that "[t]he bald assertion that the alleged antitrust conduct violates dozens of non-antitrust laws, or the implication that there are no consequential differences between those laws, is not entitled to deference" under *Twombly* and *Iqbal*. *Id.* at 255; *see also In re Actos End Payor Antitrust Litig.*, No. 13-CV-9244 RA, 2015 WL 5610752, at *27–28 (S.D.N.Y.

Sept. 22, 2015) ("[M]erely restat[ing] their antitrust allegations as separate consumer protection claims, providing no distinct factual basis for a violation of consumer protection law" is insufficient.), *aff'd in part and vacated on other grounds*, 848 F.3d 89 (2d Cir. 2017). Similar to the pleadings in those cases, Plaintiffs' consumer protection claims here are bare legal conclusions devoid of factual allegations distinguishing these claims from their antitrust claims and, therefore, should be summarily dismissed for this reason alone.

Third, Massachusetts, Vermont and Florida each requires either deceptive conduct or unconscionable sales conduct directed at consumers. *See Gottlieb v. Amica Mut. Ins. Co.*, 57 F.4th 1, 10 (1st Cir. 2022) ("To succeed on a claim based on a deceptive act or practice [in Massachusetts:] a consumer must show (1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury.") (citations omitted)); Vt. Stat. tit. 9, § 2461 (consumer must "contract[] for goods or services in reliance upon false or fraudulent representations or practices"); *In re Cattle & Beef Antitrust Litig.*, 687 F. Supp. 3d 828, 846 (D. Minn. 2023) (same); *In re Dairy Farmers*, 2015 WL 3988488, at *18 (citations omitted) (FDUTPA requires a "deceptive act or unfair practice"). Plaintiffs do not allege deception, fraudulent misrepresentation, or unconscionable sales efforts directed at consumers. Nor do they allege reliance. Plaintiffs' Massachusetts claim independently fails because Plaintiffs are not consumers. *Gottlieb*, 57 F.4th at 10.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed.

Dated:  February 24, 2025                    Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

/s/ *Anne P. Davis*
Anne P. Davis (admitted *pro hac vice*)
Matthew A. Eisenstein (admitted *pro hac vice*)
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel. (202) 942-5000
anne.davis@arnoldporter.com
matthew.eisenstein@arnoldporter.com

Margaret A. Rogers
250 West 55th Street
New York, NY 10019
Tel. (212) 836-8000
margaret.rogers@arnoldporter.com

**WILKINSON STEKLOFF LLP**

Beth Wilkinson
Brian Stekloff (admitted *pro hac vice*)
Kieran Gostin
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel. (202) 847-4000
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com

*Counsel for Defendant Visa Inc.*

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify under Section II.D of Judge Koeltl's individual practices that this memorandum contains 6,183 words, exclusive of the cover page, table of contents, table of authorities, and this certification. I further certify that this memorandum complies with the formatting rules provided in Section II.D of Judge Koeltl's individual practices.

/s/ <em>Anne P. Davis</em>     
Anne P. Davis
