# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: VISA DEBIT CARD ANTITRUST LITIGATION | Civil Action No.: 24-7435 (JGK) <br><br> Oral Argument Requested |

## **<u>FEE-PAYOR PLAINTIFFS' OPPOSITION TO VISA INC.'S MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

I.     **INTRODUCTION** ................................................................................................1

II.    **FACTS ALLEGED** ............................................................................................2

III.    **LEGAL STANDARD** ......................................................................................3

IV.    **ARGUMENT** ....................................................................................................4

    A.   Fee Payors Have Standing As The Parties Directly Harmed By Visa's Anticompetitive Conduct ................................................................................................4

    B.   Plaintiffs Plausibly Pleaded Sherman Act Claims ...........................................9

    C.   Plaintiffs Plausibly Pleaded State Law Claims ..............................................14

        1.   Antitrust Claims ..................................................................................14

        2.   Consumer Protection Claims ..............................................................17

V.    **CONCLUSION** ..............................................................................................23

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages(s)**

*Aesha v. State Farm Gen. Ins. Co.*,
    No. 24-cv-850, 2024 WL 5410447 (C.D. Cal. July 30, 2024)................................................19

*AJ Energy LLC v. Woori Bank*,
    No. 18-cv-3735, 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) ...........................................11

*In re Amitiza Antitrust Litig.*,
    No. 21-cv-11057, 2024 WL 4250224 (D. Mass. Aug. 21, 2024) ...........................................19

*In re Amitiza Antitrust Litig.*,
    No. 21-cv-11057, 2024 WL 4344887 (D. Mass. Sept. 30, 2024)....................................16, 19

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)........................................................................................................3

*Apple Inc. v. Pepper*,
    587 U.S. 273 (2019)....................................................................................................................4

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)....................................................................................................................5

*In re ATM Fee Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012) .....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................12

*Blue Cross & Blue Shield of Vt. v. Teva Pharm. Indus., Ltd.*,
    712 F. Supp. 3d 499 (D. Vt. 2024)....................................................................................14, 15

*Blue Shield of Va. v. McCready*,
    457 U.S. 465 (1982)....................................................................................................................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 07-cv-5944, 2016 WL 7805628 (N.D. Cal. Aug. 4, 2016), *rev'd on other*
    *grounds by* 720 F. App'x 835 (9th Cir. 2017) ........................................................................7

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d 538 (M.D. Pa. 2009) .....................................................................................16

*Concord Assocs., L.P. v. Entm't Props. Tr.*,
    817 F.3d 46 (2d Cir. 2016)..........................................................................................................4

*Crimpers Promotions Inc. v. Home Box Off., Inc.*,
    724 F.2d 290 (2d Cir. 1983).......................................................................................................5

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
No. 09-cv-3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015)..........................................21, 22

*Dernier v. Mortg. Network, Inc.*,
87 A.3d 465 (Vt. 2013) ...........................................................................................................22

*Dial Corp. v. News Corp.*,
165 F. Supp. 3d 25 (S.D.N.Y. 2016)........................................................................................12

*In re Disposable Contact Lens Antitrust*,
329 F.R.D. 336 (M.D. Fla. 2018)...............................................................................................8

*In re Dynamic Random Access Memory Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ..................................................................................15

*Eason v. Roman Cath. Bishop of San Diego*,
414 F. Supp. 3d 1276 (S.D. Cal. 2019)....................................................................................20

*English v. Danone N. Am. Pub. Benefit Corp.*,
678 F. Supp. 3d 529 (S.D.N.Y. 2023).....................................................................................18

*Fisk v. Letterman*,
401 F. Supp. 2d 362 (S.D.N.Y. 2005)......................................................................................11

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019).......................................................................................................22

*Freeman Indus., LLC v. Eastman Chem. Co.*,
172 S.W.3d 512 (Tenn. 2005)..................................................................................................15

*Gelboim v. Bank of Am. Corp.*,
823 F.3d 759 (2d Cir. 2016).......................................................................................................9

*In re Generic Pharms. Pricing Antitrust Litig.*,
368 F. Supp. 3d 814 (E.D. Pa. 2019) .......................................................................................16

*Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*,
960 F. Supp. 701 (S.D.N.Y. 1997) ..........................................................................................12

*Gottlieb v. Amica Mut. Ins. Co.*,
57 F.4th 1 (1st Cir. 2022).........................................................................................................23

*Gottlieb v. Amica Mut. Ins. Co.*,
No. 20-cv-10509 ......................................................................................................................22

*Governo Law Firm LLC v. Bergeron*,
166 N.E.3d 416 (Mass. 2021) ...........................................................................................20, 21

*Guerrero v. Ellusionist.com, Inc.*,
No. 22-cv-2465, 2023 WL 3847402 (S.D.N.Y. June 6, 2023) ................................................17

*Guzman v. Polaris Indus., Inc.*,
  49 F.4th 1308 (9th Cir. 2022) ..................................................................................19, 20

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ...............................................................................12

*Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*,
  353 F. Supp. 3d 678 (M.D. Tenn. 2018) .................................................................16

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ..........................................................................................1, 4, 5, 6, 7

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) .............................................................................11

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ................................................................................8

*In re Keurig Green Mountain Single-Serve Antitrust Litig.*,
  No. 14-md-2542, 2021 WL 10724138 (S.D.N.Y. June 2, 2021) ...........................19

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
  897 F.3d 88 (2d Cir. 2018) ....................................................................2, 16, 17, 18

*Laumann v. Nat'l Hockey League*,
  907 F. Supp. 2d 465 (S.D.N.Y. 2012) .....................................................................8

*Lisk v. Lumber One Wood Preserving, LLC*,
  792 F.3d 1331 (11th Cir. 2015) .............................................................................14

*In re Livent, Inc. Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001) ....................................................................11

*LLM Bar Exam, LLC v. Barbri, Inc.*,
  271 F. Supp. 3d 547 (S.D.N.Y. 2017) .....................................................................11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  202 F.R.D. 12 (D.D.C. 2001) ...................................................................................7

*Mack v. Bristol-Myers Squibb Co.*,
  673 So.2d 100 (Fla. Dist. Ct. App. 1996) ..............................................................19

*Mathias v. Daily News, L.P.*,
  152 F. Supp. 2d 465 (S.D.N.Y. 2001) ....................................................................12

*Mayor & City Council of Balt. v. Merck Sharp & Dohme Corp.*,
  No. 23-cv-828, 2023 WL 8018980 (E.D. Pa. Nov. 20, 2023) ....................14, 15, 16

*Meyers v. Bayer AG, Bayer Corp.*,
  735 N.W.2d 448 (Wis. 2007) .................................................................................16

iv

*MiCamp Sols., LLC v. Visa Inc.*,
    No. 23-cv-06351, 2025 WL 892570 (N.D. Cal. Mar. 24, 2024) ...........................9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ...........................6, 7

*Nat'l Soc'y of Prof'l Eng'rs. v. United States*,
    435 U.S. 679 (1978)...........................13

*Nimo v. Aiko Importers, Inc.*,
    No. 24-cv-4000, 2024 WL 4406976 (C.D. Cal. Aug. 29, 2024) ...........................20

*Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*,
    467 F.3d 283 (2d Cir. 2006)...........................8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    735 F. Supp. 3d 249 (S.D.N.Y. 2024)...........................8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 05-md-1720, 2024 WL 1014159 (E.D.N.Y. Mar. 8, 2024) ...................1, 6, 7, 9

*Picone v. Shire PLC*,
    No. 16-cv-12396, 2017 WL 4873506 (D. Mass. Oct. 20, 2017) ...........................16

*In re Propranolol Antitrust Litig.*,
    249 F. Supp. 3d 712 (S.D.N.Y. 2017)...........................14, 15

*Pulse Network, LLC v. Visa Inc.*,
    30 F.4th 480 (5th Cir. 2022) ...........................13

*Regeneron Pharms, Inc. v. Novartis Pharma AG*,
    96 F.4th 327 (2d Cir. 2024) ...........................9, 10, 12

*Renois v. WVMF Funding, LLC*,
    No. 20-cv-9281, 2024 WL 1313492 (S.D.N.Y. Mar. 27, 2024)...........................18

*Schwimmer v. Sony Corp. of Am.*,
    637 F.2d 41 (2d Cir. 1980)...........................7

*Shady Grove Orthopedics Assocs. P.A. v. Allstate Ins. Co.*
    559 U.S. 393 (2010)...........................14, 15

*Shomo v. City of N.Y.*,
    579 F.3d 176 (2d Cir. 2009)...........................20

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...........................19

*Steiner v. Vi-Jon, Inc.*,
    723 F. Supp. 3d 784 (N.D. Cal. 2024) ...........................20

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
    547 F. Supp. 2d 1086 (C.D. Cal. 2007) ...................................................................12

*In re Toilet Seat Antitrust Litig.*,
    No. 75-cv-184, 1977 WL 1453 (E.D. Mich. Aug. 24, 1977).....................................7

*Tomasella v. Nestlé USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020) .....................................................................................21

*Vermont v. Exxon Mobil Corp.*,
    No. 21-cv-260, 2024 WL 446086 (D. Vt. Feb. 6, 2024) ..................................20, 21

*Warren v. Coca-Cola Co.*,
    670 F. Supp. 3d 72 (S.D.N.Y. 2023).......................................................................18

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009)..............................................................................16

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012)....................................................................................12

**Statutes**

Fla. Stat. § 501.204(1)....................................................................................................22

Ill. Comp. Stat. § 10/7(2) ...............................................................................................14

Mass. Gen. Laws. Ch. 93A § 2 .......................................................................................22

Mass. Gen. Laws. Ch. 93A § 2(a) ...................................................................................21

Mass. Gen. Laws. Ch. 93A § 9 .......................................................................................22

Mass. Gen. Laws. Ch. 93A § 11 .....................................................................................22

Utah Code Ann. § 76-10-3109(1)(a)................................................................................16

Vt. Stat. Ann. tit. 9, § 2461(b) ........................................................................................21

## I.    INTRODUCTION

Visa's motion to dismiss asks the Court to ignore Fee Payor Plaintiffs' well-pleaded allegations and accept Visa's view of disputed facts. Because the Federal Rules foreclose that path, the Court should deny Visa's motion.

*First*, this is a factually complex case involving billions of commercial transactions between cardholders, merchants, and certain intermediaries, including Visa's debit network, in which Fee Payors have made plausible factual allegations that render their claims insusceptible to dismissal based on the "direct purchaser" rule set forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 741 (1977). Indeed, just last year, Judge Margot Brodie rejected Visa's identical standing contentions after evaluating the extensive *factual evidence* proffered by Visa and the merchants involved in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, No. 05-md-1720, 2024 WL 1014159, at *11 (E.D.N.Y. Mar. 8, 2024) ("*Interchange Fee V*"). The same result necessarily follows here, where only the sufficiency of the *pleadings* is at issue.

*Second*, Fee Payors' Complaint, like that in the related case filed by the United States Department of Justice ("DOJ"), readily explains why electronic interbank settlement networks like ACH are not, as standalone offerings, part of the relevant market for debit network services, even if those products can be combined with *additional products or services* to create new "Fintech" products that properly fall within the debit network services market. The DOJ and Fee Payors have set forth detailed allegations of Visa's efforts to exclude competition from the alleged relevant markets, including allegations that Visa engaged in lengthy pressure campaigns designed to convince potential competitors not to challenge its dominance in the debit network services markets. Those allegations, if proven, constitute a violation of the antitrust laws. They are more than sufficient to satisfy Rule 8(a)'s minimal pleading requirements.

*Finally*, the vast majority of Visa's arguments against Plaintiffs' state law claims are

flawed. Visa's analysis repeatedly ignores statutory text, relevant case law, and the Complaint's well-pleaded allegations. And Second Circuit precedent forecloses Visa's contention that Article III bars some claims. *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 95 (2d Cir. 2018). Accordingly, apart from certain counts under California and Mississippi law, *see infra* note 6, Visa's motion to dismiss should be denied in its entirety.[1]

## II.    FACTS ALLEGED

Debit networks like Visa's facilitate debit transactions by linking merchants' and consumers' banks. Consolidated Class Action Complaint ¶¶ 3, 43, 50, 197, ECF No. 38 ("CCAC"). Although debit transactions' precise mechanics can vary slightly, the overall process remains the same. *Id*. ¶ 51. When a consumer makes a purchase with debit credentials, the merchant asks its bank (the acquirer) to send "the consumer's account and transaction information to a debit network like Visa to process the transaction." *Id*. ¶ 47. The debit network then "requests authorization from the consumer's bank (the issuer) to approve the transaction." *Id*. ¶ 48. "If the consumer has sufficient funds and no fraud is detected," the consumer's bank will authorize the transaction and send the consumer's money to the merchant's bank over the debit network's "rail[s]." *Id*. ¶¶ 43, 48. Because the debit network deducts a fee "from the amount owed to the merchant," however, the merchant does not receive a debit transaction's full purchase price. *Id.* ¶¶ 48, 226. Visa "collects a network fee for each transaction run on the network," and, since 2012, also has imposed on merchants "a fixed monthly fee, the Fixed Acquirer Network Fee (FANF), based on the merchant's number of locations and transaction volume." *Id.* ¶ 58 (emphasis removed).

---

[1] This opposition is filed by Plaintiffs subject to Visa's dismissal motion, *see* Mot. to Dismiss, ECF No. 115 ("MTD") at 2 n.1, although the arguments herein apply equally to Yabla and R&N.

Visa dominates debit transactions in the United States, with a 60% market share in the general purpose debit network services market and a 65% market share in the general purpose card-not-present debit network services market. *Id*. ¶¶ 1, 12, 85, 209. Debit networks in these markets "offer a suite of services essential for executing debit transactions, . . . includ[ing] the capacity for consumers or their banks to dispute and chargeback transactions, payment guarantees for merchants, fraud protection," and prompt funds transfers. *Id*. ¶ 198. Fintech debit networks compete with traditional debit card networks like Visa's in the relevant markets because they also satisfy consumer demand by promptly transferring their funds to merchants and providing "payment guarantees, dispute resolution and chargeback capabilities, and fraud protection services." *Id*. ¶ 201; *see also id*. ¶¶ 80, 142-43. Conversely, interbank payment networks, like ACH, do not compete in these markets because they generally do not promptly and conveniently transfer consumer's funds to merchants and "do not include guaranteed payment or dispute resolution" or "fraud detection." *Id*. ¶¶ 144, 204.

To maintain its monopoly in these markets, Visa has engaged in a "multi-faceted" campaign of exclusionary conduct, including by paying off potential and actual competitors and entering into coercive routing agreements. *Id*. ¶¶ 2, 5-7, 9, 15, 17, 19, 20, 97, 148-183, 211. These anticompetitive tactics have entrenched Visa's monopoly power in the relevant markets, stifled innovation, and caused Fee Payors across the United States, including Plaintiffs and other merchants, to pay supracompetitive fees. *Id*. ¶¶ 2, 5, 8, 22, 184, 273.

## III.    LEGAL STANDARD

At the pleading stage, the Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences" in Plaintiffs' favor. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)). "[T]here is no heightened pleading standard in antitrust cases, and the facts alleged

are subject to Federal Rule of Civil Procedure 8(a)'s general requirement of a 'short plain statement' of facts supporting a plausible claim." *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 52 (2d Cir. 2016).

## IV.    ARGUMENT

### A.    Fee Payors Have Standing As The Parties Directly Harmed By Visa's Anticompetitive Conduct

In contesting Fee Payors' standing, Visa relies on *Illinois Brick*'s "direct purchaser" rule. Mot. to Dismiss, ECF No. 115 ("MTD") at 7-12. In that case, the Supreme Court held that indirect, downstream purchasers of price-fixed goods (specifically, concrete blocks) generally lacked antitrust standing due to the existence of a more immediate victim—a middleman—who had purchased the goods directly from the antitrust violator. *Illinois Brick*, 431 U.S. at 735 (denying standing where "respondents seek to demonstrate that masonry contractors, who incorporated petitioners' block into walls and other masonry structures, passed on the alleged overcharge on the block to general contractors, who incorporated the masonry structures into entire buildings, and that the general contractors in turn passed on the overcharge to respondents in the bids submitted for those buildings"). As a result, in relatively straightforward cases, where transactions at multiple levels in the distribution chain involve independent actors assuming independent economic risk, *Illinois Brick*'s "direct purchaser rule" will determine which entity properly holds the Sherman Act damages claim. *See Apple Inc. v. Pepper*, 587 U.S. 273, 285, 287 (2019) (explaining the "bright-line rule" against downstream recoveries that applies "where multiple parties at different levels of a distribution chain are trying to all recover the same passed-through overcharge initially levied by the manufacturer at the top of the chain" (citing *Illinois Brick*, 431 U.S. at 726-27)).

But, here, the parties' relationship with each other and with the market in which they operate is far more complex than the facts of *Illinois Brick.* Accordingly, the standing analysis is

necessarily more nuanced. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536 (1983) ("*AGC*") (noting that the "infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that will dictate the [standing] result in every case"); *Blue Shield of Va. v. McCready*, 457 U.S. 465, 476 (1982) (explaining that beyond the standing analysis under "*Illinois Brick*, there is the conceptually more difficult question of which persons have sustained injuries *too remote* [from an antitrust violation] to give them standing to sue for damages") (cleaned up); *Crimpers Promotions Inc. v. Home Box Off., Inc.*, 724 F.2d 290, 296 (2d Cir. 1983) (citing *AGC* for the same principle).

In this case, unlike in *Illinois Brick*, a merchant and its customer engage in a transaction, which results in the rest of the actors (issuers, acquirers, and other intermediaries) working to deliver the amount owed to the Fee Payor using Visa's debit network. CCAC ¶¶ 41-50. The entire process "deliver[s] money to the merchant" from the cardholder's bank account. *Id*. ¶ 50 Fig. 2. Under these circumstances, Visa's supracompetitive fees—the relevant overcharge—are not borne initially by intermediaries and then passed along to Fee Payors. Instead, Visa directly removes these fees from the stream of funds owed to the Fee Payors as a cardholder's payment flows to Fee Payors across the Visa debit network. *Id*. ¶ 226 ("[W]hen a member of the Class accepts a debit transaction, Visa receives and routes the transaction, directly withdrawing the money for its fees from the monies owed to the Class member.").[2] Fee Payors therefore are the parties best situated

---

[2] Evidence adduced through discovery in *Interchange Fee V* supports Fee Payors' Sherman Act standing allegations in this case. As Judge Brodie explained when rejecting Visa's standing contentions: "[p]laintiffs offer other evidence—including testimony and Defendants' internal documents—tending to show that, after Issuers retain portions of the amounts owed to merchants,

to recover Visa's supracompetitive charges for routing debit transactions and accessing Visa's debit network, since no intermediaries hold such a claim. *Id.* ¶ 228 ("[T]he only entities with overcharge injuries under federal antitrust law are the members of the Class."). None of these allegations resemble *Illinois Brick*'s straightforward facts, and they confer antitrust standing to Fee Payors under *AGC*'s nuanced analysis.

Judge Brodie reached that exact conclusion in identical circumstances just last year. *See Interchange Fee V*, 2024 WL 1014159, at *11 (reasoning that "because of the complexities of the arrangements between the parties before the Court and because the case involves a service, rather than a good, the issues are not as straightforward" as those in *Illinois Brick*). And, like Judge Brodie, this Court must look to what Plaintiffs purchased—"namely, card-acceptance services"— to define who is entitled to Sherman Act damages when anticompetitive conduct inflated the price for those services. *Id.* In the end, the *Interchange Fee* court rejected Visa's contention that merchants lacked Sherman Act standing as a matter of law. *Id.* at *17 (explaining that "network fees are a component of the price paid for card-acceptance services" and denying summary judgment due to a "dispute of material fact as to whether merchants are direct purchasers of card-acceptance services").

Ample caselaw from this district and elsewhere supports the nuanced standing analysis undertaken in *Interchange Fee V. See, e.g.*, *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 505 (S.D.N.Y. 1996) ("[W]here a particular industry structure includes a principal-agent relationship between the indirect and direct purchasers such that the two are not distinct

---

*the Networks retain network fees and remit the remainder to Acquirers (who retain their own additional fees) and who then remit payments to merchants.*" *See Interchange Fee V*, 2024 WL 1014159, at *17 (emphasis added).

economic entities in the purchase chain, the indirect purchaser has standing under *Illinois Brick*.");

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944, 2016 WL 7805628, at *14 (N.D.

Cal. Aug. 4, 2016) ("[W]here a purchasing agent purchases goods on behalf of its principal, the

principal—not the purchasing agent—is the direct purchaser."), *rev'd on other grounds by* 720 F.

App'x 835 (9th Cir. 2017); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 25

(D.D.C. 2001) (standing found where plaintiffs "either purchased the drugs themselves from [a

defendant] or, like the plaintiffs in *NASDAQ*, they purchased through agents"); *In re Toilet Seat*

*Antitrust Litig.*, No. 75-cv-184, 1977 WL 1453, at *2 (E.D. Mich. Aug. 24, 1977) (interpreting the

relationship between the purported indirect and direct purchaser "as that of principal and agent

rather than buyer and seller"); *accord Schwimmer v. Sony Corp. of Am.*, 637 F.2d 41, 48 (2d Cir.

1980) ("[A] court must guard against a situation in which a seller interposes a middleman as a

shield against antitrust liability.").

These cases support standing here, where Fee Payors have alleged, among other things,

that acquirers and payment facilitators are not independent economic actors that would or could

displace merchants as the proper holders of the Sherman Act damages claim. For example, Fee

Payors plead:

- "[A]cquiring banks . . . process payments for merchants as their agents." CCAC
  ¶ 5;

- "[A]cquiring banks . . . enable merchant acceptance." *Id*. ¶ 42;

- "To obtain debit acceptance services, merchants pay these fees, typically through
  acquirers and sometimes facilitated by non-bank processors." *Id*. ¶ 60.

These allegations mirror those in *Interchange Fee*, where Judge Brodie rightly questioned

whether "[a]cquirers are simply facilitating the provision of card-acceptance services to

merchants," such that merchants are the proper holders of the Sherman Act damages claims. *See*

*Interchange Fee V*, 2024 WL 1014159, at *16. In a separate *Interchange Fee* opinion, Judge

7

Brodie also held that so-called payment facilitators (companies that help Fee Payors access the Visa debit network) might simply act as merchants' agents. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 735 F. Supp. 3d 249, 268 (S.D.N.Y. 2024) ("Where Intuit's own agreements define such an agency relationship, there remains a triable question of fact as to the identity of the direct purchaser of the card-acceptance services."). As she cogently noted, Visa itself "contend[s] that 'payment facilitators act as the agents of their merchant customers,' and that '[t]he contracts under which Intuit and Square operate expressly document this agency relationship.'" *Id.* at 259.

Moreover, Fee Payors allege *additional facts* beyond those described in *Interchange Fee* that further demonstrate their antitrust standing. For example, Fee Payors plead that "many acquiring banks and payment processing platforms agreed to and participated in Visa's restraints, as alleged above, meaning fees paid through those entities represent fees paid to participants in Visa's unlawful conduct." *See* CCAC ¶ 228. Under black letter law, this allegation alone vests merchants with antitrust standing as the *most direct victim* of the anticompetitive conduct. *See Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 482 (S.D.N.Y. 2012) (the Sherman Act "allocate[s] to the first non-conspirator in the distribution chain the right to collect 100% of the damages") (quoting *Paper Sys. Inc. v. Nippon Paper Indus. Co. Ltd.*, 281 F.3d 629, 632 (7th Cir. 2002)); *see also In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 401 (M.D. Fla. 2018) (finding antitrust standing for consumers where "distributors either agreed to [facilitate the manufacturer's anticompetitive conduct] or were forced to implement the [restraints at issue] under threat from the [manufacturer]").

Finally, Visa's reliance on *Paycom Billing Services, Inc. v. Mastercard International, Inc.*, 467 F.3d 283 (2d Cir. 2006), *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008), and *In*

*re ATM Fee Antitrust Litigation*, 686 F.3d 741 (9th Cir. 2012), MTD at 7-12, is entirely misplaced. In all three cases, the plaintiffs effectively conceded their "indirect purchaser" status. Judge Brodie distinguished each of those cases on that ground. *See Interchange Fee V*, 2024 WL 1014159, at *13.[3] Visa contends that Fee Payors have made the same concession, MTD at 7 (citing CCAC ¶¶ 5, 60), but Fee Payors have done no such thing. To the contrary, the CCAC paragraphs quoted above *support* Fee Payors' contention that acquirers and so-called payment facilitators do not constitute distinct economic actors that could displace Fee Payors as the proper holders of the Sherman Act damages claims against Visa. At this point in the case, those allegations must control. *See Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 769 (2d Cir. 2016) (on a Rule 12(b)(6) motion, courts "accept[] as true all factual claims in the complaint and draw[] all reasonable inferences in the plaintiff's favor" (citation omitted)). Visa's antitrust standing contentions should, therefore, be rejected.

### B.    Plaintiffs Plausibly Pleaded Sherman Act Claims

Plaintiffs' Sherman Act claims may not be dismissed so long as they "plausibly allege that [Visa's] anticompetitive conduct restricted competition within a relevant market." *Regeneron Pharms, Inc. v. Novartis Pharma AG*, 96 F.4th 327, 338 (2d Cir. 2024). Because the Complaint comprehensively alleges both Visa's market and monopoly power, CCAC ¶¶ 194-220, and the

---

[3] Similarly, a recent decision dismissing the claims of a self-described "middleman" hinged on the plaintiff's failure to allege "how Visa's alleged conduct has directly 'caus[ed]' an injury to the plaintiff,' at least as to [the plaintiff's] injuries from fines and fees." *MiCamp Sols., LLC v. Visa Inc.*, No. 23-cv-06351, 2025 WL 892570, at *6 (N.D. Cal. Mar. 24, 2024) (quoting *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013)). Here, by contrast, Fee Payors have alleged direct economic harm from Visa's monopolistic fees. CCAC ¶ 226.

anticompetitive actions Visa has taken to maintain that power, *id.* ¶¶ 82-183, it is not subject to dismissal. Visa's arguments to the contrary largely rehash its flawed contentions in the DOJ action, *see United States v. Visa*, No. 24-cv-07214, ECF No. 38 ("Visa DOJ MTD") at 12-25, and should be rejected for similar reasons, *see generally id.* ECF No. 51 ("DOJ Opp.").

Plaintiffs have plausibly pleaded two relevant markets: the general purpose debit network services market and the card-not-present debit network services market (together, the "debit network services markets"). *See* CCAC ¶¶ 196-208. Under this circuit's "relatively permissive pleading standard," a proposed market at the motion to dismiss stage need only "'bear a rational relation to the methodology courts prescribe to define a market' and include a 'plausible explanation as to why a market should be limited' to exclude possible substitutes." *Regeneron*, 96 F.4th at 338-39 (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001)). Because "market definition is a deeply fact-intensive inquiry," courts "hesitate to grant motions to dismiss for failure to plead a relevant product market." *Id.* at 339 (quoting *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008)).

The Complaint explains why (1) debit network services are distinct from other payment methods, CCAC ¶¶ 42-44, (2) a product's ability to transfer funds, standing alone, is not equivalent to debit network services, *id.* ¶¶ 198, 204, and (3) Visa's high shares and margins in the relevant markets further suggest the non-equivalency of other services, *id.* ¶¶ 211-212. Taken as true, these allegations more than suffice to plausibly plead debit network services as "distinct antitrust markets." *Regeneron*, 96 F.4th at 339.

Visa argues that the Complaint is contradictory because it excludes interbank payment networks from the relevant markets but includes fintech debit networks, which rely on interbank payment networks. MTD at 13-14. But it makes perfect sense that a product (like a fintech debit

network) that uses an interbank payment network as an input *and combines it with additional features* may compete in the debit network services markets, even if interbank payment networks *standing alone* do not. That is precisely what the Complaint alleges. CCAC ¶ 80 (explaining that fintech debit networks combine "money transfer services" with additional functionality including payment authorization, communications with the consumer's bank, and settlement services, *which together* "provid[e] end-to-end functionality equivalent to debit card networks"), *id.* ¶ 144 (noting that "[i]nnovative fintech firms have sought to build new capabilities" on interbank payment networks), *id.* ¶ 204 (explaining that interbank payment networks are not equivalent to debit network services because they "lack convenience" and "fraud detection"); *see also* DOJ Opp. at 13. The Court need not "suspend common sense" to accept these noncontradictory allegations as true. *AJ Energy LLC v. Woori Bank*, No. 18-cv-3735, 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019).

None of Visa's cited cases are remotely analogous. Two involved pleadings contradicted by other record evidence—which is not at issue in the market definition here.[4] *Fisk v. Letterman*, 401 F. Supp. 2d 362, 367-68 (S.D.N.Y. 2005); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 427 (S.D.N.Y. 2001). Several more involved pleadings with plainly insufficient allegations to support the proposed market definition. *See LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 584 (S.D.N.Y. 2017) (dismissing a complaint that "[did] not explain" or "address" why two similar markets for bar review services were not interchangeable); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338 (11th Cir. 2010) (finding a single "conclusional

---

[4] Visa contends that Plaintiffs' allegations regarding agreements not to compete (as opposed to market definition) are contradicted by documents supposedly incorporated by reference into the Complaint. MTD at 15-16. Not so. *See infra* at 13.

statement" insufficient to support an alleged market); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (rejecting a market definition that was "not natural" and "contorted" for litigation). The complaints in the remaining cases attempted, unlike here, to confine a relevant market to a single name-brand product. *See Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1094-95 (C.D. Cal. 2007); *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 482 (S.D.N.Y. 2001); *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997); *see also* DOJ Opp. at 12. Plaintiffs' Complaint bears no resemblance to those pleadings.

Visa's final argument regarding market definition relies on hypothetical facts about how some Plaintiffs may use interbank payment networks. MTD at 14. But dismissal based on any "fact-intensive inquiry" is inappropriate at this stage. *Regeneron*, 96 F.4th at 339 (quoting *Chapman*, 546 F.3d at 238). It is certainly inappropriate where, as here, Visa's basis for dismissal would require the Court to accept *its* alleged facts as true. *Contra Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To be clear, Plaintiffs will prove the propriety of their market definition at trial. But even if that were unlikely, dismissal would still not be warranted. *Id.* ("[A] well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974))).

Nor are Plaintiffs' claims subject to dismissal based on the price-cost or discount-attribution tests. MTD at 15. Those tests apply only where low "price is the clearly predominant mechanism of exclusion." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 275 (3d Cir. 2012); *Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 32 (S.D.N.Y. 2016). The gravamen of Plaintiffs' Complaint, however, is that Visa's unlawful exclusionary conduct allows it to impose "*supracompetitive* prices." CCAC ¶ 273 (emphasis added). Allegations that anticompetitive

conduct has created prices that are *too high* are distinct—and subject to distinct legal tests—from allegations that a monopoly has been maintained by pricing that is *too low*. *See Pulse Network, LLC v. Visa Inc.*, 30 F.4th 480, 492, 494-95 (5th Cir. 2022) ("[The Plaintiff] isn't complaining about low prices but about high prices—i.e., the supra-competitive overall prices Visa can charge merchants by exploiting its market dominance."); *see also* DOJ Opp. at 17-18. Visa's cases are not to the contrary. *See* DOJ Opp. at 18-19.

There is also no contradiction between the agreements attached to Visa's dismissal motion and Plaintiffs' allegations. The Complaint details Visa's longstanding history of pressuring multiple entities not to challenge its dominance in the debit network services markets. *See, e.g.*, CCAC ¶¶ 148-154 (detailing Visa's coercion of PayPal); *id.* ¶¶ 156-161 (similar as to Square); *id.* ¶¶ 166-167 (similar as to Apple); *id.* ¶¶ 168-183 (similar as to Plaid).[5] Although Visa ignores these allegations, courts must consider "the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed" in evaluating Sherman Act claims. *Nat'l Soc'y of Prof'l Eng'rs. v. United States*, 435 U.S. 679, 692 (1978). Regardless, even Visa's cherry-picked contractual provisions support, rather than undermine, Plaintiffs' claims. *See* DOJ Opp. at 22-23.

---

[5] Contrary to Visa's assertion that "Plaintiffs make no new factual allegations" about agreements not to compete, MTD at 16, the DOJ's complaint does not include Plaintiffs' Plaid-related allegations.

### C.    Plaintiffs Plausibly Pleaded State Law Claims

Because Plaintiffs' Sherman Act claims are not subject to dismissal, Visa's Sherman Act-based argument for dismissing Plaintiffs' state law claims, *see* MTD at 12 & n.5, necessarily fails. With two exceptions,[6] Visa's remaining arguments also lack merit.

#### 1.    Antitrust Claims

***Illinois (Counts 34-37).*** Visa is wrong to rely on Illinois's law that "no person shall be authorized to maintain a class action in any court of this State for *indirect* purchasers . . . with the sole exception of this State's Attorney General," 740 Ill. Comp. Stat. § 10/7(2) (emphasis added), because Plaintiffs directly pay Visa's supracompetitive fees. *See supra* Section IV(A). Even if Plaintiffs were indirect purchasers, the statute expressly applies only to claims brought in a "court of this State"—Illinois—and thus is inapplicable to this New York-based federal litigation. *Id.*; *see, e.g.*, *Blue Cross & Blue Shield of Vt. v. Teva Pharm. Indus., Ltd.*, 712 F. Supp. 3d 499, 545-46 (D. Vt. 2024); *Mayor & City Council of Balt. v. Merck Sharp & Dohme Corp.*, No. 23-cv-828, 2023 WL 8018980, at *13-14 (E.D. Pa. Nov. 20, 2023); *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 728 (S.D.N.Y. 2017).

Finally, even if Visa's proffered Attorney General requirement, *see* MTD at 16, somehow overcame those barriers to application, it is preempted here. In federal court, Rule 23 permits Plaintiffs to proceed on behalf of a class and preempts contrary state law provisions. *See Shady Grove Orthopedics Assocs. P.A. v. Allstate Ins. Co.* 559 U.S. 393, 408 (2010) (plurality opinion); *id.* at 435-36 (Stevens, J., concurring); *see also Lisk v. Lumber One Wood Preserving, LLC*, 792

---

[6] Visa's arguments to dismiss Plaintiffs' monopolization claims under the California Cartwright Act (Counts 9-10) and their claims under Mississippi law (Counts 66-69), *see* MTD at 16-17, are well-taken, and Plaintiffs consent to their dismissal.

F.3d 1331, 1335 (11th Cir. 2015) (observing that, in *Shady Grove*, "five justices" across two opinions "agreed that [because] applying Rule 23 to allow a class action for a statutory penalty created by [state] law did not abridge, enlarge, or modify a substantive right," "Rule 23 controlled"). That binding rule dictates the preemption of the Attorney General requirement. *See Blue Cross & Blue Shield*, 712 F. Supp. 3d at 544-47; *Mayor & City Council*, 2023 WL 8018980, at *13-14; *In re Propranolol*, 249 F. Supp. 3d at 728.

  **South Dakota (Counts 114-117).** Visa relies on *In re Dynamic Random Access Memory Antitrust Litigation*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ("*DRAM*"), to contend that Plaintiffs' claims are subject to dismissal for failing to sufficiently allege South Dakota-related conduct. MTD at 17. *DRAM* explains, however, that a complaint sufficiently pleads South Dakota antitrust claims "as long as any part of [the anticompetitive conduct] takes place or has an effect within the state." *DRAM*, 516 F. Supp. 2d at 1098 (citing S.D. Codified Laws § 37–1–3.1). In contrast to the claims in *DRAM*, which were dismissed because they did "not specifically allege any conduct or conspiracy that takes place, or has any effect within South Dakota," *id.* at 1099, the Complaint here sufficiently alleges both activities and effects in South Dakota. *See* CCAC ¶ 730 ("Visa has willfully and unlawfully maintained its monopoly in the relevant markets through the exclusionary course of conduct and anticompetitive acts described herein, *including in South Dakota*." (emphasis added)); *id.* ¶ 734 (similar); *id.* ¶ 737 ("The Class has been injured in its business or property *in South Dakota* by Visa's violations of [South Dakota law]." (emphasis added)); *id.* ¶ 742 (same); *id.* ¶ 747 (same).

  **Tennessee (Counts 118-121) and Wisconsin (Counts 134-137).** Visa similarly contends that Plaintiffs' Tennessee and Wisconsin claims should be dismissed because they insufficiently allege substantial effects in those states. MTD at 17; *see Freeman Indus., LLC v. Eastman Chem.*

*Co.*, 172 S.W.3d 512, 523-24 (Tenn. 2005); *Meyers v. Bayer AG, Bayer Corp.*, 735 N.W.2d 448, 451 (Wis. 2007). Those states' "substantial effects" rules, however, do not require the use of certain magic words. Instead, claims are plausible if they contain sufficient "class-wide allegations to infer a substantial effect" in the relevant state. *In re Amitiza Antitrust Litig.*, No. 21-cv-11057, 2024 WL 4344887, at *4 (D. Mass. Sept. 30, 2024) (rejecting dismissal of Tennessee and Wisconsin claims based on this principle); *Picone v. Shire PLC*, No. 16-cv-12396, 2017 WL 4873506, at *20 (D. Mass. Oct. 20, 2017) (similar as to Wisconsin); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 581-82 (M.D. Pa. 2009) (similar as to both states); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 165-67 (E.D. Pa. 2009) (similar as to both states); *see also Meyers*, 735 N.W.2d at 320 (clarifying that a substantial effects requirement does not require "disproportionate impacts" on a state). The comprehensive, multi-billion-dollar scheme alleged here, *see, e.g.*, CCAC ¶¶ 1, 12, 36, 97, easily permits a plausible inference that Visa's anticompetitive actions substantially affected Tennessee and Wisconsin.

*Utah (Counts 122-125).* Although some cases have stated that Utah's antitrust law requires a named Utah plaintiff, the statute says no such thing. Utah Code Ann. § 76-10-3109(1)(a). Many courts have accordingly reasoned that class certification is "a more appropriate stage to resolve" any issue regarding Utah named plaintiffs. *Mayor & City Council*, 2023 WL 8018980, at *14; *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 838-39 & n.106 (E.D. Pa. 2019) (holding the same and collecting cases); *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 353 F. Supp. 3d 678, 696 (M.D. Tenn. 2018). These cases control here because the Second Circuit has expressly determined that "when a plaintiff attempts to sue on behalf of those who may have claims under different states' laws," that presents "an issue best addressed under Rule 23." *Langan*, 897 F.3d at 95.

***Colorado (Counts 14-17) and New Jersey (Counts 82-85).*** Visa's argument for limiting Plaintiffs' damages under Colorado and New Jersey law—without seeking to otherwise dismiss the relevant claims, *see* MTD at 17—is "procedurally premature." *Guerrero v. Ellusionist.com, Inc.*, No. 22-cv-2465, 2023 WL 3847402, at *4 (S.D.N.Y. June 6, 2023) (quoting *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 345 (S.D.N.Y. 2023)). "A motion to dismiss is addressed to a 'claim'—not to a form of damages." *Id.* (quoting *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 n.5 (S.D.N.Y. 2010)). The Court should not evaluate damages questions at this stage, particularly because Plaintiffs maintain that they directly pay the fees at issue, *see supra* Section IV(A)—an argument which, if proven, will moot this issue.

### 2. Consumer Protection Claims

Visa moves to dismiss Plaintiffs' consumer protection claims based on Article III, antitrust standing, and supposedly inadequate pleading. Each argument fails.

*First*, Visa argues that the Complaint's purported failure to adequately state a consumer protection claim in the named plaintiffs' resident states **(California (Count 13)** and **Florida (Counts 26-29))** requires dismissal of Plaintiffs' other consumer protection claims in **Massachusetts (Counts 54-57)** and **Vermont (Counts 126-129)**. MTD at 18. But that contention flouts *Langan*'s holding that

> as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of adjudicatory competence under Article III.

897 F.3d at 93 (internal citations and quotation marks omitted).

*Langan*'s rule controls so long as the named plaintiff suffers an injury "of the same general character" as unnamed class members and the various laws "generally prohibit the same conduct." *Id.* at 94-95.

17

Here, the injury pleaded in each claim is of the same general character: Plaintiffs paid higher fees because of Visa's anticompetitive conduct in the debit network services markets. *Compare, e.g.*, CCAC ¶¶ 255-283 (Sherman Act claims), *id.* ¶¶ 308-315 (non-conceded California Cartwright Act claims), *and id.* ¶¶ 601-616 (New Jersey claims), *with id.* ¶¶ 316-321 (California UCL claim), *id.* ¶¶ 370-385 (Florida claims), *id.* ¶¶ 489-504 (Massachusetts claims), *and id.* ¶¶ 780-796 (Vermont claims). And every statute underlying each claim in the Complaint prohibits Visa's anticompetitive conduct. As a result, once the Court concludes it is plausible that Visa "actually injure[d] a named plaintiff" under *any* claim—which could include not only the California and Florida consumer protection claims but also the Sherman Act claims, non-conceded California Cartwright Act claims, and New Jersey claims—issues involving unnamed class members concern "the prudence of certifying a class under Rule 23," not "constitutional standing." *Langan*, 897 F.3d at 94.[7]

Regardless, as explained below, Plaintiffs have plausibly pleaded claims under California's Unfair Competition Law ("UCL") and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), which eliminates any Article III argument even under Visa's flawed reading of Second Circuit jurisprudence.

*Second*, Visa's argument that Plaintiffs' **Florida** claims should be dismissed for lack of antitrust standing as indirect purchasers, MTD at 19, is irrelevant here because Plaintiffs directly pay the relevant fees. *See supra* Section IV(A). Even if that were not true, the overwhelming

---

[7] *See Renois v. WVMF Funding, LLC*, No. 20-cv-9281, 2024 WL 1313492, at *14 (S.D.N.Y. Mar. 27, 2024). Visa cites *English v. Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529 (S.D.N.Y. 2023) and *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72 (S.D.N.Y. 2023), but in those cases, unlike here, the named plaintiffs had no claim as a matter of law in their home states of residence.

weight of authority—including decisions from this district and Florida state courts—recognizes that FDUTPA permits indirect purchaser standing. *See In re Keurig Green Mountain Single-Serve Antitrust Litig.*, No. 14-md-2542, 2021 WL 10724138, at *2 (S.D.N.Y. June 2, 2021) ("Florida courts, as well as other courts . . . have recognized that indirect purchasers in Florida can sue and recover damages for antitrust violations just like indirect purchasers in Repealer States."); *Mack v. Bristol-Myers Squibb Co.*, 673 So.2d 100, 108 (Fla. Dist. Ct. App. 1996) ("We read subsections 501.202(2), 501.211(2), and 501.204(1) of [FDUTPA] as a clear statement of legislative policy to protect consumers through the authorization of such indirect purchaser actions."); *see also In re Amitiza Antitrust Litig.*, No. 21-cv-11057, 2024 WL 4250224, at *12 (D. Mass. Aug. 21, 2024) (collecting cases), *report & recommendation adopted*, *In re Amitiza*, 2024 WL 4344887.

*Third*, Visa's remaining arguments regarding the supposed inadequacy of Plaintiffs' pleadings misunderstand the law, the Complaint, or both.

The requirement that a plaintiff lack an adequate remedy at law before obtaining relief under **California's UCL**, *see* MTD at 18-19, is not a *pleading requirement*, but a limitation on a court's *remedial authority*.[8] *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("Sonner must establish that she lacks an adequate remedy at law before *securing* equitable restitution for past harm under the UCL[.]" (emphasis added)); *Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (dismissing a UCL claim after having concluded that a legal remedy was available). "[A]t the pleading stage," Plaintiffs are entitled to plead "equitable claims in the alternative," and numerous courts have "recognized this practice as proper." *Aesha v. State*

---

[8] Visa's other UCL argument—that it should be dismissed for the same reasons as Plaintiffs' Sherman Act claims, MTD at 18—fails because Plaintiffs adequately pleaded their Sherman Act claims. *See supra* Section IV(B).

*Farm Gen. Ins. Co.*, No. 24-cv-850, 2024 WL 5410447, at *5 (C.D. Cal. July 30, 2024); *see also, e.g.*, *Steiner v. Vi-Jon, Inc.*, 723 F. Supp. 3d 784, 795 (N.D. Cal. 2024); *Nimo v. Aiko Importers, Inc.*, No. 24-cv-4000, 2024 WL 4406976, at *2 (C.D. Cal. Aug. 29, 2024). After all, "[d]iscovery may reveal that [the plaintiff's] claims providing legal remedies are inadequate for any number of reasons, despite the fact that their allegations appear adequate." *Eason v. Roman Cath. Bishop of San Diego*, 414 F. Supp. 3d 1276, 1282 (S.D. Cal. 2019) (quoting *Wildin v. FCA US LLC*, No. 17-cv-2594, 2018 WL 3032986, at *7 (S.D. Cal. June 19, 2018)).[9]

      Visa's argument that Plaintiffs have failed to plead "essential elements" of their "non-resident" **Massachusetts** and **Vermont** "consumer protection claims," *see* MTD at 19, fails to identify the elements of those claims, let alone any element that Plaintiffs failed to plead. For good reason, as Plaintiffs' pleadings are amply sufficient. Both states' statutes contain roughly the same elements. The unfairness of anticompetitive activity is determined by reference to (a) public policy (Vermont) or established concepts of unfairness (Massachusetts), (b) the immorality, unethical nature, oppressiveness, or unscrupulousness of the conduct, and (c) whether it causes substantial injury to consumers (Vermont) or other businesspeople (Massachusetts). *Vermont v. Exxon Mobil Corp.*, No. 21-cv-260, 2024 WL 446086, at *4 (D. Vt. Feb. 6, 2024) (citing *Christie v. Dalmig, Inc.*, 396 A.2d 1385, 1388 (Vt. 1979)); *Governo Law Firm LLC v. Bergeron*, 166 N.E.3d 416, 425

---

[9] Should the court dismiss Plaintiffs' UCL claim, Plaintiffs must receive leave to replead. *Guzman*, 49 F.4th at 1313-15. More generally, the Court should grant Plaintiffs leave to replead any claim it dismisses over their opposition, and Plaintiffs hereby expressly request the opportunity to do so. *See Shomo v. City of N.Y.*, 579 F.3d 176, 184 (2d Cir. 2009) (leave to replead should be granted so long as it "is possible" that plaintiffs "could remedy [any] inadequacies identified by the district court").

n.13 (Mass. 2021).[10] The Complaint alleges that Visa's anticompetitive conduct (1) violated public policy and established concepts of fairness by breaching federal and state law, *see* CCAC ¶¶ 255-828, (2) unethically and oppressively repressed competition, *id.* ¶¶ 108-192, and (3) caused substantial injury to consumers and other businesspeople, *id.* ¶¶ 98-100. Taken as true, these allegations suffice.

Visa's contention that **Massachusetts**, **Vermont**, and **Florida** law require deceptive conduct, MTD at 20, misreads the relevant statutes.[11] In each state, a claim can be stated by alleging deceptive *or* unfair conduct. *See* Mass. Gen. Laws. Ch. 93A § 2(a) ("Unfair methods of competition *and* unfair *or* deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." (emphases added)); *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 79 (1st Cir. 2020) ("An act or practice may be 'unfair' within the statutory meaning [of Massachusetts Chapter 93A] without being deceptive or fraudulent." (internal citation omitted)); Vt. Stat. Ann. tit. 9, § 2461(b) (creating a private right of action for "any consumer who contracts for goods or

---

[10] Vermont balances the factors, *see Exxon Mobil*, 2024 WL 446086, at *4 & n.2, while Massachusetts treats them as independent methods of stating a claim, *see Governo*, 166 N.E.3d at 425 n.13 (using the word "or" in describing the factors). Regardless, Plaintiffs have adequately pleaded each element of both states' laws.

[11] Visa's reference to "unconscionable sales," MTD at 20, is even less tethered to statutory text. Only Florida appears to consider unconscionability, and Florida treats it—like deceptive conduct—as an additional way to demonstrate a violation, not a requirement. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690, 2015 WL 3988488, at *35 (N.D. Ill. June 29, 2015) (Florida law "proscribe[s] not only deceptive, fraudulent, and unconscionable business practices, but also *unfair* business practices").

services in reliance upon false or fraudulent representations *or practices prohibited by section 2453*" (emphasis added)); *id.* § 2453(a) (prohibiting "[u]nfair methods of competition in commerce *and* unfair *or* deceptive acts or practices in commerce" (emphases added)); *Dernier v. Mortg. Network, Inc.*, 87 A.3d 465, 481 (Vt. 2013) ("'Unfair' acts and 'deceptive' acts each have their own tests that we have defined through our case law."); Fla. Stat. § 501.204(1) ("Unfair methods of competition, unconscionable acts or practices, *and* unfair *or* deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." (emphases added)); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690, 2015 WL 3988488, at *18 (N.D. Ill. June 29, 2015) (FDUTPA requires a "deceptive act *or* unfair practice" (emphasis added)). As explained in the previous paragraph, Plaintiffs have alleged unfair conduct in spades. Regardless, the Complaint also alleges deceptive conduct. CCAC ¶¶ 168-183, 232 (detailing Visa's misleading statements and actions in connection with Plaid).

Finally, Visa's single-sentence argument that Plaintiffs are not consumers under Massachusetts law, MTD at 20, is sufficiently "undeveloped" to have been "waived," *Force v. Facebook, Inc.*, 934 F.3d 53, 66 n.20 (2d Cir. 2019). Regardless, the argument is incorrect. Massachusetts law allows any "person who engages in the conduct of trade or commerce"—like Fee Payors—to bring a claim based on any "unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two" of the commonwealth's consumer protection statute. Mass. Gen. Laws. Ch. 93A § 11; *see id.* § 1(a) (defining "person" to include "corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity"). The Complaint does exactly that. CCAC ¶¶ 489-504 (seeking damages under Mass. Gen. Laws. Ch. 93A § 2). Visa's cited case involved an individual plaintiff suing under a distinct section of Massachusetts's statute, *see* Mass. Gen. Laws. Ch. 93A § 9; *Gottlieb v. Amica Mut. Ins. Co.*, No.

20-cv-10509, Am. Compl. ¶ 61, ECF No. 47 (D. Mass. Apr. 1, 2021), and thus simply used (but did not discuss, define, or treat as a requirement) the word "consumer." *Gottlieb v. Amica Mut. Ins. Co.*, 57 F.4th 1, 4, 10 (1st Cir. 2022). To the extent this argument is considered, it fails.

## V.    CONCLUSION

Because Fee Payor Plaintiffs have standing and have plausibly alleged both Sherman Act and state law claims, the Court should deny Visa's motion to dismiss save for the state claims that Plaintiffs voluntarily dismiss.

Dated: April 11, 2025                    Respectfully submitted,

                                         */s/ Brent W. Johnson*
                                         Brent W. Johnson (Bar Code 4955745)
                                         Benjamin D. Brown (*pro hac vice*)
                                         Daniel McCuaig (*pro hac vice*)
                                         Zachary Krowitz (*pro hac vice*)
                                         Alex Bodaken (Bar Code 5937255)
                                         **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                         1100 New York Ave. NW, Eighth Floor
                                         Washington, DC 20005
                                         Tel: (202) 408-4600
                                         bjohnson@cohenmilstein.com
                                         bbrown@cohenmilstein.com
                                         dmccuaig@cohenmilstein.com
                                         zkrowitz@cohenmilstein.com
                                         abodaken@cohenmilstein.com

                                         Manuel J. Dominguez (*pro hac vice*)
                                         **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                         2925 PGA Blvd., Suite 200
                                         Palm Beach Gardens, FL 33410
                                         Tel: (561) 515-2604
                                         jdominguez@cohenmilstein.com

                                         */s/ Daniel P. Weick*
                                         Daniel P. Weick (Bar Code 4822011)
                                         Scott Martin (Bar Code SM7373)
                                         **HAUSFELD LLP**
                                         33 Whitehall Street, 14th Floor
                                         New York, NY 10004
                                         Tel: (646) 357-1100
                                         Fax: (212) 202-4322

dweick@hausfeld.com
smartin@hausfeld.com

Brian A. Ratner (*pro hac vice*)
Jane Shin (*pro hac vice*)
Camila Ringeling (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel: (202) 540-7200
Fax: (202) 540-7201
bratner@hausfeld.com
jshin@hausfeld.com
cringeling@hausfeld.com

Christopher L. Lebsock (*pro hac vice*)
**HAUSFELD LLP**
580 California Street, 12th Floor
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980
clebsock@hausfeld.com

*Co-Lead Counsel for Plaintiffs and the Proposed
Class*

*/s/ Matthew Tripolitsiotis*
Matthew Tripolitsiotis (Bar Code MT9413)
**BURNS CHAREST LLP**
757 Third Ave., 20th Floor
New York, NY 10017
Tel:  (469) 895-5269
mtripolitsiotis@burnscharest.com

Christopher J. Cormier (*pro hac vice*)
Matt Strauser (*pro hac vice*)
Ian Baize (*pro hac vice*)
**BURNS CHAREST LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
ccormier@burnscharest.com
mstrauser@burnscharest.com
ibaize@burnscharest.com

Warren T. Burns (*pro hac vice forthcoming*)

24

**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
wburns@burnscharest.com

*/s/ Brian Danitz*
Brian Danitz (Bar Code 5790217)
Joseph W. Cotchett (*pro hac vice forthcoming*)
Adam J. Zapala (*pro hac vice*)
Gia Jung (*pro hac vice forthcoming*)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
bdanitz@cpmlegal.com
jcotchett@cpmlegal.com
azapala@cpmlegal.com
gjung@cpmlegal.com

Karin B. Swope (*pro hac vice forthcoming*)
Thomas E. Loeser (*pro hac vice forthcoming*)
Vara Lyons (*pro hac vice forthcoming*)
**COTCHETT, PITRE & McCARTHY, LLP**
999 N. Northlake Way Suite 215
Seattle, WA 98103
Tel: (206) 802.1272
Fax: (650) 697.0577
kswope@cpmlegal.com
tloeser@cpmlegal.com
vlyons@cpmlegal.com

*Executive Committee Counsel for Plaintiffs and the
Proposed Class*

## **CERTIFICATION OF COMPLIANCE**

I hereby certify under Section III.D of Judge Koeltl's individual practices that this memorandum contains 6,995 words, exclusive of the cover page, table of contents, table of authorities, and this certification. I further certify that this memorandum complies with the formatting rules provided in Section III.D of Judge Koeltl's individual practices.

*/s/ Brent W. Johnson*
Brent W. Johnson
