**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

IN RE: VISA DEBIT CARD ANTITRUST
LITIGATION

Case No.: 24-cv-7435 (JGK)

**DEFENDANT VISA INC.'S REPLY IN SUPPORT OF MOTION
TO DISMISS AMENDED CONSOLIDATED CARDHOLDER COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................. 1

I.      PLAINTIFFS LACK *AGC* STANDING ............................................................................ 1

      A.  The Second Circuit Rejected Plaintiffs' *Amex* Argument ............................................ 1

      B.  Cardholders Are Not Efficient Enforcers for Damages or Injunctive Relief .............. 2

II.     STATE ANTITRUST CLAIMS ARE OTHERWISE DEFECIENT ................................. 5

III.    CONSUMER PROTECTION CLAIMS ARE DEFICIENT ............................................... 6

IV.   STATUTES OF LIMITATION CURTAIL ANY SURVIVING CLAIMS ....................... 7

V.    FEDERAL AND STATE ANTITRUST CLAIMS FAIL .................................................. 8

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Golden Grain Co.*,
  677 F. Supp. 3d 940 (E.D. Mo. 2023)........................................................................................6

*Blue Shield of Va. v. McCready*,
  457 U.S. 465 (1982).................................................................................................................1, 2

*Cargill, Inc. v. Monfort of Colo., Inc.*,
  479 U.S. 104 (1986).....................................................................................................................2

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ...................................................................................................9

*Dedloff v. Whole Foods Mkt. Grp., Inc.*,
  688 F. Supp. 3d 893 (E.D. Mo. 2023)........................................................................................7

*Faltermeier v. FCA US LLC*,
  899 F.3d 617 (8th Cir. 2018) .....................................................................................................6

*Gibbons v. Nuckolls, Inc.*,
  216 S.W.3d 667 (Mo. 2007) .......................................................................................................6

*Gonzalez v. Am. Honda Motor Co.*,
  720 F. Supp. 3d 833 (C.D. Cal. 2024) .......................................................................................7

*Hinds County v. Wachovia Bank N.A.*,
  885 F. Supp. 2d 617 (S.D.N.Y. 2012)........................................................................................8

*In re Aluminum Warehousing Antitrust Litig.*,
  833 F.3d 151 (2d Cir. 2016).......................................................................................................2

*In re Amazon.com, Inc. eBook Antitrust Litig.*,
  2023 WL 6006525 (S.D.N.Y. July 31, 2023) ...........................................................................4

*In re Amitiza Antitrust Litig.*,
  No. 21-CV-11057-MJJ, 2024 WL 4250224 (D. Mass. Aug. 21, 2024) ....................................6

*In re Auto. Parts Antitrust Litig.*,
  29 F. Supp. 3d 982 (E.D. Mich. 2014).......................................................................................3

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) .........................................................................................2

*In re Cattle & Beef Antitrust Litig.*,
  687 F. Supp. 3d 828 (D. Minn. 2023)...........................................................................7

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  261 F. Supp. 2d 188 (E.D.N.Y. 2003) ...........................................................................8

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015)......................................7

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011)............................................................................5

*In re Lipitor Antitrust Litig.*,
  336 F. Supp. 3d 395 (D.N.J. 2018) ............................................................................5, 6

*In re Lithium Ion Batteries Antitrust Litig.*,
  2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)..................................................................3

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  350 F. Supp. 2d 160 (D. Me. 2004) ...............................................................................6

*In re Novartis & Par Antitrust Litig.*,
  No. 18 CIV. 11835, 2019 WL 3841711 (S.D.N.Y. Aug. 15, 2019) ...........................5

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  729 F. Supp. 3d 298 (E.D.N.Y. 2024) ...........................................................................8

*In re Pork Antitrust Litig.*,
  495 F. Supp. 3d 753 (D. Minn. 2020).............................................................................5

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  593 F. Supp. 2d 29 (D.D.C. 2008) .................................................................................2

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
  No. 13-CV-01180-BLF, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015).....................2

*Ohio v. American Express Co.*,
  585 U.S. 529 (2018).....................................................................................................1, 3

*Oliver v. Am. Express Co.*,
  No. 19-CV-566-NGG-SMG, 2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020) .............4

*Palladino v. JP Morgan Chase & Co.*,
  No. 23-CV-1215, 2024 WL 3594569 (E.D.N.Y. July 31, 2024).............................3, 5

*Phhhoto Inc. v. Meta Platforms, Inc.*,
  123 F.4th 592 (2d Cir. 2024) .........................................................................................8

*Salveson v. JP Morgan Chase & Co.*,
  166 F. Supp. 3d 242 (E.D.N.Y. 2016) ...................................................................5

*Salveson v. JPMorgan Chase & Co.*,
  860 F. App'x 207 (2d Cir. 2021) ....................................................................1, 3

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
  22 F.4th 103 (2d Cir. 2021) ..........................................................................3, 4

*State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*,
  106 P.3d 428 (Idaho 2005)...............................................................................7

**Table of Short Form Citations**

| Short Form Citation | Long Form Citation |
| --- | --- |
| Complaint or Compl. | Amended Consolidated Cardholder Complaint, *In re: Visa Debit Card Antitrust Litigation*, Case No. 1:24-cv-07435-JGK (S.D.N.Y.), ECF No. 53 |
| Merchant Reply | Fee-Payor Plaintiffs' Opposition to Visa Inc.'s Motion to Dismiss, *In re: Visa Debit Card Antitrust Litigation*, Case No. 1:24-cv-07435-JGK (S.D.N.Y.), ECF No. 129 |
| DOJ Compl. | Complaint, *United States of America v. Visa Inc.*, Case No. 1:24-cv-07214 (S.D.N.Y.), ECF No. 1 |
| Visa DOJ Reply | Reply in Support of Visa Inc.'s Motion to Dismiss, *United States of America v. Visa Inc.*, Case No. 1:24-cv-07214 (S.D.N.Y.), ECF No. 60 |
| *Pulse* | *Pulse Network LLC v. Visa Inc.*, Case No. 4:14-cv-03391 (S.D. Tex.) |
| *Pulse* Complaint | *Pulse Network LLC v. Visa Inc.*, Case No. 4:14-cv-03391 (S.D. Tex.), ECF No. 1 |
| *AGC* | *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) |
| *Illinois Brick* | *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) |
| *In re Payment Card* | *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (E.D.N.Y.) |

**INTRODUCTION**

Plaintiffs' Opposition rehashes arguments rejected by the Second Circuit in dismissing payment cardholders for lack of *AGC* standing. Their state law claims suffer additional defects, statutes of limitation curtail any surviving claims, and their antitrust claims fail for reasons similar to DOJ's.

**ARGUMENT**

**I.    PLAINTIFFS LACK *AGC* STANDING**

**A.    The Second Circuit Rejected Plaintiffs' *Amex* Argument**

Because cardholders do not participate in network services markets where the conduct occurred, they do not suffer antitrust injury. Mot. at 6 (discussing dismissals of analogous cardholder claims affirmed by Second Circuit). Plaintiffs argue that those cases do not apply because under *Ohio v. American Express Co.*, 585 U.S. 529 (2018) ("*Amex*"), cardholders "participated in a single market controlled by Visa on both sides of the transaction—cardholders and issuing banks on one side and merchants and acquiring banks on the other." Opp. at 6–7. The Second Circuit rejected that argument in a post-*Amex* appeal in *Salveson v. JPMorgan Chase & Co.*, 860 F. App'x 207, 209 (2d Cir. 2021), explaining that the argument "confuses the issue of market definition . . . with the issue of who may be a proper [antitrust] plaintiff." While courts "must use a two-sided market definition when analyzing market power," that does not "bar courts from treating participants in these markets as purchasers of distinct goods for [standing] purposes." *Id*. Cardholders here likewise engage in transactions "for goods and services" in a separate market from network services markets where allegedly anticompetitive conduct occurred. Mot. at 6 (citing Compl. ¶¶ 56, 153–54).

Cardholders' alleged injuries also are not "inextricably intertwined with the injury Visa inflicted on merchants," as they assert. Opp. at 11 (citing *Blue Shield of Va. v. McCready*, 457

U.S. 465, 484 (1982)).  The "thrust of *McCready* is that the plaintiff was a participant in 'the very market directly distorted by the antitrust violation.'"  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 160 (2d Cir. 2016) (citation omitted).  Plaintiffs here are not participants in network services markets; they consume goods and services multiple steps removed from Visa's network services to banks.  Mot. at 6.

**B.      Cardholders Are Not Efficient Enforcers for Damages or Injunctive Relief**

Plaintiffs incorrectly assert that *AGC* factors do not apply to injunctive relief.  Opp. at 5 (citing *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986)).  Under *Cargill*, only "some of the [*AGC*] factors" are inapplicable to injunctive relief.  479 U.S. at 111 n.6; Mot. at 7.  Plaintiffs' other cited cases are not to the contrary.  *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2015 WL 4755335, at *16 (N.D. Cal. Aug. 11, 2015) ("[N]ot all *AGC* factors apply . . . because 'standing under § 16 raises no threat of multiple lawsuits or duplicative recoveries.'") (citation omitted); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 813 (N.D. Ill. 2017) (same).[1]  Each <u>applicable</u> factor weighs against Plaintiffs for both injunctive relief and damages.

**1.      Derivative Injury**

The existence of *Illinois Brick* repealer laws (Opp. at 15) does not establish *AGC* standing.

---

[1] *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 593 F. Supp. 2d 29, 41–43 (D.D.C. 2008), has *dicta* suggesting *AGC* factors do not apply to injunctive relief, but the court immediately confirmed that, under *Cargill*, only *certain* factors are inapplicable.  That court then found sufficient allegations to support "antitrust injury" and "a causal connection" for standing whereas, here, cardholders lack antitrust injury due to not participating in network services markets and lack standing because their alleged injury is derivative, not just indirect.

*AGC* addresses different concerns than *Illinois Brick*—i.e., whether there is sufficient proximate cause for alleged injuries.  Under *AGC*, courts consider "whether, as indirect purchasers, there is a direct link in the causation chain between Defendants' alleged anticompetitive conduct, and the artificially high prices paid by Plaintiffs."  *Palladino v. JP Morgan Chase & Co.*, No. 23-CV-1215, 2024 WL 3594569, at *26 (E.D.N.Y. July 31, 2024), *report and recommendation adopted*, No. 23-CV-1215-MKB-JAM, 2024 WL 5248824 (E.D.N.Y. Dec. 30, 2024).[2]  Like cardholders in *Palladino* and *Salveson*, Plaintiffs claim wholly derivative injuries that arise from "pass through" (Opp. at 15) of alleged overcharges paid by others.  *Compare Palladino*, 2024 WL 3594569, at *27 (describing layers of intermediate events leading to pass-on of allegedly injurious fees to cardholders) *with* Mot. at 8 (same).

The alleged derivative injuries reflected in the price of retail goods or services are unlike the component cases cited by Plaintiffs in which the cost increases of components were clearly traceable to plaintiffs.  *See, e.g., In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1002 (E.D. Mich. 2014); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *14 (N.D. Cal. Oct. 2, 2014).  Here, Plaintiffs' conclusory speculation of "simple pass through" by merchants into retail prices (Opp. at 15) ignores, among other things, that debit transactions are two-sided—meaning that costs to merchants of debit card acceptance that allegedly raise retail prices are largely revenue to issuers, which issuers use to reduce cardholder costs.  *Amex*, 585 U.S. at 547

---

[2] Plaintiffs argue that "California's repeal of *Illinois Brick* renders AGC 'inapposite,'" Opp. at 15, but the Second Circuit held the opposite.  *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 120 (2d Cir. 2021) ("California law substantially incorporates the *AGC* factors.").

3

("[F]ocusing on merchant fees alone misses the mark.").

### 2.    Others Sued for the Same Conduct

Plaintiffs' relative motivation to sue (Opp. at 16) misses this factor's focus on remoteness—whether other plaintiffs "diminish[] the justification for allowing a more *remote* party such as [cardholders] to perform the office of a private attorney general." *AGC*, 459 U.S. at 542 (emphasis added). Cardholders do not dispute the existence of less remote plaintiffs. Moreover, consumers in *In re Amazon.com, Inc. eBook Antitrust Litig.*, 2023 WL 6006525, at *15 (S.D.N.Y. July 31, 2023), "directly purchased . . . from Amazon" and thus were "superior" enforcers. In contrast, Plaintiffs admit that cardholders are so remote that they do not understand how debit transactions "work" such that they could not have been expected to sue when less remote plaintiffs did. Opp. at 28.

### 3.    Speculative Injury

Cardholders do not contest that tracing fees through multiple levels is necessary to show injury (Mot. at 9) and instead argue that complicated damages should not alone deny standing. Opp. at 16 (citing *Schwab*, 22 F.4th at 119). Here, it is not just *damages* but proof of *injury* that involves "several stages of speculation" involving pass-on from acquirers to merchants and then merchants into retail prices—before considering the other side of transactions (i.e., beneficial pass through by issuers to cardholders). Moreover, *Schwab* supports finding cardholders to be inefficient enforcers. 22 F.4th at 119 ("highly speculative damages is a sign that a given plaintiff is an inefficient engine of enforcement"); *see also* Mot. at 9 (citing *Oliver v. Am. Express Co.*, No. 19-CV-566-NGG-SMG, 2020 WL 2079510, at *11 (E.D.N.Y. Apr. 30, 2020) ("speculation" of "trickle over" of payment costs "into retail costs")).

### 4.    Duplicative Damages That Are Difficult to Apportion

The risk of duplicative and difficult-to-apportion damages (Opp. at 17) remains relevant even when *Illinois Brick* does not apply.  *Palladino*, 2024 WL 3594569, at \*31 (considering "difficulty in ascertaining what portion of an overcharge was passed on from direct purchasers to downstream links in a distribution chain").  Unlike component and surcharge cases cited by Plaintiffs (Opp. at 17), cardholder damages "would be difficult to apportion," *id.*, requiring "long and complicated proceedings," *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 264 (E.D.N.Y. 2016).

## II.    STATE ANTITRUST CLAIMS ARE OTHERWISE DEFECIENT

Plaintiffs do not dispute that when named plaintiffs have no viable antitrust claim in their residence states, they lack Article III standing to bring antitrust claims of absent class members from other states.  Opp. at 18 n.7; Mot. at 10.  Plaintiffs also do not dispute that if *AGC* applies, it bars state antitrust claims.  Opp. at 5; Mot. at 11 & App. B.

Plaintiffs' state antitrust claims fail for additional reasons:

- **Illinois** and **Arkansas**.  The "majority of courts" hold that limits on indirect purchaser suits to attorneys general are substantive and apply in federal court.  *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 417–18 (D.N.J. 2018) (adopting "persuasive" analysis of *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011); rejecting Plaintiffs' cases); *In re Novartis & Par Antitrust Litig.*, No. 18 CIV. 11835, 2019 WL 3841711, at \*7 (S.D.N.Y. Aug. 15, 2019).

- **Mississippi**.  Merchant plaintiffs concede dismissal is "well-taken."  Merchant Reply at 14 n.6.  Cardholders do not, based solely on a case that *dismissed* Mississippi claims for want of sufficient intrastate nexus—same as here.  *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 779 (D. Minn. 2020).

- **South Dakota**, **Wisconsin**, and **Tennessee**.  Plaintiffs cite cases requiring specific in-state misconduct or effects; no such allegations exist here.  *E.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 172 (D. Me. 2004).

- **Utah**.  The majority of courts require at least one Utah named plaintiff.  *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d at 419.

- **Colorado**, **Delaware**, and **New Jersey**.  *In re Amitiza Antitrust Litig.*, No. 21-CV-11057-MJJ, 2024 WL 4250224, at *31 (D. Mass. Aug. 21, 2024), declined to dismiss *only* "to the extent that they seek damages after the respective effective [repealer] dates."

## III.    CONSUMER PROTECTION CLAIMS ARE DEFICIENT

Plaintiffs' Missouri consumer protection claim is deficient, and they lack Article III standing to bring consumer protection claims under other states' statutes.  Mot. at 12.  Even assuming that *Illinois Brick* does not bar antitrust claims repackaged as MMPA claims (Opp. at 22), the Missouri claim remains deficient.  Plaintiffs contend that purchasing merchandise from merchants is enough.  Opp. at 22–23.  But Visa provides network services to banks, not the merchandise cardholders purchase from merchants.  Mot. at 13; *see also Gibbons v. Nuckolls, Inc.*, 216 S.W.3d 667, 668–70 (Mo. 2007) (permitting deception claim against car wholesaler who misrepresented accident history of car purchased by consumer).

Plaintiffs do not address their failure to allege facts showing "a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."  *Abbott v. Golden Grain Co.*, 677 F. Supp. 3d 940, 946 (E.D. Mo. 2023).  That cardholders are "unaware of how, or even that, their money is allocated" in a debit transaction (Compl. ¶ 182; Opp. at 28) is fatal to their claims.  *Faltermeier v. FCA US LLC*, 899 F.3d 617, 622 (8th Cir. 2018) (failure to show

6

plaintiff purchased vehicle "in connection with" or had awareness of any misrepresentation by defendant); *Dedloff v. Whole Foods Mkt. Grp., Inc.*, 688 F. Supp. 3d 893, 900–01 (E.D. Mo. 2023) (failure to allege deception at the point of sale).

Moreover, Plaintiffs cannot punt their pleading burden on other consumer protection claims (Mot. at 13–14) until class certification. Opp. at 23–24 (citing class certification decisions). And essential elements of other states' claims are deficient:

- **Florida**: Doomed antitrust claims cannot be repackaged as indirect FDUTPA claims. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *19 (N.D. Ill. June 29, 2015) (distinguishing Plaintiffs' primary authority).

- **Vermont**. Plaintiffs agree *AGC* standing is necessary. Opp. at 25.

- **Montana** and **South Carolina**. *In re Cattle & Beef Antitrust Litig.*, 687 F. Supp. 3d 828, 845 (D. Minn. 2023), is more recent authority than Plaintiffs' citations. South Carolina federal courts conclude that the class prohibition is substantive and applies in federal courts. *Gonzalez v. Am. Honda Motor Co.*, 720 F. Supp. 3d 833, 847 (C.D. Cal. 2024) (collecting cases).

- **Idaho**, **Massachusetts**, and **Vermont.** The Idaho Supreme Court held price fixing is not actionable under the ICA as it is not unconscionable "sales conduct" directed at consumers. *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 435 (Idaho 2005). Vermont and Massachusetts impose similar requirements, and Plaintiffs do not address Visa's authority. Mot. at 14–15.

## IV. STATUTES OF LIMITATION CURTAIL ANY SURVIVING CLAIMS

The Second Circuit does not apply a discovery rule to antitrust claims: "[a] cause of action for an alleged antitrust violation accrues 'when a defendant commits an act that injures a plaintiff's

7

business.'" *Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 603 (2d Cir. 2024) (citations omitted). The limitations period may "be equitably tolled only in 'rare and exceptional circumstance[s],'" such as self-concealing bid-rigging. *Id.* Plaintiffs are wrong (Opp. at 29) about the nature of debit monopolization claims as summarized in *In re Payment Card*, 729 F. Supp. 3d 298, 311–12 (E.D.N.Y. 2024). They admit that *Pulse* involved similar conduct and do not dispute that the *Pulse* Complaint *was* public. Opp. at 29; Mot. at 16. Plaintiffs fail to plead fraudulent concealment because they point to no "affirmative steps" to conceal Plaintiffs' claim. *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 223 (E.D.N.Y. 2003). And conduct that would not dissolve with disclosure of agreements "cannot be characterized as a self-concealing fraud." *Id*. at 224.[3] Thus, this Court should simplify this case now by narrowing damages to the extent any claims survive. None of Plaintiffs' cases from this circuit hold doing so improper. Opp. at 26–27.

## V.    FEDERAL AND STATE ANTITRUST CLAIMS FAIL

*Market Definition*. Plaintiffs admit the incoherence of their proposed markets by conceding that "Interbank Payment Networks, like debit cards, are capable of transferring funds . . . as they do for Fintech Debit Networks." Opp. at 35. Like DOJ, they offer no precedent to limit markets to perfect functional equivalents. Opp. at 35; Visa DOJ Reply at 1–2. And their complaint abandons DOJ's (otherwise flawed) allegations about fraud, disputes, and chargebacks. Opp. at 3–4 (citing only DOJ Compl.). Further, that ACH may not be used for "routine [grocery] purchases" given that it "take[s] several days" (Opp. at 35 (citing Compl. ¶¶ 118, 163, 166)) is a non sequitur because their markets are not limited to routine purchases and they do not dispute that

---

[3] The erroneous holding in *Hinds County v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 627 (S.D.N.Y. 2012), addressed "bid-rigging" and "price-fixing," which are deemed self-concealing.

ACH *is* often substituted for many debit transactions.  Mot. at 20.  Moreover, allegations about transaction times are not part of market definition allegations; they support allegations that newer Interbank Payment Networks offer "more efficient" networks than Visa.  *Compare* Compl. ¶ 118 *with id*. ¶¶ 159–70.

*Volume-Discount Agreements*.  Plaintiffs concede that "a price-cost test" is essential where pricing is the "predominant mechanism of exclusion."  Opp. at 36 (cleaned up); *see also id*. at 37.  They identify no other "mechanism of exclusion" from Visa's discounts.  That allegedly "Visa kicks back monopoly profits to cooperative merchants" (Opp. at 37) is simply a colorful description of volume discounts that are presumptively lawful even from a monopolist, unless they fail a price-cost test.  *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1060–63 (8th Cir. 2000); Visa DOJ Reply at 4–7.  Plaintiffs cite no authority that reverting from discounts to rack rates, returning unearned discounts, or receiving discounts bundled across transactions (Opp. at 37–38) are a non-price mechanism of exclusion.  And "high entry barriers" (Opp. at 38) relate to market power, not exclusionary conduct.  Plaintiffs' failure to plead that Visa's discounts fail any price-cost test is therefore fatal.[4]

*Agreements Not to Compete*.  Plaintiffs (mis)characterize as "isolated language" (Opp. at 39) Visa's preservation of its right not to deal with rivals.  Mot. at 15.  Those provisions are the heart of DOJ's claims that Plaintiffs copied, and Plaintiffs do not dispute that those provisions are not agreements not to compete.  Plaintiffs' assertion that "Apple Pay cannot function without the license" from Visa (Opp. at 39) cannot be reconciled with Interbank Payment Networks today

---

[4] *FTC v. Syngenta Crop Protection AG*, 711, F. Supp. 3d 545, 576 (M.D.N.C. 2024), is inapposite, as discussed in Visa DOJ Reply, at 5.

being "more efficient" "alternative payment rails" for FinTech products than Visa.  Compl. ¶¶ 116, 118.  Plaintiffs' attempted analogy to Google's "revenue-sharing agreement" with Apple (Opp. at 39) ignores that, in contrast to Google paying its own money to Apple, Visa simply facilitates issuers' payments to Apple for Apple allowing those banks' cards to be loaded into Apple Pay.  Visa DOJ Reply at 8.  And unlike Google's *de facto* exclusive arrangement with Apple, there is no allegation that any card network is excluded from Apple Pay.  As to PayPal and Square, now that Plaintiffs have those agreements, they do not argue that they constitute agreements not to compete.  Opp. at 39 (characterizing as "evidence of monopolistic intent").

## CONCLUSION

Plaintiffs' complaint should be dismissed with prejudice.

Dated:  May 8, 2025

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

/s/ *Anne P. Davis*
Anne P. Davis (admitted *pro hac vice*)
Matthew A. Eisenstein (admitted *pro hac vice*)
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel. (202) 942-5000
anne.davis@arnoldporter.com
matthew.eisenstein@arnoldporter.com

Margaret A. Rogers
250 West 55th Street
New York, NY 10019
Tel. (212) 836-8000
margaret.rogers@arnoldporter.com

**WILKINSON STEKLOFF LLP**

Beth Wilkinson
Brian Stekloff (admitted *pro hac vice*)
Kieran Gostin
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel. (202) 847-4000
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com

*Counsel for Defendant Visa Inc.*

11

## CERTIFICATION OF COMPLIANCE

I hereby certify under Section II.D of Judge Koeltl's individual practices that this memorandum contains 2,796 words, exclusive of the cover page, table of contents, table of authorities, and this certification.  I further certify that this memorandum complies with the formatting rules provided in Section II.D of Judge Koeltl's individual practices.

/s/ *Anne P. Davis*
Anne P. Davis

12