UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: VISA DEBIT CARD ANTITRUST
LITIGATION

Case No.: 24-cv-7435 (JGK)

**DEFENDANT VISA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
MERCHANT PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.    PLAINTIFFS LACK *ILLINOIS BRICK* STANDING ......................................................... 1

II.   FEDERAL AND STATE ANTITRUST CLAIMS FAIL .................................................. 4

III.  STATE LAW CLAIMS FAIL ............................................................................................ 6

       A.   State Antitrust Claims.................................................................................................. 6

       B.   Consumer Protection Claims....................................................................................... 7

CONCLUSION......................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Fougere*,
    450 F. Supp. 3d 10 (D. Mass. 2020), *aff'd*, 79 F.4th 172 (1st Cir. 2023)..................9

*Apple v. Pepper*,
    587 U.S. 273 (2019).................................................................................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................3

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) .................................................................................5

*Davis v. FEC*,
    554 U.S. 724 (2008).................................................................................................7

*Guzman v. Polaris Indus. Inc.*,
    49 F. 4th 1308 (9th Cir. 2022) .................................................................................9

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995).....................................................................................3

*In re Amitiza Antitrust Litig.*,
    No. 21-cv-11057, 2024 WL 4250224 (D. Mass. Aug. 21, 2024) ............................8

*In re Amitiza Antitrust Litig.*,
    No. 21-CV-11057-MJJ, 2024 WL 4344887 (D. Mass. Sept. 30, 2024) ..................6

*In re ATM Fee Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012) ...................................................................................2

*In re Auto. Parts Antitrust Litig.*,
    No. 12-MD-02311, 2018 WL 1135504 (E.D. Mich. Jan. 16, 2018).........................6

*In re Cattle & Beef Antitrust Litig.*,
    687 F. Supp. 3d 828 (D. Minn. 2023)......................................................................9

*In re Coordinated Pretrial Proc. in Petrol. Prods. Antitrust Litig.*,
    691 F.2d 1335 (9th Cir. 1982) .................................................................................4

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litigation*,
    No. 9-cv-3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015)..................................8

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011)..................................................................................6

*In re Keurig Green Mountain Single-Serve Antitrust Litig.*,
   No. 14-md-2542, 2021 WL 10724138 (S.D.N.Y. June 2, 2021)..............................................8

*In re Lipitor Antitrust Litig.*,
   336 F. Supp. 3d 395 (D.N.J. 2018) ......................................................................................6

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)..................................................................................3

*In re Novartis & Par Antitrust Litig.*,
   No. 18-Civ-4361, 2019 WL 3841711 (S.D.N.Y. Aug. 15, 2019)...............................................6

*In re Nurture Baby Food Litig.*,
   No. 1:21-cv-01217-MKV, 2025 WL 918927 (S.D.N.Y. Mar. 26, 2025)...................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   2024 WL 1014159 (E.D.N.Y Mar. 8, 2024)......................................................................1, 2

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   735 F. Supp. 3d 249 (E.D.N.Y. 2024) ..................................................................................3

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009)...........................................................................................6

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ..............................................................................................1

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
   897 F.3d 88 (2d Cir. 2018)................................................................................................6, 7

*Laumann* v. *National Hockey League*,
   907 F. Supp. 2d 465 (S.D.N.Y. 2012)..................................................................................4

*Mack v. Bristol-Myers Squibb Co.*,
   673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ...........................................................................8

*McCarthy v. Recordex Serv., Inc.*,
   80 F.3d 842 (3d Cir. 1996)...................................................................................................4

*Murthy v. Missouri*,
   603 U.S. 43 (2024)............................................................................................................7, 8

*Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*,
   467 F.3d 283 (2d Cir. 2006).................................................................................................1

*Pro. Sports Servs. FI OY v. Grossman*,
    No. CV-24-cv-12351-NMG, 2025 WL 848386 (D. Mass. Mar. 17, 2025) ............................... 9

*Pulse Network LLC v. Visa Inc.*,
    30 F. 4th 480 (5th Cir. 2022) ................................................................................................. 5

*Renois v. WVMF Funding, LLC*,
    No. 20-cv-9281, 2024 WL 1313492 (S.D.N.Y. Mar. 27, 2024) ............................................. 8

*Smith v. Apple, Inc.*,
    No. 21-cv-09527-HSG, 2023 WL 2095914 (N.D. Cal. Feb. 17, 2023) .................................. 9

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................................................. 8, 9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .............................................................................................................. 7

## **Statutes**

Vt. Stat. tit. 9, § 2461(b) ................................................................................................................ 9

**Table of Short Form Citations**

| Short Form Citation | Long Form Citation |
|---|---|
| Mot. | Memorandum in Support of Visa Inc.'s Motion to Dismiss Merchant Plaintiffs' Consolidated Class Action Complaint, *In re: Visa Debit Card Antitrust Litig.*, Case No. 1:24-cv-7435-JGK (S.D.N.Y.), ECF No. 115 |
| Opposition or Opp. | Merchant Plaintiffs' Opposition to Visa Inc.'s Motion to Dismiss, *In re: Visa Debit Card Antitrust Litig.*, Case No. 1:24-7435-JGK (S.D.N.Y.), ECF No. 129 |
| Complaint or CCAC | Merchant Plaintiffs' Consolidated Class Action Complaint, *In re: Visa Debit Card Antitrust Litig.*, Case No. 1:24-cv-07435-JGK (S.D.N.Y.), ECF No. 38 |
| DOJ Opp. | The United States' Opposition to Visa Inc.'s Motion to Dismiss, *United States of America v. Visa Inc.*, Case No. 1:24-cv-07214 (S.D.N.Y.), ECF No. 52 |
| Visa DOJ Reply | Reply in Support of Visa Inc.'s Motion to Dismiss, *United States of America v. Visa Inc.*, Case No. 1:24-cv-07214 (S.D.N.Y.), ECF No. 60 |
| *AGC* | *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519 (1983) |
| *Illinois Brick* | *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) |
| *In re Payment Card* | *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (E.D.N.Y.) |

**INTRODUCTION**

Plaintiffs' Opposition highlights that their factual allegations compel dismissal of their Sherman Act damages claims under *Illinois Brick*, their federal and state antitrust law claims fail on their merits, and their state law claims are otherwise flawed.

**ARGUMENT**

**I.    PLAINTIFFS LACK *ILLINOIS BRICK* STANDING**

Plaintiffs encourage this Court to follow Judge Brodie's *Illinois Brick* reasoning from *In re Payment Card*, 2024 WL 1014159 (E.D.N.Y Mar. 8, 2024). Opp. at 1, 6, 7–8. Judge Brodie held that the nature of services consumed by plaintiffs is "critical to determining . . . direct purchasers," and predicated her decision on those plaintiffs' alleged purchases of "card-acceptance services." 2024 WL 1014159, at *15–17. Here, by contrast, Plaintiffs do not allege that they purchased "card-acceptance services" from Visa. Rather, Plaintiffs concede that Visa sells *network services* that only "banks" directly purchase from Visa. Opp. at 2 (citing CCAC ¶¶ 3, 43, 48, 197). Plaintiffs further concede that when cardholders present debit credentials to merchants, merchants "ask[] . . . acquirer[s]" to route and process cardholders' information "to a debit network." Opp. at 2. Accordingly, Plaintiffs allege that merchants are "direct consumers of debit transaction *routing and processing services*" purchased from acquirers or processors—*not* from Visa. CCAC ¶ 226 (emphasis added); Mot. at 9–10. Plaintiffs do not contend that they are direct purchasers of the "*network services*" that Visa sells directly to banks. CCAC ¶ 197; Opp. at 2, 4–9; Mot. at 8–9.

The critical factual allegations here therefore are different from those in *In re Payment Card* and render Judge Brodie's logic inapplicable. But they squarely align with facts compelling dismissal under *Illinois Brick* in *Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 291–92 (2d Cir. 2006), *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048–51 (9th Cir. 2008),

and *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749–50 (9th Cir. 2012)—which, as Judge Brodie explained, established those plaintiffs as indirect purchasers. *In re Payment Card,* 2024 WL 1014159, at *13.

Stated differently, *network services* sold by Visa to banks and *routing and processing services* sold by acquirers to Plaintiffs are separate components that go into a debit card transaction. That distinction is analogous to (a) concrete manufacturers selling blocks to general contractors for contractors to use in masonry structures purchased by building owners, *Illinois Brick*, 431 U.S. 720, 720 (1977), and (b) app designers loading apps into Apple's App Store for iPhone owners to purchase from Apple, *Apple v. Pepper*, 587 U.S. 273, 277 (2019). Just as building owners and iPhone owners are "two or more steps removed" (*id*. at 280) from the respective concrete block manufacturers and app designers, merchants here are equally removed from providers of debit card network services like Visa. Indeed, Plaintiffs concede that they seek to recover as damages "charges for routing debit transactions" and for "accessing Visa's debit network." Opp. at 6. While Plaintiffs label these charges in their Opposition to be "Visa's" (*id.*), they do not dispute that (i) merchants pay these fees to acquirers for *routing* debit transactions—i.e., for selecting among the multiple unaffiliated networks on each debit card (CCAC ¶¶ 6, 47, 67, 96; Mot. at 9) and (ii) acquirers—*not* merchants—then access the debit network that the acquirers select, with the selected-network in turn charging fees to acquirers (CCAC ¶¶ 60, 96; Mot. at 10).

*Apple* reaffirmed *Illinois Brick* as a "bright-line rule" and instructed that courts should not "litigate a series of exceptions." 587 U.S. at 285. That holding dispenses with Plaintiffs' unsupported argument—relying on *AGC* cases—that *Illinois Brick* does not apply to "complex" or "nuanced" cases. Opp. at 4–5. Plaintiffs ask the Court to establish a novel exception to *Illinois Brick* that turns on identifying the entity that withholds fees from debit transaction funds that are

2

ultimately owed to merchants. Opp. at 5 & n.2. But Plaintiffs do not dispute that Visa's fees are paid "through acquirers" alone. CCAC ¶ 60; Mot. at 8. And Plaintiffs' conclusory allegation that Visa "directly withdraw[s] the money for its fees from the monies owed to [Plaintiffs]" (Opp. at 5 (quoting CCAC ¶ 226)) is contradicted by their allegations that it is the "[b]anks" themselves that "transfer funds . . . via a bank-exclusive wire service"—with Visa's role being to communicate authorization messages and then summarize what banks owe each other. CCAC ¶ 44. With Visa never touching the funds that flow among banks and ultimately from acquiring banks to merchants (*id.*), Plaintiffs' conclusory and contradicted assertion that Visa directly withdraws its fees from the funds that Plaintiffs receive must be disregarded. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001).

Plaintiffs' references to agency law are equally off-base. Each cited case discussing standing under *Illinois Brick* involved intermediary agents making purchases on behalf of plaintiffs. Opp. at 6–7. Plaintiffs here allege no facts supporting any agency relationship between acquirers and merchants; their singular, conclusory labeling of acquirers as "their agents" (Opp. at 7–8 (citing CCAC ¶ 5)) is unsupported by any factual allegations and must be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Furthermore, their conflation of "acquirers" with separate entities known as "payment facilitators" (Opp at 8) is no help because, as Judge Brodie explained in the cited decision, payment facilitators are distinct from acquirers, maintain "contracts with . . . Acquirers," send transactions to acquirers, and acquirers, "in turn, send[] the transaction information across the payment card network." *In re Payment Card*, 735 F. Supp. 3d 249, 256 (E.D.N.Y. 2024). Nor do Plaintiffs allege that they utilized payment facilitators as their agents or otherwise explain "payment facilitators" in their complaint. CCAC ¶ 40 n.2.

3

Plaintiffs also cannot invoke a "co-conspirator exception" that has never been recognized by the Supreme Court or the Second Circuit. *Laumann* v. *National Hockey League*, 907 F. Supp. 2d 465 (S.D.N.Y. 2012), predates the Supreme Court's admonition (discussed above) not to "litigate a series of exceptions" to *Illinois Brick*. Even *Laumann* acknowledged that the exception has not been adopted by the Second Circuit and stressed that circuits applying this exception do so narrowly and only where "*all middlemen* are alleged to be co-conspirators." *Id*. at 481–83 (emphasis added). Here, no acquiring entity is joined or alleged to be a co-conspirator. *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996) (co-conspirator must be joined as defendant to invoke exception); *In re Coordinated Pretrial Proc. in Petrol. Prods. Antitrust Litig*., 691 F.2d 1335, 1341–42 (9th Cir. 1982) (same). Moreover, the conclusory allegation that acquirers "agreed to and participated in Visa's restraints" (Opp. at 8 (quoting CCAC ¶ 228)) is inconsistent with Plaintiffs' allegations that "[a]cquiring banks are captive" and "Visa imposes those conditions on acquiring banks" (CCAC ¶ 6).

## II. FEDERAL AND STATE ANTITRUST CLAIMS FAIL

*Market Definition*. Plaintiffs echo DOJ's reliance on supposed minimum attributes offered by "fintech debit" to include fintech in their markets while excluding the interbank payment networks that enable fintech. Opp. at 10–11 (citing DOJ Opp. at 13). Like DOJ, they offer no authority to support distinctions between products serving similar functions. Visa DOJ Reply at 1–3. Plaintiffs do not dispute that ACH is substituted for debit card networks for many transactions in their proposed markets and do not deny that "some Plaintiffs may use interbank payment networks" as substitutes. Opp. at 12; Mot. at 14. Because exclusion of ACH is supported by "insufficient allegations" and "contradicted" by other alleged facts (e.g., PIN debit networks being *in* the markets despite *lacking* adequate fraud tools), the Court should follow the cases Visa

4

cites dismissing complaints with similarly deficient market definitions. Opp. at 11–12; Mot. at 13–14; Visa DOJ Reply at 3.

*Volume-Discount Agreements*. Plaintiffs concede that a "price-cost or discount attribution test" is essential where price is the "predominant mechanism of exclusion." Opp. at 12. They identify no other "mechanism of exclusion" from Visa's discounts. Opp. at 12–13. Instead, they quote a discussion of Visa's "FANF" pricing structure in *Pulse Network LLC v. Visa Inc.*, 30 F. 4th 480, 492 (5th Cir. 2022)—not Visa's volume-discount agreements. *Compare id.* at 494–95 (discussing Pulse's standing to challenge volume-discount agreements). In contrast to Pulse's *FANF* claims, Plaintiffs here identify no facts explaining how Visa's *discount* agreements raise prices and therefore proffer no rationale to avoid pleading the price-cost test that is essential to challenging Visa's discounts. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1060–63 (8th Cir. 2000); Visa DOJ Reply at 4–7.

*Agreements Not to Compete*. Plaintiffs copied DOJ's allegation of agreements not to compete. After seeing the agreements, they do not dispute that reserving Visa's right not to deal with competitors is no antitrust violation. Mot. at 15–16; Visa DOJ Reply at 7–10. Instead of defending that meritless claim, Plaintiffs improperly attempt to amend their complaint via their Opposition, by changing "agreements not to compete" (CCAC ¶¶ 270–76) to "pressure campaigns." Opp. at 1, 13. But absent an "agreement," there is no Section 1 or 3 violation. Moreover, the supposed "campaigns" describe Visa offering discounts to use Visa's debit network instead of ACH. CCAC ¶¶ 151–52 (PayPal), 158 (Square), 166 (Apple). That is competition, and the admission that Visa competes against ACH to provide a network empowering fintechs reinforces that ACH participates in the markets. As to Plaid, Plaintiffs allege a failed acquisition and no facts supporting any Visa partnership. CCAC ¶¶ 181, 183; Mot. at 6.

### III.    STATE LAW CLAIMS FAIL

#### A.    State Antitrust Claims

**Illinois**:  The "majority of courts" hold that limits on indirect purchaser suits to attorneys general are substantive and apply in federal court.  *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 417–18 (D.N.J. 2018) (adopting "persuasive" analysis of *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011); rejecting Plaintiffs' cases); *In re Novartis & Par Antitrust Litig.*, No. 18-Civ-4361, 2019 WL 3841711, at *7 (S.D.N.Y. Aug. 15, 2019).

**South Dakota**: Plaintiffs cite only boilerplate allegations of anticompetitive conduct and effects within South Dakota (Opp. at 15 (citing CCAC ¶¶ 730, 734, 737)), but courts require "allegations beyond boilerplate . . . to create a basis for inferring that the conspiracy had an effect on trade or commerce in South Dakota."  *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2018 WL 1135504, at *4 (E.D. Mich. Jan. 16, 2018) (dismissing where "no allegation regarding . . . plaintiff with a principal place of business in South Dakota").

**Tennessee and Wisconsin**:  Cases cited by Plaintiffs confirm that allegations specific to Tennessee and Wisconsin are required to support an inference of a substantial effect on commerce in those states; class-wide allegations are insufficient.  *In re Amitiza Antitrust Litig.*, No. 21-CV-11057-MJJ, 2024 WL 4344887, at *4 (D. Mass. Sept. 30, 2024) (alleging number of prescriptions in each state); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 166 (E.D. Pa. 2009) ("office located in Tennessee"; "purchases by . . . [Tennessee] members").  Here, Plaintiffs allege only that the "Class has been injured in its business or property" in Tennessee and Wisconsin.  CCAC ¶¶ 751, 816.

**Utah**:  The majority of courts require at least one Utah named plaintiff because the Utah statute requires a Utah "citizen" or "resident."  *In re Lipitor*, 336 F. Supp. 3d at 419.  *Langan v.*

*Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 96 (2d Cir. 2018), addresses Article III standing, not Utah law.

**Colorado and New Jersey**:  Courts routinely limit damages at the pleading stage based on the timing of *Illinois Brick* repealer amendments.  Mot. at 17 (collecting cases).  Plaintiffs cite only an inapposite case involving "civil penalties, fines, or punitive damages."  Opp. at 17.

B.    **Consumer Protection Claims**

Plaintiffs misread *Langan* to argue that named Plaintiffs do not need viable *consumer protection* claims in residence states to assert consumer protection laws of others states on behalf of absent class members.  Opp. at 17–18.  But they concede that *Langan*, which involved only consumer protection claims (897 F.3d at 91), requires the laws of residence states to "prohibit the same conduct" as other states.  Opp. at 17.  Nothing in *Langan* authorizes mixing-and-matching different types of claims to establish Article III standing as doing so would violate the oft-stated rule that standing is not "dispensed in gross"—meaning that "plaintiffs must demonstrate standing for each claim they press" and "each form of relief."  *Murthy v. Missouri*, 603 U.S. 43, 61 (2024); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Davis v. FEC*, 554 U.S. 724, 734 (2008). Indeed, *Langan* recognized that while "modest" differences in state law between named and absent class members may not defeat standing, "a named plaintiff's claim can be so different from the claims of his putative class members that they present an issue . . . of constitutional standing."  897 F.3d at 94–95.  Thus, an *antitrust* claim for a named Plaintiff does not confer "standing in gross" to assert claims under different legal frameworks with different elements on behalf of absent class

7

members where those absent class members cannot invoke state antitrust statutes.[1]

Plaintiffs' consumer protection claims are otherwise deficient:

**Florida**: While some decisions have permitted indirect purchaser FDUTPA claims where the claim is not an otherwise barred antitrust claim (*Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100 (Fla. Dist. Ct. App. 1996)), the court in *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litigation*, No. 9-cv-3690, 2015 WL 3988488, at *19 (N.D. Ill. June 29, 2015), carefully distinguished *Mack* as not addressing repackaged indirect purchaser antitrust claims. Plaintiffs' other cases are not persuasive. The special master in *In re Keurig Green Mountain Single-Serve Antitrust Litig.,* No. 14-md-2542, 2021 WL 10724138, at *2 (S.D.N.Y. June 2, 2021), cited *Mack* with no analysis in a settlement allocation dispute, which did not involve a defendant motivated to argue against permitting repackaged indirect purchaser antitrust claims. The magistrate judge in *In re Amitiza Antitrust Litig.*, No. 21-cv-11057, 2024 WL 4250224, at *12 (D. Mass. Aug. 21, 2024), did not grapple with conflicting authority because the defendant did not address the contrary cases.

**California**: While Plaintiffs argue that it is permissible to plead inadequate legal remedies in the alternative, their complaint does not do so. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("operative complaint does not allege that [plaintiff] lacks an adequate legal remedy"). And courts have held that inadequate legal remedies cannot be pleaded "in the

---

[1] *Renois v. WVMF Funding, LLC*, No. 20-cv-9281, 2024 WL 1313492, at *14 (S.D.N.Y. Mar. 27, 2024), did not address that out-of-state claims were different, and its holding cannot be squared with the Supreme Court's repeated admonition that plaintiffs carry the burden to establish standing separately for "each claim they press." *Murthy*, 603 U.S. at 61.

8

alternative" because inadequate legal remedies is essential to "equitable jurisdiction." *Smith v. Apple, Inc.*, No. 21-cv-09527-HSG, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17, 2023) (discussing *Sonner* and *Guzman v. Polaris Indus. Inc.*, 49 F. 4th 1308, 1314 (9th Cir. 2022)); *see also In re Nurture Baby Food Litig.*, No. 1:21-cv-01217-MKV, 2025 WL 918927, at *16 (S.D.N.Y. Mar. 26, 2025).

**Other States**:  Plaintiffs ignore that they cannot repackage antitrust claims as consumer protection claims without specific facts supporting each element of each state's different statute. Mot. at 19–20.  Plaintiffs cite only conclusory labels and legal conclusions from the complaint, not facts.  Opp. at 21.  They argue—without citation—that they plead "unfair conduct in spades" but cite no authority that an antitrust violation qualifies as "unfair" under any state's consumer protection statute.  And the only "deceptive conduct" they cite is Visa's proposed acquisition of Plaid—i.e., that Visa defended the acquisition as pro-competitive.  Opp. at 22.  But that acquisition was terminated—meaning any "anticompetitive threat" "dissipated" without causing any harm. CCAC ¶ 232.

For Vermont, Plaintiffs ignore their failure to allege "reliance," Vt. Stat. tit. 9, § 2461(b), and that merchants are not Vermont "consumers," *In re Cattle & Beef Antitrust Litig.*, 687 F. Supp. 3d 828, 846 (D. Minn. 2023).  For Massachusetts, beyond not alleging "immoral, unethical, oppressive, or unscrupulous" behavior, *Allstate Ins. Co. v. Fougere*, 450 F. Supp. 3d 10, 19 (D. Mass. 2020), *aff'd*, 79 F.4th 172 (1st Cir. 2023), they do not allege that Visa's "unfair" conduct took place "primarily and substantially within [Massachusetts]," as required under Section 93A. *Pro. Sports Servs. FI OY v. Grossman*, No. CV-24-cv-12351-NMG, 2025 WL 848386, at *3–4 (D. Mass. Mar. 17, 2025).

## CONCLUSION

Plaintiffs' complaint should be dismissed.

| | |
|---|---|
| Dated:  May 8, 2025 | Respectfully submitted,<br><br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br><br>/s/ *Anne P. Davis*<br>Anne P. Davis (admitted *pro hac vice*)<br>Matthew A. Eisenstein (admitted *pro hac vice*)<br>601 Massachusetts Avenue, NW<br>Washington, DC 20001-3743<br>Tel. (202) 942-5000<br>anne.davis@arnoldporter.com<br>matthew.eisenstein@arnoldporter.com<br><br>Margaret A. Rogers<br>250 West 55th Street<br>New York, NY 10019<br>Tel. (212) 836-8000<br>margaret.rogers@arnoldporter.com<br><br>**WILKINSON STEKLOFF LLP**<br><br>Beth Wilkinson<br>Brian Stekloff (admitted *pro hac vice*)<br>Kieran Gostin<br>2001 M Street NW, 10th Floor<br>Washington, DC 20036<br>Tel. (202) 847-4000<br>bwilkinson@wilkinsonstekloff.com<br>bstekloff@wilkinsonstekloff.com<br>kgostin@wilkinsonstekloff.com<br><br>*Counsel for Defendant Visa Inc.* |

## CERTIFICATION OF COMPLIANCE

I hereby certify under Section II.D of Judge Koeltl's individual practices that this memorandum contains 2,793 words, exclusive of the cover page, table of contents, table of authorities, and this certification. I further certify that this memorandum complies with the formatting rules provided in Section II.D of Judge Koeltl's individual practices.


                                                /s/ *Anne P. Davis*
                                                Anne P. Davis