**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: VISA DEBIT CARD ANTITRUST LITIGATION | Civil Action No.: 24-7435 (JGK) |

## [PROPOSED] ORDER GOVERNING ESI DISCOVERY

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the Parties must develop a proposed discovery plan that states the Parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the Parties are aware of the importance of cooperation and commit to cooperate in good faith to promote the "just, speedy, and inexpensive determination" of this Action, as required by Fed. R. Civ. P. 1. The Parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(l). The Parties' cooperation includes identifying appropriate scope for eDiscovery, including limits on custodians, identifying relevant and discoverable subject matter, establishing time periods for eDiscovery and other parameters to guide preservation and eDiscovery issues;

NOW THEREFORE, it is hereby ORDERED:

US 254155509

## I.    GENERAL PROVISIONS

1.    Except as specifically set forth herein, this ESI Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the Southern District of New York.

2.    The production specifications set forth in this ESI Order apply to Documents and ESI that are to be produced in the first instance in this Action.  This ESI Order does not apply to Previously Produced Documents and Materials. No Party is obligated to reformat any such prior production in accordance with the production specifications in this ESI Order.

3.    Plaintiff may request that Visa re-produce specific Previously Produced Documents and Materials with additional metadata consistent with the requirements of this ESI Order to the extent such information exists and is readily available with Visa's e-discovery vendor. Visa shall not be obligated to re-collect any Previously Produced Documents and Materials or any associated information with those Previously Produced Documents and Materials.

4.    If ESI discoverable in this proceeding was previously produced in *Pulse Network LLC v. Visa Inc.*, Case No. 4:14-cv-03391 (S.D. Tex.) ("the *Pulse* case"), or *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720 (E.D.N.Y.) including any cases since remanded following the completion of coordinated proceedings (all "MDL 1720"), the Producing Party may elect to produce that information according to the requirements for document and format and metadata set forth in the applicable ESI orders in those two cases, and shall be under no obligation to conform that prior production to the specifications contained in this ESI Order. Aside from the requirements for document format and metadata set forth in those other ESI orders, however, this ESI Order shall govern

US 254155509

ESI discovery in the instant matter in all other respects. Discovery Material stamped or designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" (or comparable stamps), produced in the *Pulse* case or MDL 1720 bearing such stamp or designation and subsequently made available in this action, shall be treated as Confidential or Highly Confidential, respectively, for the purposes of the Stipulated Protective Order (Doc. No. 42) without re-reviewing the confidentiality designation of the previously produced documents unless such designations are challenged under the Stipulated Protective Order in this case. Discovery Material shall otherwise be stamped and designated in accordance with the Stipulated Protective Order and consistent with applicable law.

5.    This ESI Order does not define the scope of production, nor the relevance of any particular information. No provision of this ESI Protocol waives any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

6.    The Parties may withhold information that is subject to the attorney-client privilege or other privilege legally recognized in this jurisdiction, or the attorney work product doctrine prior to production, provided that, to the extent a Party withholds information otherwise discoverable on the basis that it is privileged or protected from disclosure, that Party must comply with its obligations under Federal Rule of Civil Procedure 26(b)(5)(A) except as set forth herein.

7.    The production specifications set forth in this ESI Order do not apply to databases, data sources, logs, and other structured data except as described in Section II.3 (Evidence Preservation) and VII.2. (Structured Data) below.

8.    This ESI Order may be modified for good cause by a Stipulated Order of all Parties or by the Court. The Parties reserve their rights to seek reasonable modifications of these

US 254155509

procedures as appropriate.

9.      If disputes arise concerning the scope and nature of a production, the Parties must promptly meet and confer to reach agreement prior to seeking leave of the Court to resolve any disputed issues. If the Parties' disagreement persists after meeting and conferring in good faith, the Parties must notify the Court of their unresolved dispute(s) and seek resolution from the Court.

10.     The Parties agree to meet and confer to the extent new plaintiffs representing a United States state or commonwealth are added later to the Action and those states or commonwealths request reasonable modifications to these production specifications.

## II.     PRESERVATION

1.      **Materials to Be Preserved.** Each Party will take reasonable and proportionate steps to preserve discoverable Documents and ESI in compliance with its duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure. The Parties agree to preserve ESI in such a way that it can be produced in a reasonably usable form in accordance with Fed. R. Civ. P. 34(b)(2)(E)(ii).

2.      **Reduction of Costs.** To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that each Party must preserve only non-duplicative potentially relevant ESI in its possession, custody, or control. Subject to and without waiving any protection described above, the Parties agree that:

    A.      The Parties will endeavor to agree upon a date limitation for the preservation of ESI; and

    B.      The Parties will endeavor to agree upon a list of the types of relevant ESI that should be preserved.

US 254155509

3.    **Evidence Preservation**. The Parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken and to be taken to preserve evidence relevant to the issues reasonably evident in this case. The Parties agree that the following categories of ESI need not be preserved, collected, or produced.

A.    Documents or communications sent solely between outside counsel for Defendant (or persons employed by or acting on behalf of such);

B.    Documents or communications solely between Plaintiffs' counsel and in-house counsel for class members and solely between Plaintiffs' counsel (including between counsel representing cardholders and fee payors).

C.    Documents or communications sent solely between counsel for the United States (or persons employed by or acting on behalf of the U.S. Department of Justice including the United States Attorney for the Southern District of New York);

D.    Documents or communications in connection with this litigation sent solely within and among counsel for the attorney general office of any state or commonwealth that joins this Action (or persons employed by or acting on behalf of the such attorney general offices);

E.    Documents or communications in connection with this litigation sent solely between counsel for the United States (or persons employed by or acting on behalf of the U.S. Department of Justice, including the United States Attorney for the Southern District of New York) counsel for any State or Commonwealth Attorney General Office and counsel for Plaintiffs;

F.    Documents or communications sent solely between outside counsel for

US 254155509

Defendant and inside counsel for Defendant in connection with this litigation, the investigation(s) associated with Previously Produced Documents and Materials, the *Pulse* case, and/or MDL 1720;

G.    Documents or communications in connection with this litigation sent solely between counsel for the United States (or persons employed by or acting on behalf of such) and any person employed by any U.S. federal government agency;

H.    Back-up and legacy IT systems and tapes used for disaster recovery;

I.    Information from handsets, mobile devices, personal digital assistants, and tablets that is substantively duplicative of information that resides in a reasonably accessible data source that is subject to production;

J.    Fragmented, slack, or unallocated data accessible only by forensics;

K.    Data stored in random access memory ("RAM"), temporary files, or other ephemeral non-message data that are difficult to preserve without disabling the operating system;

L.    Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates;

M.    Systems no longer in use that cannot be accessed as of March 26, 2021, when the preservation obligation was triggered; and

N.    Voicemail messages that are not contained in a Party's email system.

4.    **No Preclusion.** Nothing in this ESI Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of Documents or ESI are not reasonably accessible.

US 254155509

5.      **Preservation Does Not Affect Discoverability or Claims of Privilege**. By preserving Documents and ESI for the purpose of this Action, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## III.   COLLECTION AND REVIEW

1.      **Meet and Confer.** The Parties agree that in responding to any Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2.      **Excluded from Collection, Review, and Production.** The Parties do not need to collect and review the excluded ESI listed in Section II.3. Any state or commonwealth that joins this Action does not need to produce duplicate materials already produced, or expected to be produced, by the United States.

## IV.   TAR, SEARCH TERMS, OR OTHER METHODS.

1.      **Meet and Confer**. The Parties will meet and confer in good faith regarding the use of technology-assisted review ("TAR") or a similar tool, or search terms and custodians to identify responsive unstructured data and documents. Within 7 calendar days of service of the Responses and Objections to Requests for Production propounded by any Requesting Party, each Producing Party must advise all Parties whether it will utilize TAR or other similar tool, search terms, or other methodology, to fulfill its document production obligations. No party shall rely on TAR to limit its production of responsive information without an agreement between all the Parties in their respective cases or a Court order detailing the TAR methodology to be implemented.  The Parties agree to work together in good faith to resolve any differences that they may have over the Producing Party's use of TAR or a combination of search terms and TAR or a similar tool.

7

2.  **Keyword Search Terms.**

 A. **Iterative Process**: Developing efficient keyword search terms is an iterative process and shall require transparent and cooperative efforts by both the Producing and Requesting Parties as set forth in this Protocol.

 B. **Use of Search Terms**: The Parties may use search terms as a means of selecting the pool of information to be reviewed for potential production. The Parties agree that reasonable efforts must be taken to validate the choice of search terms, such as testing the corpus of documents not captured by the proposed search terms to determine if other terms or alterations should be made.

 C. **Search Term Disclosure**: To the extent agreed upon search terms are used to identify potentially responsive ESI, a Producing Party will, within 7 calendar days of its service of Responses and Objections to the first set of Requests for Production propounded by any Requesting Party notify the Requesting Party of its intent to use search terms and disclose any search software they have decided to use (including version number) and use best efforts to disclose information regarding what stop words have been excluded from the index (if different from the default stop words for the software). If a Producing Party elects to use any search platform other than dtSearch, DISCO, or Everlaw, the Producing Party will provide the Requesting Party with reasonably available search guides and identify any stop words in use.

 D. **Search Term Evaluation**: The Parties shall meet and confer within 14 days of service of Responses and Objections to each Request for Production to

US 254155509

discuss initial custodians, search terms, and other proposed search parameters that will be used to generate hit reports.  After the Parties have agreed on the parameters for initial hit reports, the Producing Party must serve the hit reports, and counter proposals for custodians and search terms within 10 days or as otherwise agreed by the Parties.  Hit reports for the identified search terms must be provided at the search-phrase and search-term level (detailing total hits, total hits plus families, and unique hits for any search terms or search strings) and de-duplicated across documents in other searches and within one document. After service of hit reports, the Parties will meet and confer within 7 days to discuss potential revisions to the search parameters. If the Parties agree to generate revised hit reports, such reports shall be served within 7 days or as otherwise agreed by the Parties. Requests for extensions of time to provide hit reports shall be considered in good faith and consent shall not be unreasonably withheld. A Producing Party must disclose reasonably available search term hit reports (detailing total hits, total hits plus families, and unique hits for any search terms or search strings) for those search terms or strings for which the parties either agreed or reached impasse after meeting and conferring to attempt to narrow the dispute in the absence of a hit count report. The Producing Party may disclose hit count reports at any time voluntarily if it believes such disclosure will advance discussions between the parties.

The Producing Party may identify each search term or query returning overbroad results demonstrating the overbroad results and a

US 254155509

counterproposal correcting the overbroad search or query.  The parties will meet and confer to address concerns relating to overbroad search term results.

Where a producing Party seeks to exclude false positives (aka, "noise hits") by modifying or excluding certain keywords, then it will supply some contextual examples of such false positives to help explain why they must be excluded. Such examples may be provided by a sufficiently detailed written description of the exemplars or the nature of the "false positive" rather than the documents themselves. To the extent it may be necessary in some limited circumstances to share the content of a "false positive," such exemplars will not be produced or otherwise used in the litigation, and no Party (other than the party in possession of the document) may retain a copy in any form (whether in the form of a copy of the document itself, a screenshot, or other). No party is obligated to share privileged or highly confidential content that would be subject to redaction under the ESI Protocol if that document were to be produced.

E.     **Additional Search Terms.**  After the parties' agreement on the initial set of search terms and prior to the close of fact discovery, if any party wishes to add additional search terms, they may do so if good cause is shown. The Producing Party may oppose such request, and if there is impasse, the Court shall resolve any disputes.

3.     **Disputes About Review Methodology.** The Parties must timely meet and confer in a good-faith effort to resolve by agreement any objections they may have over the Producing

10

Party's process for fulfilling its document production obligations. If the Parties are unable to resolve the objections by agreement, Plaintiffs (collectively for any joint discovery request) and Defendant may submit letters to the Court, or request a telephone conference with the Court, or otherwise seek relief from the Court.

4.    **Responsiveness Review Permitted.** Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact responsive to the Requesting Party's request.

5.    **Production of All Documents Captured.** Nothing in this Order may be construed or interpreted as requiring the production of all Documents captured by any search term if any such Documents are reasonably deemed not responsive to the Requesting Party's request or are privileged.  The Producing Party may withhold non-responsive documents from production and shall not be required to produce non-responsive documents subject to clawing non-responsive documents back from production.

6.    **Identification Process.** Each Party will use its best efforts to filter out all common system files, executable files, program files, application executable files, and any other non-user created data that exist in the National Software Reference Library ("NSRL") hash set list produced by the National Institute of Standards and Technology ("NIST"). The above-described filtering is commonly referred to as "deNISTing." If a Producing Party proposes filters other than those found in the NIST hash set list to collect for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the Producing Party must advise the Requesting Party and the Requesting and Producing Parties must meet and confer regarding such additional proposed filters.

11

7.    **Email Threading.** Production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No Document will be intentionally withheld from production solely on the basis that it is included in a produced more-inclusive email.

8.    **De-Duplication.** A Producing Party need produce only a single copy of a particular electronic document and may de-duplicate ESI at the family level by using industry standard MD5 or SHA-1 algorithms (or a reasonably equivalent alternative) to create and compare hash values for exact duplicates. The Party must make a reasonable effort to identify all agreed upon Custodians who were in possession of any de-duplicated Documents and ESI, along with the file paths at which they were stored, through appropriate Load File fields, such as ALLCUSTODIANS and FILEPATH.

9.    **Use of Institutional Knowledge.** Each Party must use its institutional knowledge of how its ESI is stored and accessed in the ordinary course of business to identify responsive Documents. This institutional knowledge includes, but is not limited to, a Party's standard practices regarding the storage of ESI, its file organization structure, its usage of group ownership, group accounts, and shared network locations to manage or organize ESI.

## V.    PRODUCTION OF ESI

The Parties must produce all Documents and ESI in the following format:

1.    **ESI.** ESI and paper Documents that are produced as scanned images should be produced in Standard Group IV Black and White single page TIFF images at a minimum of 300 DPI, 1 bit, with the exception of certain Documents identified in Section IV.2, below, which may be produced in native format. Produced TIFF images shall show all text and images that are visible in black and white and otherwise the form in which the electronic document was last

12

saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format and visible in the form in which the electronic document was last saved, shall also be imaged so that such content is viewable on the image file. If after reviewing any black and white Document, a Receiving Party believes that color is needed for additional context to a document, the Receiving Party may make reasonably specific requests for color images, and the Producing Party will respond to the extent feasible. Nothing in this Stipulation shall preclude a Producing Party from objecting to such requests as unreasonable in number, timing or scope. The Parties must provide image load files in Concordance (*.OPT) format to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata (including the fields described in Appendix A) should be provided in a Concordance *.DAT format, or other standard, compatible file format and extension as the Receiving Party specifies. For Documents from which text cannot be extracted, such as non-native or non-searchable native files, the text will be generated using Optical Character Recognition ("OCR") and provided as multi-page text (.txt) files or other standard, compatible file format as specified by the Receiving Party.

2.     **Native Format.** Parties will produce the following agreed-upon ESI in native format: spreadsheets (e.g., Excel, Pages, OpenOffice, etc.), presentations (e.g. PowerPoint, Keynote, etc.), and other files that cannot be converted to TIFF (such as audio and video files). Native files shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments. Native files should contain the Bates number in the file title. For emails, native files may be produced in .MHT format, and should also be accompanied by TIFF images as outlined in Section IV.1.

13

Presentation files should be produced as both natives and as Bates-numbered TIFF images. Native spreadsheet, audio, video, or other files should be accompanied by a TIFF image placeholder that contains "File Produced in Native," the beginning Bates number and confidentiality designation. Wherever feasible, the Producing Party must include accompanying metadata in the load file. Documents with privileged information will not be produced in native format, unless the Party is able to redact privileged information in native format. Additionally, if after reviewing production of ESI in a non-native format, a Receiving Party believes that it is necessary to review a certain Document or Documents in native format, the Parties must engage in discussion regarding production of discrete Documents in native form, which production will not be unreasonably withheld. With respect to emails (e.g., Outlook, Mail, etc.), the Producing Party must produce color versions upon reasonable request of the Receiving Party.

      3.    **Parent-Child Relationships.** Except as to the materials listed in Section II.3 that need not be preserved or collected, Parent-child relationships (the association between an attachment and its parent Document) must be preserved whenever reasonable in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child. Entire Document families must be produced, even if only the parent email or an attachment is responsive, excepting (1) junk files and non-user-created content routinely excluded during processing (provided such routine processing- generated exclusions that are agreed to among the Parties), (2) documents that are withheld on the basis of privilege (which will be slip-sheeted when other family members are not-privileged) and in compliance with the Parties' stipulation or the Court's order on such assertions of privilege, and (3) non-responsive agreements subject to third-party notice requirements (which will be slip-sheeted or provided on a log with Bates number and description, such as "non-responsive confidential

US 254155509

agreement between Visa and XXX.")

4.      **Metadata Fields.** All required metadata fields are identified in the attached Appendix A. All Documents should be produced with the required metadata fields—to the extent they are populated—with the exception of Documents produced from the files of outside counsel for Defendant, counsel for the United States, or counsel for the attorney general office of any state or commonwealth that joins this Action (or persons employed by or acting on behalf of such entities). For those Documents, the following metadata fields do not need to be produced: FOLDERLABEL and FILEPATH.

5.      **Document Unitization.** If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments must be maintained as it existed in the original when creating the image file. For Documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of Documents in a Document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) must be maintained through the scanning or conversion process.

6.      **Redacted Documents.** Documents that contain redactions will be produced in single-page TIFF format with corresponding OCR text and a Concordance-delimited DAT file containing the metadata fields outlined in Appendix A to the extent that such metadata fields are not part of the redaction, with the exception that if a Party utilizes technology that permits the redaction of files that are not typically produced in image format (such as spreadsheets), those files may be produced in native format with redactions. Documents that are produced with redactions will be noted as "Redacted" in the DAT file and on the face of the redacted content.

US 254155509

Documents with any metadata field redacted will be produced with a Redaction Status "Metadata Redacted" indicating the metadata for that document has been redacted in the DAT file.

7.      **Production Media.** A Producing Party must produce responsive Documents in an encrypted electronic form via Secure File Transfer or on a DVD, USB thumb drive, external hard drive, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon ("Production Media"). The following information must be provided on the physical Production Media: (1) a reference to this case number, (2) the Producing Party's name, and (3) the production date. The Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, where practicable, and shall also be provided in an accompanying letter.

8.      **Embedded Objects.** Non-image files embedded within Documents, such as spreadsheets within a PowerPoint, must be extracted as separate Documents and treated like attachments to the Document in which they were embedded. If technically feasible, graphic objects embedded within Documents or emails, such as logos, signature blocks, and backgrounds should not be extracted as separate Documents. To the extent that embedded images present recognition problems during processing, the Parties will meet and confer to discuss any proportional and appropriate countervailing measures.

9.      **Compressed Files.** Container file types (e.g., *.CAB, *.GZ, *.TAR, *.Z, *.ZIP) must be decompressed in a manner that ensures any and all nested containers are also decompressed into the lowest uncompressed element, resulting in individual files. The container file(s) itself must not be produced.

10.     **Linked Files and Collaborative Work Environments.** A Producing Party must conduct an automated search of Documents to be produced to identify in those Documents links

16

to additional Documents in any Collaborative Work Environment maintained by the Party (such as OneDrive, SharePoint). For any such Documents ("Linked Parents"), to the extent reasonably feasible and capable of being done automatically, the producing party shall use its best efforts using available technical solutions to produce the document corresponding with each identified link ("Linked Attachments"), listing the metadata described in the Other ESI column of Appendix A. For each Linked Parent, to the extent reasonably feasible and capable of being done automatically, the Producing Party shall use its best efforts to populate the LINKEDATTACHIDS field with the document control numbers of every record the Linked Parent references; for each Linked Attachment, to the extent reasonably feasible and capable of being done automatically, the Producing Party shall use its best efforts to populate the LINKEDPARENTIDS field with the document control numbers of every record that links to the Linked Attachment. In the event the Linked Parent or Linked Attachment were part of a prior production, the Producing Party will provide an overlay file populating these two fields as needed. For Collaborative Work Environments offering version control, the Producing Party will use automated collection methods to produce the version of the Linked Attachment with a DATESAVED value. For documents where Linked Attachments and metadata were not produced, a Receiving party may request that the Producing party search for and produce specific Linked Attachments with appropriate metadata, which the Receiving party will do to the extent the Linked Attachments still exist and can be retrieved from the identified link. The Producing Party will produce such specific Linked Attachments within 30 calendar days of receipt of the request from the Receiving Party. Requests for extensions of time shall be considered in good faith and consent shall not be unreasonably withheld

11.    **Text and Chat Messages.** The Parties must use reasonable, good faith, and

US 254155509

proportional efforts to preserve relevant text and chat messages. When producing text and chat

messages (e.g., messages sent via SMS, Teams, Slack, WhatsApp, Signal, Apple Messages, and

other short messaging platforms), those messages must be unitized on the conversation/channel

level into 24-hour calendar-day chunks, or conversation days, with each conversation day

including all messages in that conversation or channel on a given calendar day. Each

conversation day must be reviewed and produced as a single record, with redactions for privilege

as provided in Section V below. The records must be produced with the metadata specified in the

"IM/Text/Chat" column in Appendix A, including TXT-THREAD-GROUP (the DOCID of the

first conversation day in a given discussion/channel) and TXT-PARTICIPANTS (a list of

participant names). The Producing Party will use best available automated solutions to assign full

names to participants who are identified only by phone number, email address, handle, or other

identifier.

      12.    **Ephemeral Messages.** The Parties are obligated to use reasonable, good faith,

and proportional efforts to preserve ephemeral and encrypted messages (e.g., messages sent via

Snapchat, Signal, or WhatsApp).

      13.    **Voice messages.** The Parties must use reasonable, good faith, and proportional

efforts to preserve relevant voice messages that are contained in a Party's email system. These

records should be produced in WAV or MP3 format and adhere to the specifications of Section

IV.2 regarding Native Format, along with the metadata fields described in the Other ESI column

of Appendix A. In the event a Party is unable to collect and produce the voice messages as native

audio files, the Party shall produce a manual transcription of each relevant voice message.

      14.    **Passwords and Encryption.** To the extent practicable, the Parties must provide

all Documents and ESI such that the Receiving Party is not blocked by any passwords or

US 254155509

encryptions on those Documents and ESI.  If the Receiving Party determines that a document

was produced as password protected, Producing Party must take reasonable efforts to locate such

password.

## VI.    PRIVILEGE LOGS

1.    **Privilege Log Production.** Any Producing Party will produce a privilege log on a

rolling basis to be completed within 60 calendar days after substantially completing production

in response to a set of requests for production.  Once the scope of documents to be reviewed for

potential production in response to a set of requests for production has been finalized, the parties

shall meet and confer to identify two interval deadlines for the production of rolling logs before a

third and final privilege log.  For any Document withheld or redacted, the Producing Party will

produce privilege logs in MS Excel (.xlsx) format that are searchable and sortable. For each

document (including each document in a document family consisting of multiple documents) on

which a privilege is claimed, the privilege log must provide sufficient information to enable the

Parties to assess the applicability of the privilege claimed.  A Party or Non-Party seeking to

withhold or redact a document under the attorney-client privilege, deliberative process privilege,

work product protection, or any other privilege or protection must, at a minimum, provide the

essential elements necessary to sustain a claim of privilege, including, for fully privileged

documents only, a description of the document's subject matter with sufficient detail to enable

the Parties to assess the privilege claim and the facts relied upon to support the claim. The

Receiving Party may make requests on a document-by-document basis for a subject matter

description of a document redacted for privilege, but not fully withheld. The Producing Party

will provide such subject matter descriptions within 30 calendar days of receipt of such request.

2.    For documents previously produced in MDL 1720, privilege logs shall be

US 254155509

accepted "as is" in accordance with agreements reached in MDL 1720 with respect to the format of the log and the information that must be on the log. Appendix B to this ESI Order identifies the types of information that will be included in such logs. Such privilege logs from MDL 1720 must be updated to reflect the results of any subsequent litigation or negotiations over documents improperly withheld or redacted as privileged. In all other respects aside from the format of the log and the information that must be on the log, this ESI Order will govern the preparation of privilege logs in the instant matter. If the parties in MDL 1720 agreed to waive the log requirement for redacted documents, the Producing Party is required in this litigation only to provide an index identifying reproduced documents that were redacted for privilege and include only those fields set forth below that can be fully or partially populated through an automated process. The Parties shall not be required to re-review documents previously withheld as privileged from productions in MDL 1720, but such privilege claims may be challenged in this litigation regardless of whether they were challenged in MDL 1720. To the extent only a portion of a prior production from MDL 1720 is produced in this litigation (e.g., search terms are used to identify documents responsive in this litigation), the same search procedure used to identify responsive documents from the prior production shall be applied to the universe of documents withheld as privileged and existing log entries for those documents shall be re-produced "as is" in this litigation. Privilege logs for the prior productions shall be produced 45 calendar days after (i) the completion of the re-production of documents from MDL 1720, or (ii) the date this ESI Stipulation is entered, whichever is later.

3. **Placeholder Slipsheets.** If any member of a produced Document family is withheld on grounds of privilege or work-product, the Producing Party will produce a Bates stamped placeholder slipsheet that identifies the Document as withheld as privileged and will

US 254155509

identify the Document in the Privilege Log by the Bates number on the placeholder slipsheet. If

the withheld Document is part of a responsive Document family, the Parties will insert a

placeholder to indicate that the Document has been withheld from that family and will produce

all non-privileged Documents in the family.

4.    **Privilege Log Contents.** Privilege logs must contain the following information,

to the extent reasonably available:

A.    BegBates and EndBates and (in the case of fully redacted documents,

DOCID);

B.    Parent BegBates and Family Range

C.    Where applicable, LinkedAttachID, or LinkedParentID;

D.    The Custodian or Custodial or Non-Custodial Data Source from which the

Document was collected;

E.    The name of each person who sent, authored, or otherwise prepared the

Document;

F.    The name of each person designated as an addressee or copyee, including CC

and BCC (copyees and blind copyees shall appear in separate fields);

G.    The date created;

H.    The date and time sent;

I.    The number of pages;

J.    The title of the Document or email subject line or Document file name,

according to Document metadata;

K.    For fully privileged or substantially redacted documents, a description,

pursuant to Fed. R. Civ. P. 26(b)(5)(A)(ii), of the purportedly privileged

US 254155509

contents of the withheld Document that is sufficient to enable other Parties to understand the general subject matter of the Document and assess the basis of the claim of privilege or other protection from disclosure;

L.     The name of the attorney(s) and legal organization who provided the legal advice at issue, from whom the legal advice at issue is requested, who directed the facilitation of the legal advice at issue, and/or who requested or prepared the Document;  and

M.     The privilege or protection asserted (i.e., attorney-client privilege, work product doctrine).

5.     **Requests for Additional Information.** To the extent a Requesting Party believes it needs, in good-faith, additional information to assess a Responding Party's assertion of privilege, it may request additional information from the Responding Party. If such a request is made, the Parties shall thereafter meet and confer as necessary, and if they are unable to reach an agreement, the Requesting Party may seek relief from the Court.

6.     **Deficient Privilege Logs.** Privilege logs that provide only boilerplate assertions, lack essential information specified above, or indicate that the withheld material concerns business matters rather than legal advice are deficient.

7.     **Accompanying Legends.** Each privilege log must include a separate legend containing an alphabetical list (by last name) of each person or person's email included on the privilege log, along with the person's title, and the person's company affiliation. The legend must include all variations of each person's name or email address referenced in the privilege log. Attorneys who acted in a legal capacity must be marked with the designation ESQ after their last name (include a space before and after "ESQ"). Each privilege log must include a separate

US 254155509

legend containing, for each email listserv or group, the names of all members of that email

listserv or group that can be identified using commercially reasonable efforts. The legend(s) must

include columns for last name, first name, and ESQ. For each entry of the privilege log, all

attorneys acting in a legal capacity with respect to that particular document or communication

will be marked with the designation ESQ after their names. Upon request of the Receiving Party,

the Producing Party will, within 30 calendar days of such request, identify the "commercially

reasonable efforts" that it undertook to identify the listserv or group members. By agreeing to

provide this information, the Producing Party is not waiving any applicable work product or

privilege protections.

        8.    **Categorical Privilege Designations.** If a Producing Party contends that all

Documents of a particular type or category are privileged, or requiring the creation of an

individualized privilege log is not reasonable or proportionate for documents of a particular type

or category, they will meet and confer with the Receiving Party on identifying such Documents

on a privilege log by category rather than individually. The Receiving Party will consider any

such request in good faith. The Producing Party's categorical privilege log entry must still

provide the Requesting Party, and the Court if necessary, with information sufficient to evaluate

the Producing Party's privilege claims. The Parties need not include in any privilege log the ESI

listed in Section II.3.

        9.    **Single Entries.** A single Document containing multiple email messages in the

body of the document (i.e., in an email chain) may be logged as a single entry.

        10.    **Assert All Bases.** If the Producing Party contends that more than one basis for

withholding applies to a single document, all bases must be asserted in the privilege log.

        11.    **Redactions.** A Party or Nonparty asserting a privilege claim must redact only

those portions of the document that are protected by the privilege. If a document contains both privileged and non-privileged communications, the nonprivileged communications must be produced. In no event, other than for documents exempt from the logging requirements set forth herein, will a Party withhold an entire email on the basis of privilege if either (1) the content of the email also contains non-privileged information or (2) the email is a parent email with a substantive (i.e., not an image or graphic file), non-privileged attachment; a Party claiming privilege over such an email shall produce the email with any privileged communication redacted and with non-privileged communication unredacted, which will include the sender, recipient, date, and time of the email.  In the circumstance of a privileged parent email with a substantive, non-privileged attachment, the last-in-time email will be produced with non-privileged header information unredacted and privileged content redacted and any lesser-included privileged emails may be redacted in full such that both header and content information is redacted.  The redactions to partially privileged documents will be narrowly applied so the Receiving Party has the ability to discern to the maximum extent practicable the privilege assertion within the document and to view all non-privileged communications and material. Redactions based on relevance, responsiveness, or confidentiality are disallowed. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

12. **Privilege Logs from Previously Produced Documents and Materials.**

Defendant need not, pursuant to this ESI Order, update privilege logs provided to  the Government as part of its Previously Produced Documents and Materials. However, Plaintiffs reserve the right to challenge the adequacy of the privilege logs associated with Previously Produced Documents and Materials. Such challenges will be governed by the requirements for

24

the privilege log set forth in the corresponding Civil Investigative Demand, as modified by any subsequent agreements between the Government and Defendant. To the extent feasible, the Parties will include an additional column indicating that a log line has been modified in any subsequently produced privilege logs that amend, correct or modify prior logs so that the Receiving Party can easily discern the changes from the prior log.

13. **Privilege Disputes.** The Parties will comply with L. Civ. R. 37.2 if there is a dispute over a Party's claim of privilege or privilege log requiring the Court's intervention. The Parties will confer and make a good faith effort to resolve any such dispute before seeking Court intervention. Documents determined by the Court not to be privileged will be marked with "-d" (for deprivileged) after the Bates number on each page of the documents. Upon production of deprivileged documents, the Producing Party will produce an index mapping the Bates number of each deprivileged document to the control number used to identify that document on the privilege log.

14. **Re-Producing Documents.** Except as provided in Paragraph V.10, if a Document is produced with redactions, the redactions must not obscure any header information (e.g., from, to, subject, sent date) of any emails or other communications reflected in the Document, except to the extent that information is privileged. With the exception of documents produced in MDL 1720 as discussed in paragraph V.2 above, a Party who, pursuant to a request under Fed. R. Civ. P. 34 or a nonparty, pursuant to a request under Fed. R. Civ. P. 45, re-produces Documents from other matters, is required to re-review and re-log any Document that was withheld from the other matters on grounds of privilege in the format that is specified in Section V of this document. The Parties will, however, consider reasonable requests by a Producing Party to re-use privilege logs prepared in other matters beyond MDL 1720 on a log-by-log basis.

US 254155509

15.    Paragraphs 52 through 54 of the Protective Order (ECF #106) governing Inadvertently Disclosed Information, dated February 19, 2025, constitutes an order for purposes of Federal Rule of Evidence 502(d).

## VII.   DATABASES, DATA SOURCES, LOGS, AND STRUCTURED DATA

1.    **Meet and Confer.** The Parties must meet and confer regarding the production format and scope of data contained in databases, data sources, and logs to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party.

2.    **Structured Data.** To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of reasonable queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the Requesting Party. Ahead of these meet and confers, the Producing Party will also provide descriptions and/or definitions for the fields contained in their structured databases, to the extent such descriptions or definitions already exist in a document that can be easily produced.  The Requesting Party and Producing Party, as appropriate, shall, in good faith, make disclosures necessary to ensure the meet and confer discussions regarding content and format of the production are meaningful.  The Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

To avoid doubt, information will be considered reasonably usable when produced in CSV format or other commonly used electronic formats, including other character-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a Party is constrained

US 254155509

from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the Parties must meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting Party to view or access the ESI.

## VIII.   THIRD-PARTY DOCUMENTS

1.      **Third Party Documents.** A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and request that non-parties produce Documents in accordance with the specifications set forth herein.

2.      Within five days of a decision by the Court on Visa's motions to dismiss (to the extent the decision denies Visa's motions and thereby triggers the beginning of the second phase of discovery, *see* Paragraph 9 of the Case Management Order, ECF No. 98), Visa will provide notice as set forth in Paragraph 32 of the Protective Order in the government's related case United States v. Visa, 1:24-cv-07124-JGK (S.D.N.Y.) to producing non-parties that their documents will be produced in this action. As soon as such notice and objection period expires or, as appropriate, as soon as any third-party objections are resolved, Visa will provide to Plaintiffs copies of any non-party productions received in the related government litigation. One notice to each third-party that documents that were either previously produced or that may be produced in the future in the government's related case shall be good and sufficient notice to that third-party as to all potential productions by that third-party.

3.      Any objections by third-parties that are not resolved after meeting and conferring, must be raised with the Court by the third-party via a motion for a protective order by no later than one week following the expiration of the objection period unless otherwise agreed by the Parties and objecting third-party.

US 254155509

4.      Thereafter, the Issuing Party of any non-party subpoena shall provide a copy of any non-party productions (in the format in which they were received) to counsel for the other Parties within seven (7) days of receiving the production (or as soon as practicable if seven days is not practicable).

## IX.    PAPER DOCUMENTS

1.      **Scan and OCR Paper Documents.** A Producing Party must scan and OCR paper Documents. The following information must be produced in the load file accompanying production of paper Documents produced by scan and OCR to the extent reasonably practicable: (a) DOCID (b) ENDDOC, (c) CUSTODIAN, (d) EPROPERTIES, (f) BEGATTACH, and (g) ENDATTACH. Paper Documents should be logically unitized for production to the extent reasonably practicable as outlined in Section IV.5. Generally, when scanning paper Documents for production, distinct Documents should not be merged into a single record and single Documents should not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly. Where a Document or a Document group—such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the label must be scanned and produced as the first page of the Document or grouping to the extent reasonably practicable.

## X.    DEFINED TERMS

For purposes of this ESI Order, the Definitions below shall apply.

1.      "Action" means the action filed in this Court under the caption In re: Visa Debit Card Antitrust Litigation, 24-7435 (JGK), as well as any additional actions subsequently consolidated with this Action, including any consolidated discovery, pretrial, trial, post-trial, or appellate proceedings. For the avoidance of doubt, "Action" excludes pre-Complaint

US 254155509

investigations by the government in United States v. Visa Inc., 1:24-cv-07214-JGK (S.D.N.Y.).

2.      "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a), including but not limited to emails, calendar items, Instant Messages, Text Messages, Chat Messages, and Other ESI.

3.      "DeNIST" means the act of filtering and removing system files, executable files, application files, program files, and other non-user created data from ESI that has been collected.

4.      "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI, hard copy discovery, and tangible things.

5.      "Format" means the internal structure of a file, which defines the way it is stored and used.

6.      "Native File(s)" or "Native Format" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application (including, for example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.msg, *.pst, and *.pdf files).

7.      "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual Custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

8.      "Previously Produced Documents and Materials" means documents and materials provided to the U.S. Department of Justice pursuant to Civil Investigative Demand Nos. 30608 (including documents originally produced to the Federal Trade Commission in FTC File No. 2010011), 30714, 31331, 31551, 31686, 31687, 31688, 31689, 31764, 31765, and 31766; and pursuant to DOJ File No. 60-522190-0006.

9.      "Producing Party" means a Party that produces documents.

10.     "Receiving Party" means a Party to whom documents are produced.

US 254155509

11.     "Responsive Document" means any document that the Producing Party has agreed to produce or log, or that the Producing Party has been ordered to produce by the Court.

12.     "Bates Number" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing that must (1) be unique across the entire document production; (2) maintain a constant prefix and length (no more than 16-digits) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents. "Metadata" means non-privileged information (i) embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

13.     "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

14.     "Linked Parent" means a document that includes a link to a document that is stored in a Collaborative Work Environment or other location. The LINKEDPARENTIDS field in Appendix A will typically only be populated for documents within a Collaborative Work Environment that are linked to email or chat messages and will be populated with the unique identifiers of those email or chat messages.

15.     "Linked Attachment" means a document in a Collaborative Work Environment or

US 254155509

other location that is mentioned in a Linked Parent but is not embedded in the Linked Parent. The LINKEDATTACHMENTIDS in Appendix A field will typically only be populated for email or chat messages that link to a document within a Collaborative Work Environment and will be populated with the unique identifiers of those documents within the Collaborative Work Environment.

16. "Load/Utilization File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Utilization File also contains data relevant to the individual Documents, including extracted and user-created Metadata, coded-data, as well as OCR or Extracted Text.

17. "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

18. "Extracted Text" means the text extracted from a Native File and includes all header, footer, document body information, and tracked changes content (comments, markup, etc.).

## XI.    MISCELLANEOUS

1. **Costs of Production.** Unless this Court order otherwise for good cause shown, each Party and nonparty will bear the costs of collecting, processing, reviewing, and producing its own documents.

US 254155509

Dated: June 3, 2025

Respectfully submitted,

/s/ Christopher L. Lebsock
Christopher L. Lebsock (pro hac vice)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908 Fax: (415) 633-4980
clebsock@hausfeld.com

Brent W. Johnson (Attorney Bar Code 4955745)
Benjamin D. Brown (pro hac vice)
Daniel McCuaig (pro hac vice)
Zachary Krowitz (pro hac vice)
Alex Bodaken (pro hac vice forthcoming)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Eighth Fl.
Washington, DC 20005
(202) 408-4600
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dmccuaig@cohenmilstein.com
zkrowitz@cohenmilstein.com
abodaken@cohenmilstein.com

Scott Martin
Daniel P. Weick
**HAUSFELD LLP**
33 Whitehall Street 14th Floor
New York, NY 10004
Tel: (646) 357-1100
smartin@hausfeld.com
dweick@hausfeld.com

Manuel J. Dominguez (pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL 33410
(561) 515-2604
jdominguez@cohenmilstein.com

Brian A. Ratner (pro hac vice)
Jane Shin (pro hac vice)
Camila Ringeling (pro hac vice)
**HAUSFELD LLP**
888 16th Street, NW Suite 300
Tel: (202) 540-7200
Fax: (202) 540-7201
bratner@hausfeld.com
jshin@hausfeld.com
cringeling@hausfeld.com

**INTERIM CO-LEAD COUNSEL FOR PLAINTIFF FEE PAYORS**

US 254155509

Jason S. Hartley (*Pro Hac Vice*)
Jason M. Lindner (*Pro Hac Vice*)
**HARTLEY LLP**
101 W. Broadway, Suite 820
San Diego, California 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com
lindner@hartleyllp.com

Joseph R. Saveri (*Pro Hac Vice*)
Cadio Zirpoli (*Pro Hac Vice*)
David H. Seidel (*Pro Hac Vice*)
T. Brent Jordan (*Pro Hac Vice*)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Fransico, California 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
dseidel@saverilawfirm.com
tbjordan@saverilawfirm.com

Bruce D. Greenberg (*pro hac vice*)
**LITE DEPALMA GREENBERG &
AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com

/s/ Richard M. Paul
Richard M. Paul III (*Pro Hac Vice*)
Mary Jane Fait (SBN #1669019)
Laura C. Fellows (*Pro Hac Vice*)
David W. Bodenheimer (*Pro Hac Vice*)
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
MaryJane@PaulLLP.com
Laura@PaulLLP.com
David@PaulLLP.com

Christopher J. Hydal (SBN 5670492)
**JOSEPH SAVERI LAW FIRM, LLP**
40 Worth Street, Suite 602
New York, New York 10013
Telephone: (646) 527-7310
chydal@saverilawfirm.com

Brian J. Dunne (SBN 4605580)
Edward M. Grauman (SBN 4196390)
**BATHAEE DUNNE LLP**
901 South Mopac Expressway
Barton Oaks Plaza I, Suite 300
Austin, Texas, 78746
Telephone: (213) 462-2772
bdunne@bathaeedunne.com
egrauman@bathaeedunne.com

Yavar Bathaee (SBN 4703443)
Andrew C. Wolinsky (SBN 4892196)
**BATHAEE DUNNE LLP**
445 Park Avenue, 9th Floor
New York, New York 10022
Telephone: (332) 322-8835
yavar@bathaeedunne.com
awolinsky@bathaeedunne.com

**INTERIM CO-LEAD COUNSEL FOR PLAINTIFF CARDHOLDERS**

US 254155509

Beth Wilkinson
Brian Stekloff
Kieran Gostin
Roxana Guidero
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bstekloff@wilkinsonstekloff.com
bwilkinson@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
rguidero@wilkinsonstekloff.com

*/s/ Anne P. Davis*
Anne P. Davis
Matthew Eisenstein
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel. (202) 942-6197
Fax. (202) 942-5999
Anne.Davis@arnoldporter.com
Matthew.eisenstein@arnoldporter.com

Margaret A. Rogers
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Tel. (212) 836-7830
Fax. (212) 836-6711
Margaret.Rogers@arnoldporter.com

**COUNSEL FOR DEFENDANT VISA INC.**

US 254155509

**IT IS SO ORDERED.**

Dated: _6/4_ , 20_25_

35