**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

**IN RE VISA DEBIT CARD ANTITRUST**
**LITIGATION**                                      **24-cv-7435 (JGK)**

                                                     <u>**MEMORANDUM OPINION**</u>
                                                     <u>**AND ORDER**</u>

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

**JOHN G. KOELTL, District Judge:**

There are two private complaints in this case and a
separate motion to dismiss is now pending against each of those
complaints. Two putative plaintiff classes, one comprised of
debit card holders ("the cardholder plaintiffs") and the other
comprised of merchants ("the merchant plaintiffs"), filed their
respective complaints against Visa, Inc. ("Visa"), alleging that
Visa monopolized and attempted to monopolize the United States
market for debit network services, in violation of Sherman Act
§ 2, 15 U.S.C. § 2. The plaintiffs allege that Visa used
contracts with banks and merchants that restrained trade
unreasonably, as well as unlawful agreements not to compete with
competitors and potential competitors. Both groups of plaintiffs
also allege that Visa entered into both types of contracts in
violation of Sherman Act § 1, 15 U.S.C. § 1. The plaintiffs also
assert similar claims under state antitrust and consumer
protection laws.

The two complaints in this case echo allegations in a
complaint brought by the Government in a separate action against

Visa, <u>United States v. Visa, Inc.</u>, No. 24-cv-7214 (S.D.N.Y.)
(the "Government action"). The crux of all three complaints is
that Visa used <u>de facto</u> exclusive dealing contracts to prevent
Visa's rivals in providing debit services from ever having the
opportunity to compete effectively and that Visa fashioned
customized incentive contracts to stymie market entry by
financial technology ("fintech") firms.

On June 3, 2025, the Court denied Visa's motion to dismiss
the Government's complaint. <u>See</u> <u>United States v. Visa, Inc.</u>, 788
F. Supp. 3d 585 (S.D.N.Y. 2025). Visa now moves to dismiss both
private complaints in this action. For the reasons explained
below, both of Visa's motions are **granted in part** and **denied in
part**.

## I. Factual Allegations

Unless otherwise noted, the following facts are taken from
the plaintiffs' complaints, ECF Nos. 38 ("Merchant Compl.") and
53 ("Cardholder Compl.").[1]

Because both complaints in this action largely repeat the
allegations in the Government's complaint, the Court assumes
familiarity with the discussion of the relevant factual
background contained in the Memorandum Opinion and Order denying

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits
all internal alterations, citations, footnotes, and quotation
marks in quoted text.

Visa's motion to dismiss the Government action, <u>Visa, Inc.</u>, 788 F. Supp. 3d at 893-97. The Court also assumes familiarity with the description of the debit industry discussed at length in that Memorandum Opinion and Order. <u>Id.</u>

Visa operates the Visa debit network, the largest debit network in the United States. Cardholder Compl. ¶ 17; Merchant Compl. ¶ 36. The cardholder plaintiffs are consumers from Missouri and California who purchased goods or services using debit cards that designate Visa as the front-of-card network. Cardholder Compl. ¶¶ 13-16. The merchant plaintiffs subject to Visa's motion are companies located in California, Florida, and New Jersey, and each accepted debit payments routed on Visa's network.[2] Merchant Compl. ¶¶ 27-33. Neither the cardholder plaintiffs nor the merchant plaintiffs interact directly with Visa. <u>See</u> Cardholder Compl. ¶¶ 45-46 & figs. 2-3, 54; Merchant Compl. ¶¶ 3, 46-50 & fig. 2, 60. Consumers like the cardholder plaintiffs present their debit credentials to merchants, who in

---

[2] The Merchant Complaint also contains allegations on behalf of Yabla, Inc. ("Yabla"), a New Jersey company, and R&N Productions, LLC ("R&N"), a Pennsylvania company. Merchant Compl. ¶¶ 30, 33. On August 20, 2025, the MDL 1720 court denied Visa's motion to enforce the MDL 1720 settlement agreement as to Yabla and R&N. <u>See</u> <u>In re Payment Card Interchange Fee & Merch. Disc. Litig.</u>, No. 05-MD-1720, ECF No. 9647 (E.D.N.Y. Aug. 20, 2025). Visa's motion to dismiss is not directed at the allegations by Yabla and R&N. <u>See</u> ECF No. 167. The parties agree that the MDL 1720 court's order has no impact on Visa's motion to dismiss the Merchant Complaint. <u>See</u> <u>id.</u>

turn interact directly only with their acquiring banks ("acquirers"); acquirers then route transactions over Visa's network to the consumer's bank (the "issuer"). See Cardholder Compl. ¶¶ 45-46; Merchant Compl. ¶¶ 46-50. Funds are eventually withdrawn from the issuer and transmitted through Visa's network from the consumer's bank to the merchant's bank. See Cardholder Compl. ¶¶ 45-46; Merchant Compl. ¶¶ 46-49.

Both the cardholder plaintiffs and the merchant plaintiffs challenge the same conduct related to debit networks and allege the same product markets as did the Government in its action. Compare Cardholder Compl. ¶¶ 159-70, and Merchant Compl. ¶¶ 196-208, with Gov't Compl. ¶¶ 151-63. The merchant plaintiffs claim they are harmed because, as a result of Visa's alleged conduct, they are charged supracompetitive fees for debit transactions. See Merchant Compl. ¶¶ 221-26. The cardholder plaintiffs argue that they are in turn harmed because they pay these fees when merchants pass them along through increased prices for goods and services. See, e.g., Cardholder Compl. ¶ 200.

The cardholder plaintiffs bring a claim for injunctive relief under §§ 1 and 2 of the Sherman Act and claims for damages under various state antitrust and consumer protection laws.[3] See Cardholder Compl. ¶¶ 198-242. The merchant plaintiffs

---

[3] The Cardholder Complaint also brought claims for damages under the Sherman Act, but the cardholder plaintiffs have consented to

bring claims for damages and injunctive relief under §§ 1 and 2 of the Sherman Act; they also bring claims for damages under state antitrust and consumer protection laws. See Merchant Compl. ¶¶ 255-828.

Visa has moved to dismiss both complaints. See Notice of Mot. to Dismiss Cardholder Complaint, ECF No. 112; Notice of Mot. to Dismiss Merchant Complaint, ECF No. 114.

## II. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

---

the dismissal without prejudice of those claims. See Cardholder Plaintiffs' Opposition ("Cardholder Opp.") 2 n.1, ECF No. 130. Count II of the Cardholder Complaint is accordingly **dismissed without prejudice**.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III. Discussion

#### A. Cardholder Claims

The cardholder plaintiffs bring claims for injunctive relief under the Sherman Act, as well as claims for damages under the antitrust and consumer protection statutes of various states.

Visa argues that the cardholder plaintiffs' federal and state antitrust claims must be dismissed for lack of antitrust standing. Mem. of Law in Supp. of Mot. to Dismiss Cardholder Complaint ("Visa Cardholder Br.") 5-10, ECF No. 113. Visa also

6

contends that the cardholder plaintiffs' complaint fails to
state a claim under the Sherman Act and state antitrust and
consumer protection laws. See id. at 11-21.

### 1. Antitrust Standing

### a. Federal Injunctive Relief Claims

Section 26 of the Clayton Act allows "[a]ny person, firm,
corporation, or association" to sue for injunctive relief
"against threatened loss or damage by a violation of the
antitrust laws." 15 U.S.C. § 26. At the pleading stage of an
antitrust action, plaintiffs must establish antitrust standing.
Gelboim v. Bank of Am. Corp., 823 F.3d 759, 770 (2d Cir. 2016).
To establish antitrust standing under federal law, plaintiffs
must allege that they suffered antitrust injury, or an "injury
of the type the antitrust laws were intended to prevent and that
flows from that which makes [the] defendant's acts unlawful."
Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC, 22
F.4th 103, 115 (2d Cir. 2021). To allege antitrust injury, the
plaintiffs must show that they participated in the relevant
market where the allegedly anticompetitive behavior occurred,
see In re Aluminum Warehousing Antitrust Litig. ("Aluminum"),
833 F.3d 151, 158 (2d Cir. 2016), or that the market in which
the plaintiff participates is "inextricably intertwined" with
the relevant market, see Crimpers Promotions, Inc. v. Home Box

Off., 724 F.2d 290, 294 (2d Cir. 1983); see also Blue Shield of Va. v. McCready, 457 U.S. 465, 484 (1982).

In addition to pleading antitrust injury, plaintiffs seeking to show antitrust standing must show that they are "proper plaintiff[s] in light of four 'efficient enforcer' factors," Schwab, 22 F.4th at 115, articulated in Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519 (1983) ("AGC"). Under AGC, a plaintiff asserting an antitrust claim must show that it is an "efficient enforcer" of the antitrust laws, Schwab, 22 F.4th at 115, considering:

> (1) whether the violation was a direct or remote cause of the injury; (2) whether there is an identifiable class of other persons whose self-interest would normally lead them to sue for the violation; (3) whether the injury was speculative; and (4) whether there is a risk that other plaintiffs would be entitled to recover duplicative damages or that damages would be difficult to apportion among possible victims of the antitrust injury.

Gelboim, 823 F.3d at 772; see also AGC, 459 U.S. at 538–44. However, the third and fourth efficient enforcer factors are relevant only to claims for damages, not those for injunctive relief. See In re Platinum & Palladium Antitrust Litig., 61 F.4th 242, 266 n.5 (2d Cir. 2023); see also Cargill, Inc. v. Monfort of Colo., Inc., 479 U.S. 104, 111 n.6 (1986).

### (a)  Antitrust Injury

Visa argues that the cardholder plaintiffs cannot establish antitrust injury because those plaintiffs are not participants in the relevant market for general purpose debit network services. Visa Cardholder Br. 6. According to Visa, the cardholder plaintiffs allege that anticompetitive conduct is directed at acquiring banks and merchants in the general purpose debit network services market, but the cardholder plaintiffs themselves are injured via a separate market for goods and services. See id.

In support of its position, Visa relies heavily on Salveson v. JP Morgan Chase & Co., 166 F. Supp. 3d 242 (E.D.N.Y), aff'd, 663 F. App'x 71 (2d Cir. 2016), and Palladino v. JPMorgan Chase & Co., 761 F. Supp. 3d 521 (E.D.N.Y. 2024), in both of which the district court dismissed claims brought by consumers for lack of antitrust standing. The plaintiffs in Salveson and Palladino alleged the existence of two separate markets: first, the market for general purpose card network services (comprised of networks, issuers, acquirers, and merchants) and second, the market for merchant acceptance of debit cards (in which the consumer plaintiffs were alleged to have participated). See Palladino, 761 F. Supp. 3d at 543; Salveson, 166 F. Supp. 3d at 261. Both Salveson and Palladino dealt with allegations of a conspiracy to fix interchange fees in the market for general

9

purpose card network services, a separate market from that in which the consumer plaintiffs were alleged to have participated. See Palladino, 761 F. Supp. 3d at 541-43; Salveson, 166 F. Supp. 3d at 260-61.

In this case, in contrast, the cardholder plaintiffs allege a single, two-sided market with consumers and issuers on one side, and merchants and acquiring banks on the other side. See Cardholder Compl. ¶ 103, 160, 161, 163. Thus, the concerns with the Palladino and Salveson plaintiffs' claims are not at issue here-at least at the pleading stage, where the plaintiffs' factual allegations are accepted as true.

The cardholder plaintiffs allege that they are injured because they indirectly pay the high fees caused by Visa's allegedly anticompetitive conduct, see Cardholder Compl. ¶¶ 5-6, 25, 37-39, 74-79, 85, 88, 91, 106, 137, and that these injuries flow from the behavior that the cardholder plaintiffs allege is unlawful, see id. ¶¶ 146-54. Importantly, the plaintiffs allege they are injured in the same market in which the allegedly anticompetitive conduct occurs. See id. ¶¶ 160-62.

Thus, contrary to Visa's contention, the cardholder plaintiffs adequately plead antitrust injury.

### (b) Efficient Enforcer Factors

Visa also contends that the cardholder plaintiffs are not efficient enforcers of the antitrust laws because their alleged

injuries are not direct and because other parties, including the Government and other private parties, are also suing Visa for the same alleged conduct. See Visa Cardholder Br. 7-9. Visa's arguments on these points fail as well.

"Directness in the antitrust context means close in the chain of causation." Gatt Commc'ns., Inc. v. PMC Assocs., L.L.C., 711 F.3d 68, 78 (2d Cir. 2013). "The overall inquiry is akin to proximate cause in tort law—plaintiffs may not be too remote so as to avoid duplicative recovery and limitlessly increase the universe of potential plaintiffs." Harry v. Total Gas & Power N. Am., Inc., 889 F.3d 104, 116 (2d Cir 2018). The cardholder plaintiffs are close enough in the chain of causation to allege a direct injury. The cardholder plaintiffs allege a straightforward pass through of inflated prices from acquirers and merchants through to consumers, see Cardholder Compl. ¶ 55-56; that is sufficiently direct to support antitrust standing. See In re Lithium Ion Batteries Antitrust Litig., No. 13-md-2420, 2014 WL 4955377, at *14 (N.D. Cal. Oct. 2, 2014). It is also clear that the cardholder plaintiffs' self-interest would motivate enforcement; the fact that the Government and other private plaintiffs are also suing Visa does not mean that the cardholder plaintiffs are not sufficiently motivated. See In re Amazon.com eBook Antitrust Litig., 2023 WL 6006525, at *15 (S.D.N.Y. July 31, 2023) (noting that AGC does not require the

plaintiff in question to be "the entity most motivated"). Moreover, because the cardholder plaintiffs are only seeking injunctive relief under the Sherman Act, there is no risk of duplicative recovery. See Cargill, 479 U.S. at 111 n.6.

Thus, the cardholder plaintiffs have adequately alleged antitrust standing for the purposes of their claim for injunctive relief under the Sherman Act.

### b. State Law Claims

The cardholder plaintiffs also assert claims for damages under various state antitrust statutes. See Cardholder Compl. ¶¶ 210-36. The cardholder plaintiffs themselves are residents of California and Missouri. They bring claims under the California Cartwright Act, Cal. Bus. & Prof. Code § 16700, et seq., which prohibits combinations or agreements in restraint of trade. While the cardholder plaintiffs do not bring an antitrust claim under Missouri law, they bring claims under the antitrust laws of 29 additional states and the District of Columbia.

Visa argues that the cardholder plaintiffs lack antitrust standing to bring a claim under the California Cartwright Act and that they lack Article III standing to bring claims on behalf of absent class members from the remaining 28 states and District of Columbia. Visa Cardholder Br. 10. Visa also contends that the cardholder plaintiffs' state antitrust claims suffer from various additional defects. Id. at 11-12.

12

The Cartwright Act provides a private right of action to "[a]ny person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter." Calif. Bus. & Prof. Code § 16750(a). As with claims brought under the federal antitrust laws, the Cartwright Act requires a plaintiff to show antitrust standing. See Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 987 (9th Cir. 2000). The Second Circuit Court of Appeals has interpreted the Cartwright Act to require an antitrust standing analysis that "tracks [the] federal analog" and "substantially incorporates the AGC factors." Schwab, 22 F.4th at 114, 120. However, the Ninth Circuit Court of Appeals has cautioned that California law affords standing more liberally than does federal law. Knevelbaard Dairies, 232 F.3d at 987; see also id. at 991 (explaining that the Cartwright Act was enacted in response to Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), which limited the recovery of damages under federal antitrust law to direct purchasers).

The cardholder plaintiffs have established antitrust standing for their Cartwright Act claim. As discussed in Section III.A.1.a, supra, the cardholder plaintiffs have adequately alleged that they suffered antitrust injury. Likewise, the cardholder plaintiffs have alleged that their injury is sufficiently direct and that they are an identifiable

class of persons whose self-interest motivates enforcement of the antitrust laws.

Because the Cartwright Act claims are for damages, the antitrust standing analysis includes consideration of the remaining AGC factors: the speculative nature of the harm, the risk of duplicative recovery, and the complexity in apportioning damages.

Contrary to Visa's arguments, the cardholder plaintiffs' injuries are not speculative. Visa points out that for the cardholder plaintiffs to be injured, Visa's conduct would have to lead to higher fees charged to acquirers and that acquirers and then merchants would have to pass on those costs to consumers. See Visa Cardholder Br. 9. But that is exactly what the cardholder plaintiffs allege. See Cardholder Compl. ¶¶ 200, 208. Visa's issues with the cardholder plaintiffs' alleged chain of causation are thus factual disputes inappropriate for resolution at the pleading stage.

The fact that the cardholder plaintiffs are indirect purchasers of Visa's services necessarily raises a risk of duplicative recovery and complex damages apportionment. But denying antitrust standing solely on these grounds would contravene California's policy decision to allow indirect purchaser claims under the Cartwright Act. See Cal. Bus. & Prof. Code § 16750(a) (permitting a cause of action "regardless of

14

whether such injured person dealt directly or indirectly with the defendant"); see also In re Dynamic Random Access Memory Antitrust Litig., 516 F. Supp. 2d 1072, 1093 (N.D. Cal. 2007) (noting that states that have repealed Illinois Brick "have necessarily made the policy decision that duplicative recovery may permissibly occur").

The cardholder plaintiffs have thus adequately alleged they have antitrust standing to proceed with their Cartwright Act claim.

## B. Sufficiency of Allegations

Visa also challenges the sufficiency of the cardholder plaintiffs' allegations under the relevant antitrust and consumer protection statutes.

### 1. Federal Antitrust Claims

Section 1 of the Sherman Act forbids "[e]very contract . . . in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Despite this broad language, § 1 "was intended to prohibit only unreasonable restraints of trade." Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla., 468 U.S. 85, 98 (1984). Therefore, "[t]o prove a § 1 violation, a plaintiff must demonstrate: (1) a combination or some form of concerted action between at least two legally distinct economic entities that (2) unreasonably restrains trade." Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc., 386 F.3d

15

485, 506 (2d Cir. 2004). "The overarching standard is whether [the] defendant['s] actions diminish overall competition, and hence consumer welfare." K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co., 61 F.3d 123, 128 (2d Cir. 1995).

"Some restraints are per se unreasonable"—that is, "under no circumstance will they be held to be lawful." U.S. Airways, Inc. v. Sabre Holdings Corp., 938 F.3d 43, 54 (2d Cir. 2019). Per se violations include, most prominently, price-fixing agreements, and other restraints that almost always tend to restrict competition and "lack any redeeming virtue." Id. "If a restraint is not per se unreasonable, it is analyzed under the rule of reason" to determine whether the procompetitive effects outweigh the anticompetitive effects. Id. at 55.

Section 2 of the Sherman Act makes it unlawful for a person to "monopolize" or "attempt to monopolize" interstate trade or commerce. 15 U.S.C. § 2. Under § 2, monopoly power means "the power to control prices or exclude competition." United States v. E.I. du Pont De Nemours & Co., 351 U.S. 377, 391 (1956).

To establish monopolization in violation of § 2, the plaintiff must prove that "the defendant: (1) possessed monopoly power in the relevant market; and (2) willfully acquired or maintained that power." Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 97 (2d Cir. 1998) (citing United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966)). Hence, § 2 does not outlaw

16

the acquisition of monopoly power through "growth or development
as a consequence of a superior product, business acumen, or
historic accident." Grinnell Corp., 384 U.S. at 570-71. To be
found unlawful, "the possession of monopoly power" must be
"accompanied by an element of anticompetitive conduct." Verizon
Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP, 540 U.S.
398, 407 (2004).

To establish attempted monopolization in violation of § 2,
the plaintiff must show "(1) that the defendant has engaged in
predatory or anticompetitive conduct with (2) a specific intent
to monopolize and (3) a dangerous probability of achieving
monopoly power." Spectrum Sports Inc. v. McQuillan, 506 U.S.
447, 456 (1993).

Visa challenges the sufficiency of the cardholder
plaintiffs' Sherman Act allegations on three grounds: (1) that
the cardholder plaintiffs' alleged product market is
implausible; (2) that the cardholder plaintiffs have failed to
allege anticompetitive effects because their complaint does not
allege that Visa discounted its prices for Visa debit services
below its costs; and (3) that the terms of Visa's agreements
with Apple, PayPal, and Square disprove and defeat the
cardholder plaintiffs' claim that Visa agreed not to compete
with competitors and potential competitors. Visa Cardholder Br.
18-21. These are the same arguments Visa raised to challenge the

17

sufficiency of the complaint in the Government action, and they
fail for the same reasons explained at length in the Memorandum
Opinion and Order denying Visa's motion to dismiss the Complaint
in that action. See Visa, Inc., 788 F. Supp. 3d at 605–15.

### 2. State Antitrust Claims

Visa raises various arguments in favor dismissal of certain
of the cardholder plaintiffs' claims brought under state
antitrust laws.

### a. Illinois and Arkansas

Visa argues that the cardholder plaintiffs' Illinois and
Arkansas antitrust claims must be dismissed because, under the
laws of those states, only state attorneys general may bring
indirect purchaser claims as class actions. See Visa Cardholder
Br. 11; 740 Ill. Comp. Stat. § 10/7(2); Ark. Code Ann. § 4-75-
315. The cardholder plaintiffs respond that those are state
procedural rules not applicable in federal court under the
Supreme Court's decision in Shady Grove Orthopedic Assocs., P.A.
v. Allstate Ins. Co., 559 U.S. 393 (2010), and thus Rule 23
governs the availability of class actions for these claims.
Cardholder Opp. 19.

District courts are divided on whether these state laws
preclude indirect purchasers from filing class actions in
federal court. See In re Lipitor Antitrust Litig., 336 F. Supp.
3d. 395, 417 (D.N.J. 2018) ("Lipitor"). However, "a majority of

18

courts" have found that statutes limiting indirect purchaser suits to attorneys general are substantive and thus apply in federal court. See id. The analyses in Lipitor and In re Digital Music Antitrust Litigation, 812 F. Supp. 2d 390, 414-16 (S.D.N.Y. 2011) ("Digital Music"), are compelling. Lipitor and Digital Music highlight that these statutes are "intertwined" with state rights and remedies and that they reflect a state's substantive policy judgment regarding the potential for duplicative recovery. Because application of Rule 23 in lieu of the Illinois and Arkansas statutes would therefore "abridge, enlarge or modify" state substantive rights, the Illinois and Arkansas restrictions on indirect purchaser actions are "substantive" and must be applied in federal court. See Digital Music, 812 F. Supp. 2d at 416.

The cardholder plaintiffs' antitrust claims under Illinois and Arkansas law are therefore **dismissed with prejudice.**

### b. Mississippi

Visa correctly points out that the Mississippi Antitrust Act, Miss. Code Ann. § 75-21-1, applies only to conduct "accomplished at least in part by transactions lying wholly within Mississippi." State ex rel. Fitch v. Yazaki N. Am., Inc., 294 So. 3d 1178, 1189 (Miss. 2020). The cardholder plaintiffs rely on In re Pork Antitrust Litigation, 495 F. Supp. 3d 753 (D. Minn. 2020) ("Pork"), for the proposition that "'wholly

intrastate' does not mean that a product must literally be procured, finished, and sold all within Mississippi." Id. at 779. But the court in Pork dismissed the Mississippi claims because the "[v]ague, conclusory statements of intrastate transactions" were insufficient under Mississippi law. Id. at 779. In this case, the Cardholder Complaint contains no allegations of wholly intrastate transactions. See Cardholder Compl. ¶ 11, 217, 226.

The cardholder plaintiffs' antitrust claim under Mississippi law is therefore **dismissed without prejudice**.

### c. South Dakota, Tennessee, and Wisconsin

Visa argues that the cardholder plaintiffs' South Dakota, Tennessee, and Wisconsin claims are deficient because their complaint does not allege specific misconduct or effects in those states. See Visa Cardholder Br. 11-12. Visa reads the cases it cites in support of these arguments too stringently. Federal courts applying South Dakota's antitrust statute have found that the statute covers unlawful anticompetitive conduct that "has an effect within the state." See Dynamic Random Access Memory, 516 F. Supp. 2d at 1098; accord In re New Motor Vehicles Canadian Export Antitrust Litig., 350 F. Supp. 2d 160, 172 (D. Me. 2004). Likewise, the antitrust statutes of Wisconsin and Tennessee cover conduct that has "substantial effects" on the people in those states. See In re Dealer Mgmt. Sys. Antitrust

Litig., 362 F. Supp. 3d 510, 549 (N.D. Ill. 2019) (Wisconsin); accord Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 523 (Tenn. 2005) (Tennessee). The cardholder plaintiffs' allegations that residents of South Dakota, Tennessee, and Wisconsin were injured by paying inflated prices on purchases made in those states suffice to state a claim under the laws of these states.

### d. Utah

Visa contends that the cardholder plaintiffs' Utah antitrust claim must be dismissed because that statute requires that at least one named plaintiff must be a Utah citizen or resident. Visa Cardholder Br. 12 (citing Utah Code Ann. § 76-10-3109(1)(a)). The parties do not dispute that none of the named plaintiffs are citizens or residents of Utah. However, the cardholder plaintiffs argue that they only need to plead that the putative class contains Utah citizens. Cardholder Opp. 21. Courts are divided on this issue. Compare Lipitor, 336 F. Supp. 3d at 419, with In re Generic Pharms. Pricing Antitrust Litig., 368 F. Supp. 3d 814, 838 & n.106 (E.D. Pa. 2019). However, "[t]he majority of courts that have been presented with this statute require at least one Utah citizen or resident [to] be a named plaintiff." Lipitor, 336 F. Supp. 3d at 419.

Guided by the language of the statute and the persuasive opinions of the majority of courts to address this issue,

because no named plaintiff is a citizen or resident of Utah, the antitrust claims brought under the laws of that state are **dismissed without prejudice.**

### 3. State Consumer Protection Claims

Visa raises various alleged deficiencies in the cardholder plaintiffs' consumer protection claims. First, Visa argues that the cardholder plaintiffs have failed to plead adequately a Missouri consumer protection claim, and, thus, that they lack standing to bring similar claims under the laws of other states.[4] See Visa Cardholder Br. 12-13. Second, Visa points to various alleged deficiencies in the pleadings of claims under the consumer protection laws of other states. Id. at 13-15. Because the cardholder plaintiffs fail to allege a plausible Missouri consumer protection claim, it is unnecessary to reach Visa's second argument.

The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, et. seq., prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise

---

[4] The cardholder plaintiffs do not purport to bring a consumer protection claim under the laws of California. The only named plaintiff with a state consumer protection claim is a resident of Missouri.

in trade or commerce." Id. § 407.020.1. As amended in 2020, the MMPA empowers courts to "dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer." Id. § 407.025.1(2); Abbott v. Golden Grain Co., 677 F. Supp. 3d 940, 946 (E.D. Mo. 2023). The cardholder plaintiffs do not allege any facts to this effect, see Cardholder Compl. ¶ 182, and do not address this point in their opposition brief, see Cardholder Opp. 22-23. Because the cardholder plaintiffs fail to state a claim under the MMPA, that claim is **dismissed without prejudice.**

Further, because the MMPA claim is deficient, the cardholder plaintiffs lack Article III standing to bring claims under the consumer protection claims of other states. See Langan v. Johnson & Johnson Consumer Cos., 897 F.3d 88, 94 (2d Cir. 2018)(finding that when the defendant does not actually injure a named plaintiff, "the claims of [the] putative class members are too dissimilar to support standing against a particular defendant"); see also English v. Danone N. Am. Pub. Benefit Corp., 678 F. Supp. 3d 529, 541 (S.D.N.Y. 2023) (finding no Article III standing to assert claims under the laws of other states where the named plaintiff failed to state a claim under the laws of the state in which she resided). Accordingly, the

remaining claims detailed in Count VI of the Cardholder
Complaint are **dismissed without prejudice**.

### 4. Statutes of Limitations

Finally, Visa argues that applicable statutes of
limitations curtail the cardholder plaintiffs' remaining claims.
Visa Cardholder Br. 15. Similarly, Visa argues that the
cardholder plaintiffs' claims brought under the Colorado,
Delaware, and New Jersey antitrust statutes must be dismissed to
the extent those claims seek damages before those states' laws
permitting indirect purchasers to recover damages went into
effect. Id. at 12. These arguments seemingly seek to limit the
recovery available under the various state laws rather than to
deny that there are viable claims under the statutes in those
states. Therefore, the arguments should be addressed on motions
for summary judgment and class certification. For now, it is
sufficient that the cardholder plaintiffs allege that the
unlawful conduct was continuing and that at least some of the
conduct occurred within the applicable statutes of limitations.

* * *

In sum, with respect to the cardholder plaintiffs:

- the Sherman Act claims for damages are **dismissed
  without prejudice**;

- the antitrust claims brought under the laws of
  Illinois and Arkansas are **dismissed with prejudice**;

- the antitrust claims brought under the laws of Mississippi and Utah are **dismissed without prejudice**; and

- the state consumer protection claims are **dismissed without prejudice**.

Visa's motion to dismiss the cardholder plaintiffs' complaint is **granted** with respect to these claims and **denied** with respect to the remaining claims.

## B. Merchant Claims

The merchant plaintiffs bring claims for injunctive relief and damages under the Sherman Act; they also bring claims for damages under state antitrust and consumer protection laws.

Visa argues that the merchant plaintiffs' federal damages claims must be dismissed for lack of antitrust standing under Illinois Brick. Mem. of Law in Support of Mot. to Dismiss Merchant Compl. ("Visa Merchant Br.") 7-12; ECF No. 115. Visa also argues that the merchant plaintiffs have failed to state a claim under either the antitrust or consumer protection laws.

### 1. Antitrust Standing

Visa contends that, as indirect purchasers of Visa's network services, the merchant plaintiffs' claims are barred under the Supreme Court's decision in Illinois Brick.

Illinois Brick dealt with purchasers of concrete blocks who sued the manufacturers of those blocks for price fixing. 431 U.S. at 742-47. The Illinois Brick plaintiffs did not purchase

25

the concrete blocks directly from the manufacturers; instead, the blocks were passed down through a series of contractors before they reached the plaintiffs. Id. at 735. The Supreme Court determined that the plaintiffs did not have standing to sue under the federal antitrust laws because they were indirect purchasers and thus any overcharges were passed through to them by the direct purchasers. Id. at 741-47. In recent years, the Supreme Court has described Illinois Brick as a "bright-line rule" and has cautioned courts not to "litigate a series of exceptions" to that rule. Apple v. Pepper, 587 U.S. 273, 279, 285 (2019).

The merchant plaintiffs do not directly pay Visa's allegedly supracompetitive fees. Instead, Visa charges those fees to acquirers, who in turn allegedly pass them on to merchants. See Merchant Compl. ¶ 5 ("Visa imposes supracompetitive fees on merchants through their acquiring banks, who process payments for merchants as their agents, pay Visa a fee for each transaction . . . , and then charge those fees through to merchants."); id. ¶ 60 ("To obtain debit acceptance services, merchants pay these fees, typically through acquirers.").

Courts of Appeals to consider Illinois Brick's applicability in similar cases have held that entities downstream from acquirers are indirect purchasers and thus do

not have standing to seek antitrust damages from payment networks. In Paycom Billing Services, Inc. v. Mastercard International, Inc., the Second Circuit Court of Appeals determined that the plaintiff, a payment processor that was situated between a merchant and an acquirer, did not have standing to sue Mastercard over allegedly anticompetitive fees. 467 F.3d 283, 291-92 (2d Cir. 2006). The Court of Appeals noted that, as an entity downstream from acquirers, the plaintiff was "in a position analogous to the indirect purchasers in Illinois Brick." Id. at 291. Similarly, in Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1049 (9th Cir. 2008), the Ninth Circuit Court of Appeals affirmed the dismissal of merchant claims against Visa and Mastercard because the merchants were indirect purchasers. See also In re ATM Fee Antitrust Litig., 686 F.3d 741, 749-50 (9th Cir. 2012) ("ATM Fee").

In opposition to Visa's motion, the merchant plaintiffs point to In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, No. 05-MD-1720, 2024 WL 1014159 (E.D.N.Y. Mar. 8, 2024) ("Payment Card"), in which the district court declined to grant summary judgment dismissing merchants' claims against Visa and Mastercard on Illinois Brick grounds, id. at *11-13. But the district court in that action found that the plaintiffs raised triable issues of fact as to whether they were direct purchasers of Visa's and Mastercard's services. Id.

27

at \*11-17. In this case, in contrast, Visa has sought to dismiss the merchant plaintiffs' claims, but those plaintiffs have alleged that Visa sells network services <u>to banks</u> and that those banks (not Visa) in turn sell routing and processing services to merchants. <u>See</u> Merchant Compl. ¶ 226. The merchant plaintiffs further allege that the fees banks pay for these services are passed on to merchants, <u>see</u> <u>id.</u> ¶¶ 5, 6, 60. Thus, the facts as alleged by the merchant plaintiffs place this case squarely on point with <u>Paycom</u>, <u>Kendall</u>, and <u>ATM Fee</u>, rather than <u>Payment Card</u>.

Because the merchant plaintiffs have alleged that they are indirect purchasers of Visa's services, <u>Illinois Brick</u> bars their claims for damages under the Sherman Act. Visa's motion to dismiss is therefore **granted** with respect to the merchant plaintiffs' damages claims under the Sherman Act, and those claims are **dismissed without prejudice.**

### 2. Sufficiency of Allegations

Visa argues that the merchant plaintiffs fail to state a claim under both the antitrust and consumer protection laws.

Visa argues that the merchant plaintiffs' federal and state antitrust claims should be dismissed for the same reasons that Visa argued warranted dismissal in the Government action. <u>See</u> Visa Merchant Br. 12-16. As discussed in Section III.B.1, <u>supra</u>, these arguments fail for the same reasons explained in the

28

Memorandum Opinion and Order denying Visa's motion to dismiss that action. See Visa, Inc., 788 F. Supp. 3d at 605–15. Because Visa has raised no other arguments in favor of dismissal of the merchant plaintiffs' federal injunctive relief claims, Visa's motion to dismiss those claims is **denied.**

### a. State Antitrust Claims

Visa raises various arguments to dismiss certain of the merchant plaintiffs' claims brought under the state antitrust laws. Because Visa raised many of the same or similar arguments in its motion to dismiss the Cardholder Complaint, the arguments here are discussed briefly.

#### (a)   California

The merchant plaintiffs consent to the dismissal of the monopolization and attempted monopolization claims under the Cartwright Act (Counts 9-10). See Merchant Opp. 14 n.6. Those claims are therefore **dismissed with prejudice.**

#### (b)   Illinois

As discussed in Section III.B.2.a, Illinois substantive law requires that indirect purchaser class actions be brought by the state Attorney General. The merchant plaintiffs are indirect purchasers, and therefore their antitrust claims under Illinois law (Counts 34-37) are **dismissed with prejudice.**

### (c)  Mississippi

Visa and the merchant plaintiffs agree that merchant plaintiffs' Mississippi antitrust allegations should be dismissed because the complaint does not contain allegations of transactions lying wholly within Mississippi. <u>See</u> Visa Merchant Br. 16-17; Merchant Opp. 14 n.6. Those claims (Count 66-69) are therefore **dismissed without prejudice.**

### (d)  South Dakota, Tennessee, and Wisconsin

As it did in support of its motion to dismiss the cardholder plaintiffs' complaint, Visa argues that the merchant plaintiffs' South Dakota, Tennessee, and Wisconsin antitrust claims are deficient because their complaint does not allege specific misconduct or effects in those states. For the reasons explained in Section III.B.2.c, Visa's motion is **denied** with respect to these claims.

### (e)  Utah

For the reasons discussed in Section III.B.2.d, the merchant plaintiffs' claims brought under Utah's antitrust statute (Counts 122-25) are **dismissed without prejudice** because no named plaintiff is a citizen or a resident of Utah.

### (f)  Colorado and New Jersey

Visa argues that the merchant plaintiffs' claims brought under the Colorado and New Jersey antitrust statutes must be dismissed to the extent those claims seek damages before those

30

states' Illinois Brick repealer laws went into effect. Visa
Merchant Br. 17. These arguments are premature and should be
addressed at the class certification stage.

**b. State Consumer Protection Claims**

Visa raises various alleged deficiencies with the merchant
plaintiffs' state consumer protection claims. The merchant
plaintiffs subject to Visa's motion are citizens of California,
Florida, and New Jersey, but they do not purport to bring claims
under New Jersey consumer protection law. Visa argues primarily
that the merchant plaintiffs fail to state a claim under the
California and Florida consumer protection statutes. Visa also
asserts various alleged defects in the merchant plaintiffs'
consumer protection claims brought under other states' laws.
However, as discussed below, because the merchant plaintiffs
have failed to state a consumer protection claim under either
California or Florida law, they lack Article III standing to
assert similar claims on behalf of absent class members from
other states. See Langan, 897 F.3d at 94; see also English, 678
F. Supp. 3d at 541. It is therefore unnecessary to reach Visa's
arguments as to the sufficiency of the allegations under the
laws of those other states.

**(a)  California**

The merchant plaintiffs bring a claim under California's
Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200,

31

et seq., which permits a cause of action for "any unlawful, unfair or fraudulent business act or practice," id. § 17200. The UCL does not create a private right to seek monetary damages; instead, it "only permit[s] equitable relief by way of injunctive relief and restitution." In re Nurture Baby Food Litig., No. 21-cv-1217, 2025 WL 918927, at *16 (S.D.N.Y. Mar. 26, 2025) ("Nurture"). A complaint fails to state a claim under the UCL where it fails to allege the plaintiff lacks an adequate remedy at law. See Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020); see also Nurture, 2025 WL 918927, at *16. The merchant plaintiffs do not allege they lack an adequate remedy at law. See Merchant Compl. ¶¶ 316-21. However, they argue that they are entitled to plead such equitable claims in the alternative. Merchant Opp. 19-20. But the merchant plaintiffs do not do that either, nor do they in any way seek to "distinguish their request for restitution from their request for damages." In re California Gasoline Spot Market Antitrust Litig., No. 20-cv-3131, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021).

Because the merchant plaintiffs "fail to show how the restitution they seek differs from the damages they seek under other statutes or legal theories," Nurture, 2025 WL 918927, at *16, they fail to state a claim under the UCL. That claim (Count 13) is therefore **dismissed without prejudice.**

**(b) Florida**

The merchant plaintiffs also allege violations of § 501.204 of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Florida adheres to the <u>Illinois Brick</u> bar on indirect purchaser claims under its own antitrust statute, and courts applying Florida law thus "regularly dismiss FDUTPA claims that are merely a repackaging of the allegations offered for failed antitrust claims." <u>In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.</u>, No. 09-cv-3690, 2015 WL 3988488, at *18 (N.D. Ill. June 29, 2015) ("<u>Dairy Farmers</u>"). As in <u>Dairy Farmers</u>, the merchant plaintiffs in this case "avoided bringing their antitrust claim under Florida's antitrust laws knowing that such a claim would be doomed." <u>Id.</u> at *19. And, like in <u>Dairy Farmers</u>, "[t]he contours of Florida's antitrust laws would be rendered moot were the Court to allow [the merchant plaintiffs] to repackage their dead-on-arrival antitrust claims as FDUTPA claims." <u>Id.</u>

Because the merchant plaintiffs fail to state a claim under the FDUTPA, those claims (Counts 26-29) are **dismissed with prejudice**. Further, because both the FDUTPA and UCL claims are deficient, the merchant plaintiffs lack Article III standing to bring claims under the consumer protection claims of other states. See <u>Langan</u>, 897 F.3d at 94; <u>see also</u> <u>English</u>, 678 F.

33

Supp. 3d at 541. Accordingly, the remaining consumer protection claims are **dismissed without prejudice.**

\* \* \*

In sum, with respect to the merchant plaintiffs:

- the federal antitrust claims for damages are **dismissed without prejudice;**

- the monopolization and attempted monopolization claims brought under the California Cartwright Act are **dismissed with prejudice;**

- the antitrust claims brought under the laws of Mississippi and Utah are **dismissed without prejudice;**

- the consumer protection claims brought under the laws of Florida are **dismissed with prejudice;** and

- the remaining consumer protection claims are **dismissed without prejudice.**

Visa's motion to dismiss the merchant plaintiffs' complaint is **granted** with respect to these claims and **denied** with respect to the remaining claims.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted in part** and **denied in part.** The Clerk is respectfully requested to close ECF Nos. 112 and 114.


SO ORDERED.
Dated:     New York, New York
           October 28, 2025

_____
          John G. Koeltl
    United States District Judge